**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ZLOOP, INC., *et al.*, [1] | Case No.  15-11660 (XXX) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THEM TO PAY CERTAIN EMPLOYEE OBLIGATIONS AND
MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS,
(II) AUTHORIZING AND DIRECTING BANKS AND OTHER FINANCIAL
INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY ISSUED CHECKS
AND ELECTRONIC PAYMENT REQUESTS RELATING TO THE FOREGOING,
AND (III) SCHEDULING A FINAL HEARING ON THE MOTION**

ZLOOP, Inc., and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their attorneys, DLA Piper LLP (US), hereby move the Court (the "Motion") for the entry of interim and final orders pursuant to sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing them to pay certain employee obligations and maintain and continue employee benefits and programs, (ii) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all issued checks and electronic payment requests made related to the foregoing, and (iii) scheduling a final hearing on the Motion.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are:  ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098).  The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtors, their estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested in this Motion are sections 105(a), 363, 507(a), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

## BACKGROUND

**A.      General Background.**

2.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.  Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.

3.      The Debtors operate a proprietary, state of the art, 100% landfill free eWaste[2] recycling company headquartered in Hickory, North Carolina.  Founded in 2012 to address the large, untapped, fragmented market opportunity for recycling eWaste, the Company offers eWaste recycling and data destruction services through its facility in Hickory, NC.  The Company provides all levels of government, corporations, and consumers with secure, fast and

---

[2]     eWaste is an ubiquitous term used to cover almost all types of electrical and electronic equipment (EEE) that has or could enter the waste stream. Examples include TVs, computers, mobile phones, iDevices, stereo systems, toys, small and large appliances (white goods) – almost any household or business item with circuitry or electrical components with power cords or battery supply.

audited data destruction services, as well as end-of-life recycling of outdated or out-modeled electronics of all types.

4.      Currently, it is estimated that the world creates 240 million tons of eWaste per year, of which only 10% actually gets recycled or reused.  In the United States, eWaste is growing by 5 percent annually and accounts for 70 percent of overall toxic waste.  Municipal recycling programs typically do not include eWaste services.  As a result, over 80% of eWaste recycled in the United States is shipped to other countries for processing and landfill deposit. Landfills release the toxic heavy metals such as mercury and lead, into the environment.

5.      The Debtors provide three types of services: (i) end of life recycling for electronics and electrical equipment; (ii) on-site and off-site, secure and audited data destruction; and (iii) pre-consumer, post-consumer, and mixed plastics recycling.  ZLOOP is 100% Landfill Free™, which means that all produced non-salable materials, including waste dust and tailings, are disposed of or destroyed by incineration per federal, state and local regulations.

6.      The Debtors' end-of-life recycling eliminate all downstream environmental and other liabilities for their customers. Utilizing a unique array of machines, the Debtors are able to domestically transform all electronics into feeder-stock commodities and is 100% Landfill Free™.  Commodities reclaimed in the recycling process include copper, silver, gold, platinum, palladium, nickel, lead, steel, stainless steel, plastics, green boards, processors and memory chips.

7.      The Debtors' data destruction system reduces media to unrecognizable separated commodities, providing customers with zero landfill and zero downstream liability. The information destruction methods are in complete compliance with, and in fact exceed, HIPAA, FACTA, Gramm-Leach-Bliley, Sarbanes-Oxley Act and various other federal, state, and

corporate compliance requirements.   In short, when the Debtors' process is complete, their customers' data is irretrievable.

8.      Finally, the Debtors offer state of the art pre-consumer, post-consumer, and mixed plastics recycling.   Plastics represent the most landfilled or shipped-abroad commodity of recycling eWaste.   The Debtors' sophisticated plastics recycling services ensure a "Ready to Ship" premium commodity stream and package each box separately sealed in a plastic bag, so there is no chance for contamination.

9.      Prior to the commencement of these cases, the Debtor experienced significant delays and difficulties associated with the construction and installation by E Recycling Systems, LLC ("ERS") and Recycling Equipment, Inc. ("REI") of the its eWaste recycling system.   The Debtors currently have litigation pending against ERS and REI, stemming from the issues surrounding supply, design and installation of their eWaste recycling systems.   Additionally, the Debtors are defendants in two pending actions brought by a former investor, Kendall Mosing, as described in the Boston Declaration (defined below).[3]

10.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Robert M. Boston in Support of Chapter 11 Petitions and First Day Motions* (the "Boston Declaration"), filed contemporaneously herewith and incorporated herein by reference.

---

[3]      Nothing herein is intended as an admission, waiver or binding characterization of any rights, claim or defense of the Debtors in this description of pending litigation.

**B.      Prepetition Wage Reimbursements.**

11.     As of the Petition Date, the Debtors employ 8 full-time employees (the "Employees").  The Debtors also employ two officers, Robert LaBarge and Robert Boston (the "Officers").

12.     The Employees are paid on a bi-weekly basis, and the combined average payroll for the Employees for any pay period, exclusive of payroll taxes, is approximately $7,500 ("Base Compensation").  The Employees are paid every other Friday for a 14-day period ending 6 days before the Friday pay date.  In the ordinary course of business, the Debtors provide the funds necessary to meet their payroll obligations by the close of business on the Wednesday before payroll.  The Debtors' next scheduled payroll date is August 14, 2015, and such payroll will be for the period ending August 7, 2015.  As a result of adhering to this payroll process, the Debtors will be required to fund postpetition a payroll with approximately seven (7) days of prepetition obligations owed to their Employees.  The Debtors estimate that, as of the Petition Date, there is an aggregate amount of approximately $6286 in earned but unpaid salary or wages, as applicable, owed to the Employees ("Unpaid Base Compensation").

13.     By this Motion, the Debtors seek authority, but not direction, to pay the Unpaid Base Compensation to the Employees, provided, however, that no payment on account of pre-petition wages earned by any individual Employee shall exceed the $12,475 statutory cap on priority claims pursuant to section 507(a)(4) of the Bankruptcy Code.

14.     The Debtors owe the Officers approximately $180,000 on account of pre-petition wages.  By this Motion, the Debtors do not seek authority to pay post-petition wages owing to the Officers that accrued pre-petition.  The Debtors reserve the right to seek to pay such pre-petition claims by separate motion and subject to further order of the Court.

**C.      The Payroll Taxes.**

15.      As wages are earned by the Employees, the Debtors accrue, in the ordinary course of business, state, local, and federal employment and income taxes, as well as Social Security, state disability, unemployment, Medicare, and other taxes (collectively, the "Payroll Taxes") that must be remitted to the appropriate taxing authorities.  The Payroll Taxes are calculated based on statutorily mandated percentages of earned wages.  The Debtors' aggregate Payroll Taxes, including both the employee and employer portion, for the 2014 calendar year were approximately $62,448.  The Debtors estimate the amount of accrued and outstanding prepetition obligations with respect to the Payroll Taxes to be approximately $1,832 (the "Outstanding Payroll Taxes").  Of the aggregate amount of Outstanding Payroll Taxes, approximately $1,119 is outstanding on account of federal and state income taxes, Social Security and Medicare obligations withheld from Employees' wages, and approximately $713 is outstanding on account of the Debtors' direct Social Security, Medicare, and state and federal unemployment obligations.  In the event that the Court authorizes the Debtors to pay the Employees' Unpaid Base Compensation, the Debtors seek the authority to remit to the appropriate taxing authorities the entirety of the Outstanding Payroll Taxes with respect thereto.

**D.      Prepetition Business Expenses.**

16.      The Debtors customarily pay for a variety of their Employees' business-related expenses incurred in performing their employment obligations (the "Business Expenses").  Employees may sometimes pay Business Expenses out of their own funds.  All such expenses are incurred with the understanding that they will be reimbursed by the Debtors in accordance with the Debtors' reimbursement policy.  In such cases, Employees are reimbursed upon the submission of a claim itemizing the Business Expenses.

17.     Although there is no way to determine the precise amount of outstanding Business Expenses at any moment in time because expenses may not have been submitted, as of the Petition Date, the Debtors estimate that there were no Business Expenses that have not yet been reimbursed to Employees.

**E.     Costs and Expenses Incident to the Foregoing.**

18.     The Debtors incur costs incident to the Unpaid Base Compensation and Business Expenses, such as processing costs and the employer portion of payroll-related taxes, as well as accrued but unpaid prepetition charges for administration of the various Employee benefit programs (collectively, the "Prepetition Processing Costs").   For instance, the Debtors pay Automatic Data Processing certain administrative fees related to the services they provide the Debtors in connection with payroll processing.   The Debtors estimate that the aggregate amount of accrued but unpaid Prepetition Processing Costs, as of the Petition Date, is $0.   Payment of the Prepetition Processing Costs is necessary because the failure to pay any such amounts may disrupt services of third-party providers with respect to Unpaid Base Compensation and Business Expenses.   By paying the Prepetition Processing Costs, the Debtors can avoid even temporary disruptions of such services and thereby ensure that their Employees obtain all compensation and benefits without interruption.

<u>**RELIEF REQUESTED**</u>

19.     By this Motion, the Debtors hereby move for entry of interim and final orders authorizing the Debtors to pay, continue, or otherwise honor the various obligations described above (collectively, the "Employee Obligations") to or for the benefit of their Employees for compensation, benefits, and expense reimbursements under all plans, programs, and policies maintained or contributed to, and agreements entered into, by the Debtors prior to the Petition Date (as more fully described above).   The Debtors also move for entry of interim and final

orders authorizing and directing banks and other financial institutions to receive, process, honor, and pay all issued checks and electronic payment requests made related to the foregoing.

## BASIS FOR RELIEF

**A.     The Proposed Prepetition Employee Obligation Payments Are Afforded Priority Under Section 507(a) of the Bankruptcy Code.**

20.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date as well as "claims for contributions to an employee benefit plans arising from services rendered within 180 days" before the Petition Date are afforded unsecured priority status in an amount not to exceed $12,475 per employee. See 11 U.S.C. § 507(a)(4), (a)(5).

21.     In addition, the costs of administering employee benefits programs are entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code.  See Allegheny Int'l, Inc. v. Metro Life Ins. Co., 145 B.R. 820 (W.D. Pa. 1992).  In Allegheny, the court ruled that the prepetition claims of a medical benefits plan administrator for, among other things, fees charged for performing administrative, actuarial and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under former section 507(a)(4) of the Bankruptcy Code.  Id. at 822–23.  The Court recognized that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans."  Id.

22.     In the instant case, the Debtors believe that the collective amount of Unpaid Base Compensation owing to or on account of substantially all of their Employees will not exceed the per-employee sum of $12,475 allowable as a priority claim under section 507(a)(4) of the

Bankruptcy Code.  Therefore, the payment of these amounts pursuant to this Motion would not deplete assets otherwise available to other unsecured creditors under a plan.

23.    If the Debtors are not permitted to pay the Employee Obligations,  the Debtors believe that many of the Employees will actively seek employment elsewhere and may even resign their positions with the Debtors.  If the Employees are distracted by actively seeking other employment, the Debtors' business is sure to suffer.  Further, if the Debtors are forced to hire and train multiple new employees during this critical time, not only will there be a significant disruption in the Debtors' operations, it would likely be fatal to the Debtors' attempts to reorganize.

**B.    Funds Held in Trust Are Not Available for General Distribution to Creditors.**

24.    Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein.  11 U.S.C. § 541(d).  It is well established in this district that "property a debtor holds in trust for another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code.  See Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D. Del. 2006); see also In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in trust—either express or constructive—for another does not become property of the estate when the debtor files for bankruptcy and stating that "Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231 (Bankr. D. Del. 2000) (same).

25.     More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate.  See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98–103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property).  Accordingly, such funds are not available for general distribution to a debtor's creditors.

26.     The Outstanding Payroll Taxes are held in trust for the benefit of the appropriate federal, state or local taxing authorities.  As such, the Outstanding Payroll Taxes are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  Because the Outstanding Payroll Taxes are held in trust on behalf of others and thus do not constitute property of the Debtors' estates, the remittance of the Outstanding Payroll Taxes will not adversely affect the Debtors' estates or their creditors and is warranted.

27.     Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted.  Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits obviously would constitute a significant distraction for officers and directors at a time when they

should be focused on the Debtors' efforts to (a) stabilize their post-petition business operations and (b) work towards a successful restructuring of the Debtors' operations.

28.     To avoid serious disruption of the Debtors' reorganization efforts, the Debtors seek authority to remit all Outstanding Payroll Taxes collected on behalf of the Employees, including prepetition Outstanding Payroll Taxes, to the applicable taxing authorities to the extent that they have not already been remitted, pending a final hearing and further authorization pursuant to a final order on the Motion.

**C.      The Doctrine of Necessity Provides a Further
          Basis for Granting the Remaining Requested Relief.**

29.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

30.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations

omitted).  The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in <u>Miltenberger v. Logansport, C. & S.W.R. Co.</u>, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."  <u>In re Just for Feet, Inc.</u>, 242 B.R. 821, 825 (D. Del. 1999).  "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization."  <u>Id.</u> at 825–26.

31.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  <u>See</u> <u>In re Columbia Gas Sys., Inc.</u>, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing <u>In re Lehigh & New England Rwy. Co.</u>, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

32.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a) and 1108 of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  <u>See</u> <u>In re CoServ, L.L.C.</u>, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

33.     The relief sought in this Motion is essential to the Debtors' ability to successfully navigate chapter 11 and reorganize.  The immediate impairment of the Debtors' relationship with their Employees, the risk of turnover of Employees, and the irreparable harm to workforce morale sure to result from any delay or disruption in the payments and benefits provided to Employees—at the very time when the dedication, confidence and cooperation of those Employees is most critical—clearly would imperil the Debtors' reorganization efforts.  Any diminution in employee motivation or morale will have an immediate harmful impact on the Debtors' operations and the value of the estates.

34.     Indeed, maintaining the goodwill of the Employees and ensuring the uninterrupted availability of their services now and in the future will (a) assist the Debtors in maintaining the necessary "business as usual" atmosphere and, in turn, protect the going-concern value of the estates and maximize the value ultimately available to creditors and (b) preserve the Debtors' relationships with their customers.  The creditors of the Debtors will ultimately benefit from the payment of these prepetition claims.

35.     Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates.  Because the amounts represented by the Unpaid Base Compensation, Payroll Taxes and Prepetition Processing Costs are needed to enable the Employees to meet their personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

36.     The Debtors further seek, by this Motion, authorization, in their sole discretion, to continue to administer the Employee-related policies and programs described herein in the ordinary course of business, in the same manner and on the same basis as the Debtors implemented and maintained the same prior to the commencement of these chapter 11 cases.

37.     The Debtors respectfully submit that the payment of the Employee Obligations and other Employee-related policies and programs as requested herein is (a) necessary and essential for the Debtors' restructuring efforts, (b) in the best interests of the Debtors, their estates and their creditors, and (c) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their Employees.

38.     This Court routinely has approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  See, e.g., In re OSH 1 Liquidating Corporation (f/k/a In re: Orchard Supply Hardware Stores Corporation), Case No. 13-11565 (CSS) (Bankr. D. Del. July 11, 2013); In re Trident Microsystems, Inc., Case No. 12-10069 (CSS) (Bankr. D. Del. Jan. 30, 2012); In re Friendly Ice Cream, Corp., Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); In re Barnes Bay Dev., Ltd., Case No. 11-10792 (PJW) (Bankr. D. Del. Mar. 21, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011); In re OTC Holdings Corp., Case No. 10-12636 (BLS) (Bankr. D. Del. Aug. 27, 2010); In re Stallion Oilfield Servs. Ltd., Case No. 09-13562 (BLS) (Bankr. D. Del. Nov. 16, 2009).[4]

**D.    Cause Exists to Authorize and Direct the Debtors' Banks and Financial Institutions to Honor Checks and Electronic Fund Transfers.**

39.     In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions identified in the Motion of the Debtors and Debtors in Possession for Entry of an Order (a) Approving the Continued Use of the Debtors' Cash Management System and

---

[4]     The referenced orders are voluminous in nature and are not attached to this motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, undersigned counsel has copies of each order and will make them available to the Court or to any party that requests them.  Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers.

(b) Extending the Deadline to Comply with the Deposit and Investment Requirements of Section 345 of the Bankruptcy Code, filed contemporaneously herewith (collectively, the "Banks"), be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to Unpaid Base Compensation, Business Expenses, Payroll Taxes and Prepetition Processing Costs regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.   The Debtors represent that these checks are drawn on identifiable accounts and can be readily identified as relating directly to the authorized payment of Unpaid Base Compensation, Business Expenses, Payroll Taxes and Prepetition Processing Costs.   Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

40.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim on any grounds, (c) a promise to pay any claim, or (d) an implication or admission that any particular claim against the Debtors would constitute a claim for Unpaid Base Compensation, Business Expenses, Payroll Taxes and Prepetition Processing Costs.

**E.      Interim Approval Should Be Granted And A Final Hearing Should Be Scheduled.**

41.    The Debtors request that the Court conduct a preliminary hearing on the Motion and on an interim basis grant the relief requested herein.   Accordingly, the Debtors respectfully request that the Court schedule a final hearing on this Motion at the Court's convenience following the entry of an interim order.   Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtors.

## THE DEBTORS SATISFY BANKRUPTCY RULE 6003

42.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm" a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date.  As set forth above, the Debtors' business operations rely heavily on the services of the Employees and the retention of the Employees is critical to the Debtors' reorganization efforts.  Accordingly, the Debtors submit that ample cause exists to justify the immediate entry of an order granting the relief sought herein notwithstanding Bankruptcy Rule 6003.

## REQUEST FOR WAIVER OF STAY

43.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest, including the Employees.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

44.     Notice of this Motion shall be provided to the following entities:  (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' twenty largest unsecured creditors on a consolidated basis; (c) the Bank; (d) the United States Attorney's Office for the District of Delaware; and (e) the Internal Revenue Service.  As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Rule 9013-1(m) of the Local Rule.  Due to the urgency of the circumstances

surrounding this Motion and the nature of the relief herein, the Debtors respectfully submit that no further notice of this Motion is required.

## NO PRIOR REQUEST

45.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the interim order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein, (ii) schedule a final hearing on the Motion and thereafter enter the final order substantially in the form attached hereto as <u>Exhibit B</u>, and (iii) grant such other and further relief as the Court may deem proper.

Dated:  August 9, 2015
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/ Stuart M. Brown_
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Kaitlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com
         craig.martin@dlapiper.com
         daniel.brogan@dlapiper.com
         kaitlin.edelman@dlapiper.com

_Proposed Counsel to Debtors and
Debtors in Possession_