IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZLOOP, INC., *et al*.,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 15-11660 (KJC)<br><br>(Jointly Administered)<br><br>**Hrg. Date: Sept. 24, 2015 at 11:00 a.m. ET**<br>**Obj. Deadline: Sept. 17, 2015 at 4:00 p.m. ET** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE REJECTION OF THE LUXURY SUITE LICENSE AGREEMENT**

ZLOOP, Inc., and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their attorneys, DLA Piper LLP (US), hereby move the Court (the "Motion") for entry of an order, pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to reject the Suite License, as defined below, *nunc pro tunc* to the Petition Date. In support of the Motion, the Debtors respectfully state as follows:

**Jurisdiction and Venue**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The Debtors consent to the entry of a final order on this Motion if it is determined that the Court, absent consent of the

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098). The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

*General Background*

1. On August 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

2. The Debtors operate a proprietary, state of the art, 100% landfill free eWaste[2] recycling company headquartered in Hickory, North Carolina. Founded in 2012 to address the large, untapped, fragmented market opportunity for recycling eWaste, the Company offers eWaste recycling and data destruction services through its facility in Hickory, NC. The Company provides all levels of government, corporations, and consumers with secure, fast and audited data destruction services, as well as end-of-life recycling of outdated or out-modeled electronics of all types.

3. Currently, it is estimated that the world creates 240 million tons of eWaste per year, of which only 10% actually gets recycled or reused. In the United States, eWaste is growing by 5 percent annually and accounts for 70 percent of overall toxic waste. Municipal recycling programs typically do not include eWaste services. As a result, over 80% of eWaste

---

[2] eWaste is an ubiquitous term used to cover almost all types of electrical and electronic equipment (EEE) that has or could enter the waste stream. Examples include TVs, computers, mobile phones, iDevices, stereo systems, toys, small and large appliances (white goods) – almost any household or business item with circuitry or electrical components with power cords or battery supply.

recycled in the United States is shipped to other countries for processing and landfill deposit. Landfills release the toxic heavy metals such as mercury and lead, into the environment.

4. The Debtors provide three types of services: (i) end of life recycling for electronics and electrical equipment; (ii) on-site and off-site, secure and audited data destruction; and (iii) pre-consumer, post-consumer, and mixed plastics recycling. ZLOOP is 100% Landfill Free™, which means that all produced non-salable materials, including waste dust and tailings, are disposed of or destroyed by incineration per federal, state and local regulations.

5. The Debtors' end-of-life recycling eliminate all downstream environmental and other liabilities for their customers. Utilizing a unique array of machines, the Debtors are able to domestically transform all electronics into feeder-stock commodities and is 100% Landfill Free™. Commodities reclaimed in the recycling process include copper, silver, gold, platinum, palladium, nickel, lead, steel, stainless steel, plastics, green boards, processors and memory chips.

6. The Debtors' data destruction system reduces media to unrecognizable separated commodities, providing customers with zero landfill and zero downstream liability. The information destruction methods are in complete compliance with, and in fact exceed, HIPAA, FACTA, Gramm-Leach-Bliley, Sarbanes-Oxley Act and various other federal, state, and corporate compliance requirements. In short, when the Debtors' process is complete, their customers' data is irretrievable.

7. Finally, the Debtors offer state of the art pre-consumer, post-consumer, and mixed plastics recycling. Plastics represent the most landfilled or shipped-abroad commodity of recycling eWaste. The Debtors' sophisticated plastics recycling services ensure a "Ready to Ship" premium commodity stream and package each box separately sealed in a plastic bag, so there is no chance for contamination.

*The Suite License*

8. On or about December 16, 2013 ZLOOP, LLC, as predecessor in interest to ZLOOP, Inc. ("ZLOOP"), entered into the *Luxury Suite License Agreement* (the "Suite License")[3] with the Carolina Panthers (the "Panthers"). A copy of the Suite License is attached hereto as Exhibit A. Pursuant to the terms of the Suite License, the Panthers granted to ZLOOP the right and privilege to use and possess a luxury suite (the "Suite") at Bank of America Stadium in Charlotte, North Carolina. The Suite License defines its "Term" as "commenc[ing] on January1, 2014 and … continu[ing] through the end of the 2022 NFL Season." Under the terms of the Suite License, in exchange for the privilege to use and possess the Suite, ZLOOP is obligated to pay an annual fee (the "License Fee") in the amount of $87,000.00, plus taxes and other fees. In addition to the License Fee, as required by the Suite License, ZLOOP funded a security deposit (the Security Deposit") in the amount of $43,500.00.

**Relief Requested**

9. By this Motion, the Debtors seek entry of an order, pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, authorizing the Debtors to reject and terminate the Suite License, as of the Petition Date.

**Basis for Relief**

10. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523

---

[3] Capitalized terms not otherwise defined herein have the meanings given in the Suite License.

(1984) (holding that the standard applied by courts in authorizing the rejection of an executory contract is that of "business judgment"); In re Armstrong World Indus., Inc., 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code."); In re Fleming Cos., 308 B.R. 689, 691 (Bankr. D. Del. 2004) ("The decision to reject an executory contract is a matter within the sound business judgment of the debtor."). Courts generally do not second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease. See Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987) (holding that "the court should not interfere with or second-guess the debtor's sound business judgment" to reject the contract).

11.     Here, the Debtors have reviewed the services provided to them under the Suite License and determined that the costs associated with the Suite License outweigh the potential benefits provided by continued use of the Suite. Therefore, the Debtors have determined, in their business judgment, that it is in the best interests of their estates to reject and terminate the Suite License, effective as of the Petition Date.

12.     Previously, the Debtors used the Suite to entertain clients and prospective customers as part of their business development efforts. Given the current economic realities of these cases, the Suite is a luxury by which the Debtors' estates should not be burdened.

13.     By terminating the Suite License, the Debtors will not have to make the annual License Fee payment of $87,000.00 for the upcoming 2015 NFL Season and all future License Fees, that would otherwise become payable over the remaining Term of the Suite License. Moreover, following rejection of the Suite License, the Panthers have agreed to immediately return to the Debtors the entire $43,500.00 Security Deposit held by the Panthers. Therefore,

rejecting and terminating the Suite License effective immediately is a reasonable exercise of the Debtors' business judgment and this Court should approve the proposed rejection.

### *Nunc pro tunc Rejection is Appropriate*

14. *Nunc pro tunc* rejection of executory contracts and unexpired leases are appropriate if supported by the equities and circumstances of a case. See In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); In re Source Interlink Companies Inc., Case No. 09-11424 (KG) (Bankr. D. Del. May 27, 2009) (D.I. 223) (authorizing the rejection of leases retroactive to the petition date); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (same); In re Tweeter Opco, LLC, No. 08-12646 (MFW) (Bankr. D. Del. Dec. 30, 2008) (approving lease rejection *nunc pro tunc* up to a month before the order); see also Thinking Machines Corp. v. Mellon Financial Servs. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, "[i]n the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").

15. Here, the balance of equities favors authorizing the Debtors to reject the Suite License *nunc pro tunc* to the Petition Date. Any postponement of the effective date of rejection of the Suite License may potentially cause the Debtors to incur unnecessary administrative expenses without providing any accompanying benefit to the Debtors' estates. Further, the Debtors have already notified the Panthers of their intention to reject the Suite License, and allowing the Debtors to reject the Suite License, as of the Petition date, will not unduly prejudice the Panthers.

**Notice**

16. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Panthers; (c) the Debtors' twenty largest unsecured creditors on a consolidated basis; and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit B: (a) authorizing the Debtors to reject and terminate the Suite License, effective *nunc pro tunc* to the Petition Date and (b) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: August 13, 2015
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 */s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Katlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  stuart.brown@dlapiper.com
             craig.martin@dlapiper.com
             daniel.brogan@dlapiper.com
             kaitlin.edelman@dlapiper.com

*Proposed Counsel to Debtors and Debtors in Possession*