# EXHIBIT A

**(Suite License)**

Suite No.: 347A
Account No.: 6033894

## LUXURY SUITE LICENSE AGREEMENT
© 2013 Carolina Panthers

THIS LICENSE AGREEMENT is entered into as of December, 16 2013, by and between the Carolina Panthers ("Licensor") and ZLOOP, LLC. ("Licensee").

### WITNESSETH:

WHEREAS, Licensor is the owner and operator of a National Football League ("NFL") franchise (the "Franchise") whose home games are played in Bank of America Stadium (the "Stadium") in Charlotte, North Carolina; and

WHEREAS, Licensor desires to provide and Licensee desires to acquire the possession and use of a luxury suite in the Stadium upon the terms and conditions set forth herein.

THEREFORE, in consideration of the payment of the license fee and the mutual covenants and agreements set forth herein, the receipt and sufficiency of which are hereby acknowledged, Licensor hereby grants to Licensee the right and privilege to use and possess a luxury suite in the Stadium, subject to the terms and conditions set forth herein:

1. <u>Location of Suite</u>. The luxury suite licensed hereunder is a 14-person suite known as suite number 347A the "Suite") in the Stadium. The location of the Suite is shown on the diagram of the Stadium attached hereto as Exhibit A.

2. <u>Term</u>. The initial term of this Agreement shall commence on January 1, 2014.

| Term | Fixed Rate |
|---|---|
| ☐ nine (9) year term | Years 1-2 (2014 - 2015) |

The term shall commence on January 1, 2014 and shall continue through the end of the 2022 NFL Season, including playoff games played in the Stadium. Notwithstanding the foregoing, either party may terminate this Agreement by giving written notice to the other party ("Termination Notice") between October 1 and October 31, 2016 (the "Termination Period"). Such Termination Notice shall be effective as of the end of the 2016 season, including any post season games played at the stadium. In the event Licensor gives a Termination Notice to Licensee during the aforementioned Termination Period, then Licensor will negotiate with Licensee for a new license for the Suite and such negotiations will be in good faith exclusively with Licensee for a period beginning with the date of the Termination Notice and ending with the date which is ten (10) days after the effective date of termination. Thereafter, if Licensor and Licensee have not agreed to terms for a new license, Licensor may offer the Suite to the public on such terms and conditions as Licensor deems appropriate. Upon such termination, neither party shall have any further rights or obligations hereunder except: (1) Licensee shall be liable for any unapproved changes or damages to the Suite incurred prior to the effective date of termination; (2) Licensor shall be responsible for the return of the Security Deposit to Licensee, less allowable offsets or deductions; and (3) this provision shall not override any other provision of the Agreement that survives termination by its express terms.

3. <u>License Fee</u>. Licensee agrees to pay an annual fee (the "License Fee") in the amount of <u>Eighty-Seven Thousand Dollars ($87,000)</u> plus all applicable sales, use, property (other than ad valorem taxes assessed with respect to the Stadium) or other taxes, for the use and possession of the Suite. The License Fee shall be payable as follows: Payment will be due each year upon receipt of an invoice from Licensor. Should Licensee fail to make payment on or before the due date set forth in the invoice, Licensor may collect from Licensee a delinquency charge equal to five percent (5%) of said payment. In addition, payment which is not made on or before the due date set forth in the invoice will bear interest at the rate of one and a half percent (1.5%) monthly (18% per annum) from such due date until such payment and all such interest accrued thereon shall have been paid. The amount of the License Fee shall be fixed for a certain period depending upon the length of the term. Following the applicable Fixed Rate period, Licensor reserves the right to increase the License Fee up to a maximum of four percent (4%) per year. Included in the License Fee is the cost of tickets for all pre-season and regular season home NFL games of the Franchise. The portion of the License Fee allocable to the tickets each year will be determined from year to year in accordance with the following formula:

Highest Ticket Cost for Non-Luxury Suite Seat multiplied by

the Number of Seats in the Suite multiplied by
the Number of Pre-Season and Regular Season NFL Games Played in the Stadium

4. <u>Security Deposit</u>. Upon receipt of an invoice from Licensor, Licensee shall pay an amount equal to the License Fee for one (1) year as a security deposit (the "Security Deposit") for the performance of Licensee's obligations hereunder, including, but not limited to, Licensee's obligation to pay the License Fee. The Security Deposit shall be payable as follows:

| | |
|---|---|
| January 15, 2014 | $21,750 |
| May 15, 2014 | $21,750 |
| September 15, 2014 | $21,750 |
| January 15, 2015 | $21,750 |

If Licensee fails to pay any amount due hereunder, including all or any portion of the License Fee, in a timely fashion, Licensor may apply some or all of the Security Deposit to the payment of the delinquent amount without waiving or in any way affecting its rights to pursue other remedies against Licensee. In the event Licensor elects to pay any delinquent amount from the Security Deposit, Licensee shall pay to Licensor an amount sufficient to completely restore the Security Deposit within five (5) days of receipt of written notice from Licensor requesting such payment. The failure by Licensee to so restore the Security Deposit within such five (5) day period shall constitute a default hereunder. Licensor may commingle the funds which comprise the Security Deposit with its independent funds and use the same in any manner Licensor, in its sole discretion, may determine. At the termination of this Agreement, Licensor may retain so much of the Security Deposit as is necessary to cover the costs of any damage to the Suite caused by Licensee and its invitees, and any damage suffered by Licensor as a result of any breach of this Agreement on the part of Licensee. The balance, if any, of the Security Deposit shall be returned to Licensee, without interest.

5. <u>Renewals</u>. Licensee shall have the right to renew this Agreement upon such terms and conditions as Licensor may impose. Licensee shall have exclusive rights to renew the Agreement for a period of thirty (30) days following receipt of such terms and conditions. Thereafter, Licensor reserves the right to offer the Suite to other interested parties.

6. <u>Possession</u>.

a. <u>Pre-Season and Regular Season Home Football Games</u>. Upon the timely payment of the License Fee, plus any sales, use, property (other than ad valorem taxes applicable to the Stadium) or other tax applicable to either the Suite or the tickets, Licensee shall have the exclusive right to use and possess the Suite during all pre-season and regular season home football games of the Franchise played in the Stadium during the term of this Agreement (the "Games"). The cost of tickets for the Games is included in the annual License Fee.

b. <u>Post-Season Home Football Games</u>. Licensee shall have the first option to purchase all of the Suite tickets for any post-season home game of the Franchise to be played in the Stadium. This option may be exercised by purchasing all of the tickets associated with the Suite by a specified deadline as determined by Licensor. The price per ticket shall not exceed the price of the most expensive ticket offered for such game for seats not located in a suite. If Licensee does not purchase all of the Suite tickets for any post-season home game by the deadline determined by Licensor, then Licensor will have the right to sell all of the tickets to third parties selected by Licensor and Licensee shall have no use of the Suite for that game. If the tickets are sold to a third party for its use of the Suite during a post-season game, Licensor may require such third party to acquire appropriate insurance covering the Suite during that event, and Licensor will require such third party to indemnify Licensee for any damage, injury, claims or suits arising out of said third party's use of the Suite. Licensor shall not be obligated to verify the existence of the stipulated insurance coverage. Licensee will not be liable for any damage to the Suite caused by such third party regardless of whether the third party obtained appropriate insurance coverage.

c.  Super Bowls. Subject to rules established from time to time by the National Football League, Licensee shall have the first option to purchase the Suite tickets for any Super Bowl game played in the Stadium. Licensee acknowledges and agrees that, under current rules, licensees of suites may be required to share or relinquish use and possession of such suites during a Super Bowl. In the event Licensee is unable to use the Suite during a Super Bowl, or otherwise because of NFL rules, Licensor agrees to use its best efforts to find tickets in another suite or the best tickets available for purchase by Licensee. The price per ticket shall not exceed the price of the most expensive ticket offered for such game for seats located in a suite or comparable area as appropriate. If Licensee does not purchase all of the available tickets associated with the Suite, Licensor reserves the right, in its sole discretion, to sell all of the tickets to a third party selected by Licensor, in which case Licensee shall not have any use of the Suite for that game. Licensee will not be liable for any damage to the Suite caused by such third party.

d.  Other Events. Licensor may lease all or part of the Stadium to others for non-NFL events. Licensor agrees not to include the Suite as part of any lease for non-NFL events without the prior written consent of Licensee, except in the case of World Cup Soccer, Olympics and other events that Licensor deems to be of a similar nature ("Special Events"). In the event the Suite is available for an event at the Stadium other than an NFL event, Licensee shall have the option to purchase all of the Suite tickets at a price no greater than the price of the most expensive ticket available for such event for a seat outside of a luxury suite. This option may be exercised by purchasing all of the tickets for seats in the Suite within five (5) days of Licensor's notification of the date and time of such event. If Licensee does not purchase all of the tickets offered to Licensee, Licensor will close the Suite for events other than Special Events. In the case of Special Events, Licensor reserves the right, in its sole discretion, to sell all Suite tickets to a third party so that such third party shall have exclusive use of the Suite for Special Events. If the tickets are sold to a third party for its use of the Suite during a Special Event, Licensor may require such third party to acquire appropriate insurance covering the Suite during that event, and Licensor will require such third party to indemnify Licensee for any damage, injury, claims or suits arising out of said third party's use of the Suite. Licensor shall not be obligated to verify the existence of the stipulated insurance coverage. Licensee will not be liable for any damage to the Suite caused by such third party regardless of whether the third party obtained appropriate insurance coverage.

e.  Access. Licensee shall have access to the Suite only during each game or event for which Licensee has tickets for all seats in the Suite and for the period before and after each such game or event when the Stadium is open to the general public. This Agreement does not confer upon Licensee any greater or lesser rights or privileges with respect to access to the Stadium than afforded to other holders of tickets for admission thereto. Licensor shall have a key to the Suite and the cabinets in the Suite, and may enter the Suite at all reasonable times to perform its obligations hereunder and to ensure Licensee's compliance with the provisions hereof. Licensee shall not change the locks or place any additional locks on, or otherwise impede Licensor's access to, the Suite or any of the cabinets therein.

f.  Parking. Licensor shall provide Licensee with one (1) parking space for every four (4) seats located within the Suite as follows: three spaces for 10 and 12 seat suites; four spaces for 14 and 16 seat suites; six spaces for 24 seat suites; and eight spaces for 28 and 32 seat suites. Such spaces shall be available to Licensee and its guests during all NFL events for which Licensee has possession of the Suite in accordance with paragraph 6.a. and b.

7.  Use of Suite. Licensee and Licensee's invitees shall at all times maintain proper decorum while using the Suite and shall abide by all applicable governmental laws, ordinances, orders, directions, rules and regulations and by such rules and regulations as are adopted and revised from time to time by Licensor for the Suite or for the Stadium. In addition, Licensee shall not take any action which would cause an increase in premiums of any insurance policy of the Licensor, by

causing Licensor or any other party to fail to meet any requirement or condition of such policy or otherwise. Without limiting the foregoing, Licensee specifically agrees that neither it nor its invitees will:

    a.    Bring into the Stadium any alcoholic or intoxicating beverage, any illegal drugs or, except as prescribed by a physician, any controlled substance;

    b.    Permit the Suite to be used for any illegal, improper, immoral or objectionable purpose, or for lodging or sleeping, or in any way obstruct or interfere with the rights of any other licensees of any other Suite;

    c.    Sell any food, liquor or refreshments, tobacco, cigarettes, cigars, candies, souvenirs, sundries, fieldglasses, programs, or other articles, or conduct any business operations (other than customer entertainment) from the Suite;

    d.    Remove or allow any other person to remove any food or alcoholic beverage from the Suite; or

    e.    Film, record or transmit from the Suite all or any portion of any football game or other event, or any description thereof, by any means (including without limitation radio or television broadcasting, whether broadcast "live" or by means of film or tape).

    8.    <u>Catering</u>.  Licensee may purchase food and beverages only from the caterer retained by the Licensor to service the suites.  No food or beverages other than those purchased from such caterer may be either prepared or consumed in the Suite and no food or beverages may be taken from the Suite.  Licensee shall be solely responsible for, and shall promptly pay to such caterer, all bills for food and beverages furnished by such caterer in connection with the use of the Suite, as well as any taxes applicable to such food and beverages.

    9.    <u>Furnishings and Utilities</u>.  Licensor will provide furnishings and decorations for the Suite including spectator seating and lounge furniture and will furnish the Suite with a refrigerator, ice bin, color television (including closed circuit capacity, if available), sink, toilet facilities, telephone jack, heating, air conditioning and hot and cold running water. All such property shall remain with the Suite and remain the property of Licensor at the expiration of this agreement. Licensee shall have the right, upon Licensor's reasonable consent, to provide and hang additional artwork, area rugs and similar items within the Suite. Any such items provided by Licensee and approved by Licensor shall remain the property of Licensee at the expiration of this agreement. Upon the receipt of the written request of Licensee, accompanied by appropriate one or two color artwork acceptable to Licensor, Licensor shall install Licensor's standardized sign adjacent to the exterior of the door to the Suite identifying the Suite as Licensee's. Otherwise, Licensee shall make no alteration to the Suite unless approved in writing by Licensor in advance.

    10.    <u>Maintenance and Repair</u>.

    a.    Licensor shall be responsible for routine cleaning of the Suite before and after each use and shall be responsible for all other routine maintenance of the Suite. Licensor shall make or provide for necessary repairs and maintenance to the Suite and Licensor's property described in paragraph 9, above, unless such repairs or maintenance are necessitated by any action or omission by Licensee, Licensee's agents, employees or invitees, in which case Licensee agrees to reimburse Licensor upon demand for the cost of such repairs or maintenance.

    b.    Licensee agrees that, upon expiration or other termination of this License, the Suite and the furnishings and property therein shall be returned to Licensor in the same condition as received by Licensee, ordinary wear and tear excepted; provided, Licensee may remove its personal property kept in the Suite. Without limiting the foregoing, Licensee

shall not (i) injure, mar, change or in any manner deface the Suite, (ii) cause or permit anything to be done wherein the Suite shall be in any way injured, marred, changed or defaced in any manner, (iii) place or permit to be placed any nails, hooks, tacks, screws or any other similar items into parts of the Suite, or (iv) place or permit to be placed any signs on painted walls in any part of the Licensed Suite, except as provided in paragraph 9.

11. <u>Liability; Indemnity and Insurance</u>. Neither Licensor nor the owner of the Stadium shall be liable for any personal injury to, or for any damage to or any loss of property of, Licensee or its invitees. Licensee acknowledges that alcoholic beverages will be available in the Stadium. Licensee hereby agrees to assume all responsibility and liability for the consumption in the Stadium of alcoholic beverages by Licensee, its guests and invitees. Licensee further acknowledges that others may also consume alcoholic beverages at the Stadium, and that attendance at sporting events may expose attendees to certain risks of injury including, but not limited to, incidents involving other patrons who have consumed alcoholic beverages, injury from thrown or dropped objects, spills of food or beverages and the unruly behavior of other patrons. Licensee agrees to indemnify and hold harmless Licensor and the owner of the Stadium from and against any claims, damages, actions, suits and expenses, including attorneys' fees and other costs, arising out of or related to this Agreement, the use of alcohol at the Stadium, or the use of the Seats by Licensee or its invitees, whether such claims are now existing or later arising, and whether or not such loss is alleged to be caused by the negligence of the Licensor, the Franchise, the owner of the Stadium, or their agents. Licensee shall acquire, at its sole cost, a comprehensive general liability insurance policy with respect to the Suite with an insurer acceptable to Licensor. Said policy will have the following minimum coverages: $1,000,000 per occurrence; $2,000,000 aggregate bodily injury and property damage; and host liquor liability coverage. Licensor and the Stadium shall be named as additional insureds on such policy and shall be provided with a certificate of insurance prior to Licensee's taking possession of the Suite for any purpose.

12. <u>Assignment and Transfer</u>. Neither the Suite nor any part thereof shall be assigned or sublicensed without prior written consent of Licensor, which consent may not be withheld unreasonably. Any acquisition of Licensee by another entity, or merger, consolidation or similar transaction by Licensee, shall be deemed to be an assignment of this Agreement. Any attempt to assign or sublicense this Agreement or the Suite, or any part thereof without the prior written consent of Licensor, shall be null and void and shall constitute a default hereunder. Further, Licensor shall have the right to demand and receive any profits made by Licensee by reason of any assignment or sublicense, direct or indirect, to which Licensor has not consented.

13. <u>Games Not Played or Access Deprived</u>. If the Franchise shall permanently cease playing its home football games at the Stadium for any reason, then this License shall thereupon expire and the License Fee shall be prorated as hereinafter provided. If the Franchise shall not have permanently ceased playing their home football games at the Stadium, and either (i) Licensee shall be deprived of access to the Suite during the playing of any Franchise pre-season or regular season home football game, or if such game shall not be played as a result of damage to the Suite or to the Stadium, or condemnation or the exercise of eminent domain with regard to the Stadium, and if any such damage was not caused by the act or omission of Licensee or its invitees, or (ii) any Franchise pre-season or regular season home football game shall not be played as scheduled or as rescheduled during the term of this License as a result of a player's strike, or (iii) any Franchise pre-season or regular season home football game is played at a location other than the Stadium, then this License shall remain in full force and the License Fee shall be prorated as hereinafter provided. Neither Licensor nor the Franchise shall be under any obligation to make available to Licensee a luxury suite or tickets for a Franchise home football game played at any facility other than the Stadium. Licensee shall have priority rights, as determined by the Licensor, to purchase seats in the stadium where a pre-season or regular season home football game is played.

If, for any of the reasons stated above, Licensee shall be deprived of access to the Suite or any home pre-season or regular season game shall not be played, Licensee shall be credited a pro-rata amount of the License Fee based upon

the ratio of Franchise pre-season and regular season home football games not played in the Stadium to the total number of such games originally scheduled to be played at the Stadium as determined by the Licensor. The credits described above shall be applied in the first instance to the charge for post-season home football games actually played for which the Suite tickets were purchased by Licensee, and thereafter applied against future payments for the Suite as provided in paragraph 3. In the event no future payments are required under this License, the remaining amount of such credit shall be refunded to the Licensee. This shall be Licensee's exclusive remedy for any game not played or for being deprived of access to the Suite due to the events set forth in this paragraph 13.

14. Default. A breach of any term of this Agreement by Licensee, including without limitation any failure to pay when due any payment required hereunder, shall constitute a default. Upon the occurrence of a default, or if any proceeding in bankruptcy, receivership or insolvency shall be commenced by or against Licensee or its property, or if Licensee makes any assignment for the benefit of its creditors, or if any information submitted at any time by Licensee to Licensor is not true in any material respect, Licensor shall have any and all remedies available under applicable law including without limitation any one or more of the following remedies: (a) if Licensee fails to cure within ten (10) days after Licensor shall have demanded in writing performance thereof then Licensor may accelerate the total balance owed by Licensee under this Agreement; (b) the power to eject Licensee and/or its invitees from the Suite; (c) the power to terminate, at its option, Licensor's obligations under this Agreement, including but not limited to the obligation to give Licensee use of the Suite or the Suite tickets. Exercise of any such option by Licensor shall not relieve Licensee of its obligation to pay the entire Annual Fee for the term of this Agreement. Upon exercise of such option to terminate by Licensor, Licensor shall not be obligated to, but may, license the privilege to use the Suite to another party. If there are other Suites in the Stadium available to be licensed to such other party for Licensor's own account, Licensor may give priority to its own interest. In the event that Licensor licenses the privilege to use the Suite to another party, any fees received from such other party applicable to any remaining period of this Agreement shall be applied first to the expense of re-licensing and then to the reduction of any obligations and damages owing from Licensee to Licensor under this Agreement. Failure by Licensor to exercise any right or remedy hereunder shall not constitute a waiver or release thereof. Upon default, Licensee agrees to pay all expenses, reasonable attorneys' fees and court costs incurred by Licensor in collection. LICENSEE HEREBY WAIVES TRIAL BY JURY IN ANY CIVIL ACTION AND/OR SPECIAL PROCEEDING ARISING HEREUNDER.

15. Notices. All notices or other communication required to be given pursuant to this License shall be in writing and shall be sent to the addresses set forth on the signature page of this Agreement. Any notice given herein shall be deemed delivered when addressed as above provided, postage prepaid, and deposited in a United States General or Branch Post Office or with a nationally recognized overnight courier.

16. Third Party Beneficiaries. From time to time, the Licensor and/or the owner of the Stadium may negotiate or renegotiate financing for the acquisition of the Franchise, construction of the Stadium and the Suite, and for other purposes with one or more financial institutions (the "Banks"). Licensee acknowledges that the Banks will be relying on, and will be entitled to rely on, the commitments made by Licensee in this Agreement and that the Banks shall have the rights of third party beneficiaries with respect to this Agreement.

It is understood that Licensor and/or the owner of the Stadium may mortgage, pledge, assign or otherwise encumber the Stadium, the Suite, this Agreement and/or the Security Deposit as security for financing the acquisition of the Franchise, improvements to be made to the suites or other facilities operated by Licensor in the Stadium or for other purposes of the Licensor, and that, in such event, this Agreement and the rights and interests of Licensee hereunder shall be subordinate thereto; provided that any such mortgagee, pledgee, assignee or the holder of any such lien shall agree in writing to recognize this Agreement and the rights and interests of Licensee hereunder in the event of foreclosure or enforcement of said lien if Licensee is not then in default in the performance of Licensee's obligations under this Agreement.

17. <u>Miscellaneous Provisions</u>.

a. <u>Surrender</u>. Upon the expiration of the term of this Agreement (or, if applicable, upon the expiration of any renewal term pursuant to Paragraph 5 hereof) or upon the earlier termination of this Agreement, Licensee shall surrender possession of the Suite to Licensor in the condition in which it was originally delivered to Licensee, except for normal wear and tear, and damage caused by casualty or force beyond the control of Licensee or Licensee's guests.

b. <u>Governing Law; Consent to Jurisdiction</u>. This Agreement shall be construed and enforced in accordance of the laws of the State of North Carolina. In the event that any action, suit or other proceeding is brought by or against the Licensee or the Licensor in connection with or related to this Agreement, including any claim for injuries or damages relating to the license of a part of the Stadium, the Licensee, for itself and its guests and invitees, hereby consents to the exercise of jurisdiction over such entities and their property by the United States District Court, Western District of North Carolina, and by the North Carolina General Courts of Justice, Superior Court Division, 26th Judicial District.

c. <u>Entire Agreement; Modification</u>. This Agreement, together with the exhibit annexed hereto, contains the entire agreement of the parties with respect to the matters provided for herein, and shall supersede any written instrument or oral agreement previously made or entered into by the parties hereto. No modification hereto shall be valid or enforceable unless in writing, signed by both parties.

d. <u>Binding Effect</u>. As of the date of execution set forth below, this Agreement and all the terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto, and their permitted successors and assigns. Neither this Agreement nor this License may be assigned or transferred by Licensee without Licensor's prior written consent.

IN WITNESS WHEREOF, Licensor and Licensee have duly executed this agreement as of the dates set forth below.

LICENSEE: ZLOOP, LLC
Attn: Mr. Bob Boston
816 13th Street NE
Hickory, NC 28601

By: _____ managing member _____  12/16/201_
    Signature - Title                    Date

Check one:     ☐ Individual     ☐ Partnership     ☐ Corporation

Licensee's Social Security Number Or Federal Tax Identification Number: 46-0623274
(MUST BE PROVIDED)


LICENSOR: Carolina Panthers
800 South Mint Street
Charlotte, North Carolina 28202


By:_____
                                         Date