# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> ZLOOP, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 15-11660 (KJC) <br><br> (Jointly Administered) <br><br> Hrg. Date: T.B.D. <br> Obj. Deadline: T.B.D. |

**APPLICATION OF THE DEBTORS TO (I) RETAIN GETZLER HENRICH & ASSOCIATES LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE WILLIAM H. HENRICH AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS *NUNC PRO TUNC* TO SEPTEMBER 24, 2015**

ZLOOP, Inc., and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), by and through their attorneys, DLA Piper LLP (US), submit this application (the "Application") for entry of an order, substantially in the form of Exhibit C attached hereto, authorizing the Debtors to (i) retain Getzler Henrich & Associates LLC ("Getzler Hernich") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain Additional Personnel (as described below) and (ii) designate William H. Henrich as the Debtors' CRO, *nunc pro tunc* to September 24, 2015 and in support thereof, the Debtors aver as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Debtors, their estates, and this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098). The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

**BACKGROUND**

2. On August 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

3. On September 2, 2015, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee") in these cases.

4. The Debtors operate a proprietary, state of the art, 100% landfill free eWaste[2] recycling company headquartered in Hickory, North Carolina. Founded in 2012 to address the large, untapped, fragmented market opportunity for recycling eWaste, the Company offers eWaste recycling and data destruction services through its facility in Hickory, NC. The Company provides all levels of government, corporations, and consumers with secure, fast and audited data destruction services, as well as end-of-life recycling of outdated or out-modeled electronics of all types.

5. Currently, it is estimated that the world creates 240 million tons of eWaste per year, of which only 10% actually gets recycled or reused. In the United States, eWaste is

---

[2] eWaste is an ubiquitous term used to cover almost all types of electrical and electronic equipment (EEE) that has or could enter the waste stream. Examples include TVs, computers, mobile phones, iDevices, stereo systems, toys, small and large appliances (white goods) – almost any household or business item with circuitry or electrical components with power cords or battery supply.

growing by 5 percent annually and accounts for 70 percent of overall toxic waste. Municipal recycling programs typically do not include eWaste services. As a result, over 80% of eWaste recycled in the United States is shipped to other countries for processing and landfill deposit. Landfills release the toxic heavy metals such as mercury and lead, into the environment.

6. The Debtors provide three types of services: (i) end of life recycling for electronics and electrical equipment; (ii) on-site and off-site, secure and audited data destruction; and (iii) pre-consumer, post-consumer, and mixed plastics recycling. ZLOOP is 100% Landfill Free™, which means that all produced non-salable materials, including waste dust and tailings, are disposed of or destroyed by incineration per federal, state and local regulations.

7. The Debtors' end-of-life recycling eliminate all downstream environmental and other liabilities for their customers. Utilizing a unique array of machines, the Debtors are able to domestically transform all electronics into feeder-stock commodities and is 100% Landfill Free™. Commodities reclaimed in the recycling process include copper, silver, gold, platinum, palladium, nickel, lead, steel, stainless steel, plastics, green boards, processors and memory chips.

8. The Debtors' data destruction system reduces media to unrecognizable separated commodities, providing customers with zero landfill and zero downstream liability. The information destruction methods are in complete compliance with, and in fact exceed, HIPAA, FACTA, Gramm-Leach-Bliley, Sarbanes-Oxley Act and various other federal, state, and corporate compliance requirements. In short, when the Debtors' process is complete, their customers' data is irretrievable.

9. Finally, the Debtors offer state of the art pre-consumer, post-consumer, and mixed plastics recycling. Plastics represent the most landfilled or shipped-abroad commodity of

recycling eWaste. The Debtors' sophisticated plastics recycling services ensure a "Ready to Ship" premium commodity stream and package each box separately sealed in a plastic bag, so there is no chance for contamination.

10. In an effort to assuage any concerns caused by certain allegations levied against the Debtors and their present management by certain creditors and other parties—and at the suggestion of the Committee—the Debtors determined that engagement of an independent officer is prudent and in the best interests of the Debtors and their estates and creditors.

11. After consultation with the Committee, the Debtors interviewed several CRO candidates, including persons proposed by the Committee, to serve in such capacity in these bankruptcy cases. Following this interview process, the Debtors selected Henrich and his firm (one of the candidates proposed by the Committee) to serve as the Debtors' CRO.

12. The Committee has approved the selection and supports the retention of Getzler Henrich and Mr. Henrich. The Committee consents to the relief sought in this Application.

## RELIEF REQUESTED

13. By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form of <u>Exhibit C</u> annexed hereto, authorizing the Debtors to (i) retain Getzler Henrich to provide the Debtors with a CRO and certain Additional Personnel and (ii) designate William H. Henrich as the Debtors' CRO, *nunc pro tunc* to September 24, 2015.

14. William H Henrich will serve as the CRO to assist the Debtors with their reorganization efforts and their chapter 11 cases (the "<u>Chapter 11 Cases</u>"), as further described below. Getzler Henrich will provide additional employees ("<u>Additional Personnel</u>," collectively

with the CRO, the "Engagement Personnel") as necessary to assist the CRO in the execution of the duties set forth more fully herein.

## RETENTION OF GETZLER HENRICH

15. In consideration of the facts and circumstances of these cases, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. Getzler Henrich and Mr. Henrich are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

16. Getzler Henrich specializes in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. Getzler Henrich's advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

17. Getzler Henrich is one of the oldest and most respected names in middle market corporate restructuring, assisting companies around the world with an approach that emphasizes rapid, pragmatic decision making and implementation. Over the past forty-five years, Getzler Henrich has developed a strong track record, assisting both underperforming and healthy companies in the middle market and its engagements have spanned across a broad spectrum of industries.

18. Mr. Henrich is well suited to serve as CRO, he is currently co-chairman of Getzler Henrich, and possesses more than thirty years of experience, including more than 350 engagements, in turnaround and crisis management, loan workout, bankruptcy consulting and performance improvement. Prior to joining Getzler Henrich, Mr. Henrich was managing director and founder of the New York practice of a prominent middle-market corporate restructuring firm. He also served in Arthur Andersen's corporate recovery services group and previously held senior executive finance, operational and sales/marketing positions with Arrow Electronics, the world's largest electronics distribution company. His efforts helped the company significantly reduce operating costs, improve market penetration and increase profitability. Mr. Henrich is a certified public accountant, he also holds a master's degree in business administration from Harvard Business School and a bachelor's degree from Baruch College, City University of New York.

19. For these reasons, Getzler Henrich is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of Getzler Henrich and the designation of William H. Henrich as CRO on the terms and conditions set forth herein are necessary and appropriate, are in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## **SCOPE OF SERVICES**

20. Subject to approval by the Court, the Debtors propose to retain Getzler Henrich to provide William H. Henrich as CRO and to provide the Additional Personnel on the terms and conditions set forth in the engagement letter, dated September 24, 2015, attached hereto as

Exhibit A (the "Engagement Letter"),[3] except as otherwise explicitly set forth herein or in any order granting this Application.

21. Among other things, the Engagement Personnel will support the Debtors with respect to the following:

    (a) Assist with the preparation of business plans and financial projections and analysis of alternative operating scenarios;

    (b) Assess, monitor and manage operations and recommend and implement the restructuring of operations as appropriate;

    (c) Oversee any 363 sale process or any alternative plan process;

    (d) Monitor the orderly liquidation of terminated operations (if any);

    (e) Assist with the preparation of Court motions as requested by counsel;

    (f) Assist with compliance with the reporting requirements of the Bankruptcy Code, Bankruptcy Rules and local rules, including monthly operating reports and amendments to the Debtors' statements and schedules

    (g) Consult with all other retained parties, creditors' committee, and other parties-in-interest;

    (h) Participate in Court hearings and the continued section 341 meeting of creditors, and, if necessary, provide testimony in connection with any hearings before the Court or U.S. Trustee and

    (i) Perform such other tasks as appropriate as may reasonably be requested by the Debtors' management or counsel;

---

[3] The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

22. The Debtors have resolved to retain Getzler Henrich and Henrich as CRO according to the Unanimous Consent attached hereto as <u>Exhibit D</u>.

23. These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

## GETZLER HENRICH'S DISINTERESTEDNESS

24. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the *Declaration of William H. Henrich in Support of Application of the Debtors to (I) Retain Getzler Henrich & Associates LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate William H. Henrich as Chief Restructuring Officer for the Debtors Nunc Pro Tunc to September 24, 2015*, (the "<u>Henrich Declaration</u>") attached hereto as <u>Exhibit B</u>, Getzler Henrich (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee, and (b) does not hold any interest adverse to the Debtors' estates.

25. Although the Debtors submit that the retention of Getzler Henrich and Henrich is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Henrich Declaration, which discloses, among other things, any relationship that Getzler Henrich, Henrich or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to Getzler Henrich. Based upon the Henrich Declaration, the Debtors submit that Henrich is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

26. In addition, as set forth in the Henrich Declaration, if any new material facts or relationships are discovered or arise, Henrich will provide the Court with a supplemental declaration.

## **TERMS OF RETENTION**

**A.  Compensation.**

27. In accordance with the terms of the Engagement Letter, Getzler Henrich will be paid by the Debtors for the services of the Engagement Personnel at a 10% discount from their customary hourly billing rates. The current hourly billing rates, based on the position of the particular Engagement Personnel are subject to the following ranges:

   a. Principal / Managing Directors     $495-595
   b. Directors / Specialists            $385-550
   c. Associate Professionals            $160-385

Mr. Henrich will have primary responsibility for overseeing the services to be rendered to the Debtors under the Engagement Letter. Getzler Henrich will charge the discounted rates on an hourly basis. Such rates shall be subject to adjustment annually at such time as Getzler Henrich adjusts its rates generally.

28. In addition to compensation for professional services rendered by Engagement Personnel, Getzler Henrich will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including, but not limited to coach air travel, meals, local transportation, lodging, parking, telephone calls, delivery services, and photocopying. All fees and expenses due to Getzler Henrich will be billed on a monthly basis, or more frequently as agreed to between Getzler Henrich and the Debtors, as further set forth in the Engagement Letter.

29. In addition to payment the applicable discounted hourly rates, under the Engagement Letter, Getzler Henrich entitled to a success fee (the "<u>Success Fee</u>") based upon the consummation of obtaining DIP financing, exit Sub-debt financing/equity investment or, albeit not contemplated at this time, a sale of assets to an Interested Party, payable in cash at the time of, as part of, and as a condition of the closing of such a transaction. The Success Fee for the closing of a financing, investment or sale transaction will be 1.5% of the Total Financing Commitment or Equity/Sale Consideration, subject to a minimum of $15,000.

**B.  Indemnification.**

30. As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter, the Debtors have agreed to indemnify and hold harmless Getzler Henrich, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of Getzler Henrich or Getzler Henrich affiliates (collectively, the "<u>Indemnified Parties</u>") under certain circumstances.[4] The

---

[4] The Engagement Letter generally provides that the Debtors will indemnify and hold harmless Getzler Henrich and the other Indemnified Parties for, any losses, claims, damages, obligations, penalties, judgments, awards, settlements, liabilities, costs, expenses and disbursements (including reasonable attorneys' and consultants' fees and expenses, investigation fees and expenses and court and litigation costs) of any kind or nature whatsoever, known or unknown, foreseen or unforeseen, contingent or otherwise arising out of or in any way, directly or indirectly, related to (i) Company's actions or failures to act (including statements or omissions made, or information provided, by it or its agents) or (ii) actions or failures to act by an Getzler Henrich Party with Company's consent or in reliance on Company's actions or failures to act, or (B) otherwise related to or arising out of any services rendered by Getzler Henrich or any Getzler Henrich Party pursuant to this Agreement or other services rendered at the request of Company (including service by an Getzler Henrich Party as an officer, director or in any other capacity with Company or any of its affiliates). Notwithstanding the terms of the Engagement Letter, the Debtors and Getzler Henrich have agreed, subject to the Court's approval of this Application, that in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Engagement Letter if the Debtors, their estates or the Committee assert a claim against an Indemnified Person and the Court determines by final order that such claim resulted primarily from willful misconduct or gross negligence on the part of Getzler Henrich in the performance of its services under the Engagement Letter.

rights to indemnification shall survive the termination of these Chapter 11 Cases or any cases into which they may be converted.

31. The Debtors believe the indemnity provisions are a reasonable term and condition of Getzler Henrich's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and Getzler Henrich at arm's length and in good faith. Getzler Henrich and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to Getzler Henrich and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Getzler Henrich's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Getzler Henrich's services to successfully reorganize.

**FEES AND REPORTING**

32. If the Court approves the relief requested herein, Getzler Henrich will be retained to provide the Debtors with the Engagement Personnel and Mr. Henrich will be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code. Because Getzler Henrich is not being employed as a professional under section 327 of the Code, Getzler Henrich will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. In lieu of filing monthly or interim fee applications, Getzler Henrich will file with the Court, and provide notice to the Debtors, the U.S. Trustee and the Committee (collectively, the "Notice Parties"), reports of compensation earned and expenses incurred on a monthly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed. For the avoidance of doubt, Getzler Henrich will not be required to submit time entries in

rights to indemnification shall survive the termination of these Chapter 11 Cases or any cases into which they may be converted.

31. The Debtors believe the indemnity provisions are a reasonable term and condition of Getzler Henrich's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and Getzler Henrich at arm's length and in good faith. Getzler Henrich and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to Getzler Henrich and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Getzler Henrich's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Getzler Henrich's services to successfully reorganize.

**FEES AND REPORTING**

32. If the Court approves the relief requested herein, Getzler Henrich will be retained to provide the Debtors with the Engagement Personnel and Mr. Henrich will be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code. Because Getzler Henrich is not being employed as a professional under section 327 of the Code, Getzler Henrich will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. In lieu of filing monthly or interim fee applications, Getzler Henrich will file with the Court, and provide notice to the Debtors, the U.S. Trustee and the Committee (collectively, the "Notice Parties"), reports of compensation earned and expenses incurred on a monthly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed. For the avoidance of doubt, Getzler Henrich will not be required to submit time entries in

tenth of an hour increments as required by Rule 2016-2(d)(iv) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

33. In addition, Getzler Henrich will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and tasks filled by all Engagement Personnel involved in this matter. The Staffing Report (and Getzler Henrich's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

34. Given the numerous issues that the Engagement Personnel may be required to address in the performance of their services, Getzler Henrich's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## APPLICABLE AUTHORITY

35. The Debtors seek approval of the employment of Getzler Henrich pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to September 24, 2015. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

36. Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

37. The retention of the Engagement Personnel is a sound exercise of the Debtors' business judgment. Mr. Henrich has extensive experience as a senior officer and as an advisor for many troubled companies. The Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of Getzler Henrich is appropriate and in the best interests of the Debtors and their estates and creditors.

38. The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. See, e.g., In re Restora Healtchare Holdings, LLC, No. 14-10367 (PJW) (Bankr. D. Del. March

19, 2014); In re Devonshire PGA Holdings, LLC, No. 13-12460 (CSS) (Bankr. D. Del. Sept. 19, 2013); In re School Specialty, Inc., No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013).[5]

39.     Based upon the foregoing, the Debtors submit that the retention of Getzler Henrich, and the designation of Mr. Henrich as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these Chapter 11 Cases.

**NOTICE**

40.     The Debtors have served notice of this Application on the following: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

41.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

---

[5]     The referenced orders are voluminous in nature and are not attached to this motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, undersigned counsel has copies of each order and will make them available to the Court or to any party that requests them. Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers.

Dated: September 29, 2015
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 */s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Kaitlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
craig.martin@dlapiper.com
daniel.brogan@dlapiper.com
kaitlin.edelman@dlapiper.com

*Counsel to Debtors and Debtors in Possession*