## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZLOOP, INC., *et al.*, [1] | Case No. 15-11660(KJC) |
| Debtors. | (Jointly Administered) |
| | **Hrg. Date: T.B.D.**<br>**Obj. Deadline: T.B.D.** |

### DEBTORS' MOTION FOR AN ORDER (I) APPROVING SETTLEMENT AGREEMENT, (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) IF THE PURCHASER OFFERS THE HIGHEST OR OTHERWISE BEST OFFER, THE ASSUMPTION OF A PURCHASE AND SALE AGREEMENT FOR CERTAIN REAL PROPERTY, AND (C) THE REJECTION OF A LEASE AGREEMENT RELATING TO SUCH REAL PROPERTY, AND (III) GRANTING RELATED RELIEF

ZLOOP, Inc., and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), by and through their attorneys, DLA Piper LLP (US), hereby move this Court (the "Motion") for entry of an order,[2] under sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 6006, 9006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving a settlement agreement between the Debtors, on the one hand, and Hickory Commercial, LLC ("Hickory") and the principals of Hickory in such capacity only (together with Hickory, the

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098). The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

[2] A proposed order with respect to the relief requested in this Motion is attached hereto as Exhibit A.

"Settlement Counterparties"), (ii) authorizing and approving (a) the sale of certain real property in accordance with the purchase and sale agreement, subject to higher or otherwise better offers, (b) if the purchaser under such purchase and sale agreement submits the highest or otherwise best offer, then the assumption of such purchase and sale agreement with respect to certain real property, and (c) the rejection of a certain lease agreement between the Debtors and Hickory relating to the real property, and (iii) granting certain related relief. In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

William Henrich is the Chief Restructuring Officer of the Debtors ("CRO"). The CRO has been delegated the authority to approve all transactions involving the resolution of claims of the estates and the sale of assets, generally referred to as Restructuring Transactions. The CRO has approved the Restructuring Transactions described below and has authorized and directed the Debtors to pursue Bankruptcy Court approval of them.

By this Motion, the Debtors seek approval of related agreements and transactions that will provide substantial benefit to the estates and advance the Debtors towards reorganization. A brief summary of the agreements and transactions follows.

The Debtors' estates hold potential claims and causes of action against certain third parties. One such claim involves the purchase and ownership by Hickory of certain real estate in Hickory, North Carolina (the "Property") that is leased by Zloop, Inc. (the "Lease"). Zloop, Inc. is investigating whether such property should have been purchased by Zloop, Inc. or a subsidiary of Zloop, Inc. Rather than engage in extensive and costly investigation and litigation, the Debtors and Hickory have agreed to resolve the issue in a way that gives the Debtors the value of success in litigation without the costs and delay associated with litigation. Following discussions

and negotiations, and careful consideration by the Debtors' CRO, Hickory and the Debtors have agreed to the terms and conditions of a settlement, which includes a limited release of Hickory and the principals of Hickory (who are also insiders of the Debtors), Robert Boston and Robert LaBarge, in their capacities as officers and directors of the Debtors, limited to Hickory's acquisition of the Property, and in their capacities as members, managers, and officers of Hickory, arising from or in connection with Hickory's purchase and ownership of the Property. The Debtors will receive, among other things, beneficial title to the Property and a waiver by the Settlement Counterparties of claims and causes of action they have or may have against the Debtors or the estates relating to or arising from the Property or any related agreement, including, without limitation, claims for pre- and post-petition rent and other obligations owing by Zloop, Inc. under the Lease.

The Debtors submit that the exchange of these releases for the Property is good and valuable consideration in light of the risks and costs associated with any further investigation and inherent in litigation, and the nature of the potential claims and causes of action that would be subject to defenses and the success of which is not assured. This settlement provides the most favorable outcome for the estates that the Debtors could reasonably expect under the circumstances with respect to the potential claims and causes of action against Hickory or Messrs. Boston and LaBarge.

The Property is encumbered by (i) a first lien deed of trust in favor of a secured lender, Sky Top Holdings, LLC ("Sky Top"), (ii) an executed purchase and sale agreement under which an unrelated, third party has agreed to purchase the real property through a general warranty deed for a purchase price of $885,000.00 and (iii) a lease under which Zloop, Inc. is the tenant. The Debtors believe that this purchase and sale agreement is on fair terms and that the purchase price

is reasonable and was negotiated at arms' length, but nevertheless, seek authority to sell the Property to the party submitting the highest or otherwise best offer through a cost-efficient, private process to be run by the CRO in consultation with the Official Committee of Unsecured Creditors (the "Committee").

The net proceeds of this sale transaction will be used to pay or reserve for the payment of Sky Top's allowed secured claim, with any remaining amount to be recovered as unencumbered assets owned by the Debtors' estates.

As part of these contemplated transactions, the Debtors have determined that they no longer require use of the Property, and rejection of the Lease under section 365 of the Bankruptcy Code is in the best interest of their estates and will allow the sale of the property to be consummated free and clear of the Debtors' leasehold interests. In addition, as part of the settlement described above, Hickory, the fee owner/lessor of the property, has agreed to waive any and all rejection damages claims and any other claims it has or may have against the Debtors and the estates relating to the lease agreement or otherwise. Therefore, rejection will not adversely affect unsecured creditor recoveries in these Chapter 11 Cases by increasing the claims pool, and the Debtors will be relieved of ongoing payment and other obligations under the lease.

Accordingly, the Debtors request that this Court approve these interrelated agreements and transactions and grant the Debtors the authority to consummate the same.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this Motion and these Chapter 11 Cases under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The Debtors consent to the entry of a final order on this Motion if it is determined that

the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, and 9019, and Local Rules 4001-2 and 6004-1.

## BACKGROUND

**A.    General Background.**

2.    On August 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

3.    On September 2, 2015, the United States Trustee for the District of Delaware appointed the Committee in these Chapter 11 Cases.

4.    The Debtors operate a proprietary, state of the art, 100% landfill free eWaste[3] recycling company headquartered in Hickory, North Carolina. Founded in 2012 to address the large, untapped, fragmented market opportunity for recycling eWaste, the Debtors offer eWaste recycling and data destruction services through their facility in Hickory, NC.

5.    On or about June 20, 2014, Messrs. Boston and LaBarge formed Hickory for the purpose of purchasing from Sky Top the Property, located at 175 18th Street, SE, Hickory, North Carolina, and listed in the public records as Tract One, Plat Book 41, Page 122, Catawba County Registry, Parcel ID: 371207594155.

---

[3]    eWaste is an ubiquitous term used to cover almost all types of electrical and electronic equipment (EEE) that has or could enter the waste stream. Examples include TVs, computers, mobile phones, iDevices, stereo systems, toys, small and large appliances (white goods)—almost any household or business item with circuitry or electrical components with power cords or battery supply.

6.      Hickory closed on the purchase of the Property on or about July 2, 2014.   In connection with the closing, Zloop, Inc. advanced to Hickory $88,000.00, which Hickory used to pay an earnest money deposit for the purchase of the Property and Sky Top provided Hickory with a purchase money loan in the original principal amount of $593,000.00.

7.      Following closing, Hickory entered into the Lease, which is a Triple Net Lease, effective as of August 1, 2014.   Under the terms of the Lease, Zloop, Inc. was obligated to pay $9,167.00 per month in rent, plus all taxes and other charges associated with the Property.   A copy of the Lease is attached hereto as Exhibit B.

8.      In addition, upon and following the date Zloop, Inc. gained possession of the Property, Zloop, Inc. invested approximately $100,000.00 in tenant improvements to the Property, including installation of a plastic granulation processing line.

9.      As of the Petition Date, Zloop, Inc. was obligated to Hickory in the amount of $73,336.00 on account of unpaid rent and other obligations due under the Lease.

10.      The purchase money note made by Hickory in favor of Sky Top matured on July 2, 2015.   Hickory did not pay in full its obligations owing to Sky Top when due.   Sky Top declared Hickory in default as of July 13, 2015.

11.      On or about July 16, 2015, Sky Top entered into an agreement with Alex J. Campos ("Campos") to sell to Campos  Sky Top's note and deed of trust in consideration for payments totaling $613,122.00, representing 100% of Sky Top's claims under the purchase money note.   On or about July 20, 2015, Sky Top received payment from Campos in the amount of $120,122.00, with the balance coming due on or before August 31, 2015.   Campos entered into the purported agreement with Sky Top to benefit Hickory and Zloop and with the intent to forbear from exercising rights and remedies upon the closing, but rather to permit Hickory and

Zloop time to sell or further refinance the Property. The Debtors commenced these Chapter 11 Cases prior to the date by which Campos was obligated to perform any remaining obligations under his agreement with Sky Top.

12.     Sky Top alleges that Campos defaulted under his obligations owing to Sky Top by failing to pay the balance owing to Sky Top on or before August 31, 2015. Sky Top commenced a foreclosure proceeding against the Property. Currently, the hearing on Sky Top's foreclosure is scheduled for November 19, 2015, at 11:15 a.m. (Eastern Time). A copy of the Notice of Hearing in the foreclosure proceeding is attached hereto as Exhibit C. On or about November 13, 2015, Zloop, Inc. filed a suggestion of bankruptcy in the Sky Top foreclosure proceeding in order to prevent Sky Top from foreclosing Zloop, Inc.'s equitable and tenancy interests in the Property. Zloop, Inc. was not provided with notice of the foreclosure proceeding notwithstanding its leasehold interest in the Property. Upon information and belief, Sky Top had actual notice of the Lease and of the commencement of these Chapter 11 Cases.

13.     As of September 2, 2015, Sky Top asserted a claim against the Property in the amount of approximately $724,000.00. Sky Top has failed to credit Hickory for the amount of the payment made by Campos in the amount of $120,122.00 in its calculations of amounts remaining due. A copy of Sky Top's letter setting forth the elements of its claim is attached hereto as Exhibit D.

14.     In the summer of 2015, Hickory engaged Tony Jarrett and Prism Commercial Real Estate, LLC ("Prism") to market the Property for sale. Mr. Jarrett is a licensed commercial real estate broker in North Carolina. Mr. Jarrett is an equity owner in Zloop, Inc., having purchased a Zloop franchise and entered into a rescission agreement under which Mr. Jarrett agreed to exchange his rescission claim for equity in Zloop, Inc. The Hickory-Prism listing and

brokerage agreement is on standard terms and provides for a six (6%) percent commission payable out of sale proceeds.

15.     Prism has marketed the Property and has received several expressions of interest. On or about September 23, 2015, Hickory elected to accept an offer from Mark and Jessica Hingson of Sunrise, Florida (the "<u>Proposed Purchaser</u>") to purchase the Property for $885,000.00.  The Proposed Purchaser is an unrelated third party with no connections to Zloop, Inc., Hickory or either of Mr. Boston or Mr. LaBarge.  A copy of the Proposed Purchaser's purchase and sale agreement (the "<u>PSA</u>" or the "<u>Purchase and Sale Agreement</u>") is attached hereto as <u>Exhibit E</u>.

16.     The Proposed Purchaser deposited the earnest money deposit with Prism and is nearing the expiration of their diligence period with closing to occur not later than December 22, 2015.

17.     Hickory and Zloop have received additional expressions of interest, but without details of the price or terms or conditions.

**B.      The Settlement Agreement and Transfer of Beneficial Title to the Property to the Debtors.**

18.     The Debtors believe that their estates may possess claims and causes of action against the Settlement Counterparties relating to Hickory's purchase of the Property under principles of, among other things, usurpation of corporate opportunity and veil piercing/alter ego (such claims and causes of action against the Settlement Counterparties relating to the Property, the "<u>18th Street Property Claims</u>").  Hickory is the legal fee owner of the Property, however, Zloop asserts a beneficial interest in the Property.

19.     The Debtors have engaged in investigations, discussions, and arm's-length negotiations with the Settlement Counterparties regarding the 18th Street Property Claims and

potential resolutions thereof.  Such negotiations have culminated in the parties' agreement to a settlement of the 18th Street Property Claims (the "Settlement Agreement").  The essential terms of the Settlement Agreement are as follows:

a) <u>Conveyance of Beneficial Title to the Property</u>.  The Settlement Counterparties shall convey, assign, and transfer to Zloop, Inc. all of the Settlement Counterparties' beneficial right, title, and interest in and to (i) the Property, (ii) the Purchase and Sale Agreement (as defined below) and (iii) any earnest money deposit relating to the Purchase and Sale Agreement.  The beneficial interest in the Property shall be conveyed to Zloop Inc. free and clear of all real estate transfer taxes.  Hickory and Zloop, Inc., as sellers, shall execute and deliver at closing the deed to convey both legal and beneficial title to the Property to the buyer.

b) <u>Permitted Encumbrances</u>. The conveyance, assignment, and transfer of the beneficial interest in the Property shall be subject only to (i) the Agreement for Purchase and Sale of Real Property, dated as of September 23, 2015 (the "<u>Purchase and Sale Agreement</u>"),[4] by and between Hickory, as seller, and Mark and Jessica Hingson, as buyer (the "<u>Proposed Purchaser</u>"), pursuant to which the Proposed Purchaser has agreed to purchase the Property for a purchase price of $885,000.00 on the terms and conditions set forth therein, and (ii) a certain Purchase Money Deed of Trust, dated as of July 2, 2014 (the "<u>Sky Top Deed of Trust</u>"), executed and delivered by Hickory in favor of Sky Top pursuant to which Sky Top was granted a first lien in the Property to secure certain indebtedness of Hickory under a Purchase Money Promissory Note, dated as of July 2, 2014 (the "<u>Sky Top Note</u>"), in the original principal amount of $593,000.00.

c) <u>No Admission of Liability</u>. By entering into the Settlement Agreement and agreeing to convey, assign, and transfer their beneficial interests in the Property to the Debtors, the Settlement Counterparties do not admit any liability to the Debtors or their respective estates with respect to the 18th Street Property Claims or otherwise, and nothing contained in the Settlement Agreement shall be construed at any time as an admission of liability by any of the Settlement Counterparties.

d) <u>Waiver and Release of Lease-Related Claims</u>.  Each of the Settlement Counterparties agrees to forever release, discharge, and acquit each of the Debtors and their estates from any and all causes of action and claims (as that term is defined in Bankruptcy Code section 101(5)) arising out of or relating to the Lease, including any claims for unpaid rent, maintenance, utilities, taxes, or similar obligations and any claims for damages arising

---

[4]  A copy of the Purchase and Sale Agreement is attached hereto as <u>Exhibit E</u>.

out of the rejection of such Lease by the Debtors (which relief is requested herein).

e)     <u>Release</u>. Effective upon the closing of the sale of the Property, the Debtors, on behalf of themselves and their estates, agree to forever release, discharge, and acquit each Settlement Counterparty from any and all 18th Street Property Claims.

f)     <u>Effectiveness</u>. Except as otherwise provided by the terms and conditions of the Settlement Agreement, the Settlement Agreement shall become effective and binding only upon the entry of an order granting this Motion and approving the Settlement Agreement.

20.     The Debtors believe that these terms are fair and reasonable, satisfy the <u>Martin Factors</u>, will result in significant value being generated for the estates, and represent a positive step towards an overall restructuring in these Chapter 11 Cases.

**C.     The Purchase and Sale Agreement and Lease.**

21.     As noted above and in the Settlement Agreement, the transfer of the beneficial title to the Property shall remain subject to the Purchase and Sale Agreement, and by this Motion, the Debtors are seeking authorization to assume such agreement, proceed with the private transactions contemplated thereby, and to sell, transfer, and convey the Property to the Proposed Purchaser free and clear of all liens, claims, encumbrances, and interests to the fullest extent permitted under section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, the Debtors reserve the right to (i) discharge their fiduciary duty by seeking higher or otherwise better offers on terms and conditions more favorable to the estates than those included in the PSA, including, without limitation price, omission of contingencies, certainty of closing and timing, all in the CRO's sole discretion, in consultation with the Committee, (ii) conduct an auction, if determined by the CRO to be appropriate after consulting with the Committee, and (iii) consummating the sale of the Property to the Proposed Purchaser or such other party that submits a higher or otherwise better offer for the Property.

22. In accordance with Local Rule 6004-1, the essential terms and conditions of the Purchase and Sale Agreement are as follows:[5]

a) <u>Seller</u>. Hickory.

b) <u>Proposed Purchaser</u>. Mark and Jessica Hingson.

c) <u>Property</u>. Approximately 5.83 acres of real property located at 175 18th Street SE, Hickory, North Carolina 28602 (tax parcel number 371207594155) (*i.e.*, the Property).

d) <u>Purchase Price</u>. Eight Hundred Eighty-Five Thousand Dollars ($885,000.00).

e) <u>Earnest Money Deposit</u>. Fifteen Thousand Dollars ($15,000.00), which shall be applied towards the Purchase Price at Closing.[6]

f) <u>Closing Date</u>. On or before December 22, 2015.

g) <u>Conditions to Closing</u>. The rights and obligations of the parties under the Purchase and Sale Agreement are conditioned on (i) the Proposed Purchaser causing a title examination to be made of the Property on or before December 2, 2015, with certain obligations of the Seller to cure defects if proper and timely notice is given by the Proposed Purchaser, and (ii) the Property being in substantially the same condition at Closing as of the date of execution of the Purchase and Sale Agreement.

h) <u>Use of Proceeds</u>. As soon as reasonably practicable following Closing, the Debtors are seeking to release the net sale proceeds as follows:

<u>First</u>, to pay to, or reserve for payment to, Sky Top the full amount of all indebtedness owing under the Sky Top Note and Sky Top Deed of Trust (subject to Hickory's and the Debtors' challenge to the failure to credit the Campos deposit of $120,122.00 and the reasonableness of the Sky Top costs and attorneys' fees that Sky Top asserts are part of its claims) in full and final satisfaction, settlement, release, and discharge of all causes of action and claims (as that term is defined in Bankruptcy Code section 101(5)) arising out of or relating to the Sky Top Note, the Sky Top Deed of Trust, and/or the Property, **provided that** Sky Top (i) executes, delivers, and/or records any and all

---

[5] This summary contains a description of only certain principal terms of the Purchase and Sale Agreement. The Purchase and Sale Agreement itself should be consulted for a full description of the terms thereof. To the extent there are any inconsistencies between the terms set forth herein and in the actual terms set forth in the Purchase and Sale Agreement, the terms of the Purchase and Sale Agreement shall control. Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Purchase and Sale Agreement.

[6] The Earnest Money Deposit is being held by Prism.

documents, instruments, and agreements reasonably requested by the Debtors or the Proposed Purchaser, or other buyer, to release all liens, mortgages, deeds of trust (including the Sky Top Deed of Trust), or other security interests against the Property,. Sky Top's lien shall attach to the sale proceeds to the extent of Sky Top's allowed claim at closing until the allowed amount of Sky Top's claim is paid to Sky Top. All sale proceeds in excess of Sky Top's allowed claim shall be paid to Zloop, Inc. free and clear of all liens, encumbrances and interests; and

Second, any remaining sale proceeds shall be used by the Debtors to provide for the Debtors' postpetition operating expenses and general working capital needs and to fund the costs and expenses of administering these Chapter 11 Cases.

23. The Debtors, in their business judgment, believe that the terms and conditions of the Purchase and Sale Agreement, including the purchase price for the Property, are fair and reasonable, and the consummation of the sale transaction contemplated therein and hereby is in the best interest of the estates and all creditors and parties in interest.

24. The consummation of the Purchase and Sale Agreement, or any other agreement that is on more favorable terms, will maximize the value of the Property for the benefit of the Debtors' estates. Any additional formal marketing and sale process for the Property in these Chapter 11 Cases would (a) not yield a purchase price materially in excess of that set forth in the Purchase and Sale Agreement in the same time period, (b) be unduly expensive and unnecessarily divert resources from the estates, and (c) jeopardize the Debtors' ability to consummate the Purchase and Sale Agreement, under which time is of the essence.

25. In addition, in order to effectuate the sale and convey clear title to the Property to the Proposed Purchaser, or other buyer that submits a higher or otherwise better offer for the Property that is accepted by the CRO, after consulting with the Committee, the Debtors are seeking authorization to reject the Lease. The Debtors no longer intend to use the Property and the Lease has no material value for the estates.

26. The Debtors submit that the terms and conditions of the Purchase and Sale Agreement, or any other agreement that is on more favorable terms, and the transfer of Sky Top's lien to the proceeds of the sale to the same extent, validity and priority such lien enjoyed on the Property, constitutes adequate protection of Sky Top's interest. Therefore, the Court may approve the sale without further conditioning the sale of the Property or use of the proceeds and such sale may be free and clear of Sky Top's liens and interests under section 363(f) of the Bankruptcy Code.

27. Finally, Hickory has agreed to release all claims against the estates relating to the Lease and the rejection thereof. At or prior to closing, Debtors will have removed their property from the Property and have turned over possession thereof to Hickory and the buyer.

28. Rejection of the Lease, therefore, is in the best interests of the estates.

## **RELIEF REQUESTED**

29. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A:

(a) approving the Settlement Agreement and authorizing the parties to effectuate the transactions contemplated therein;

(b) ordering the transfer of the Settlement Counterparties' beneficial interest in the Property to Zloop, Inc. free and clear of any applicable transfer taxes, subject to the Sky Top Lien and the Purchase and Sale Agreement;

(c) authorizing the Debtors, effective as of the closing on the sale of the Property under the Purchase and Sale Agreement, to assume the Purchase and Sale Agreement, unless through the exercise of their fiduciary duty the CRO, in consultation with the Committee, determines to sell the Property to another buyer that has submitted a higher or otherwise better offer to purchase the Property at which time the Purchase and Sale Agreement will not be considered an estate asset and need not be either assumed or rejected by the Debtors;

(d) approving the private sale of the Property to the Proposed Purchaser in accordance with the terms and conditions of the Purchase and Sale Agreement, or to such other party that submits a higher or otherwise better

offer for the Property, free and clear of all liens, claims, encumbrances, and interests to the fullest extent permissible under section 363(f) of the Bankruptcy Code;

(e)     authorizing the Debtors to reject the Lease; and

(f)     granting certain related relief.

## BASIS FOR RELIEF

**A.     The Settlement Agreement Should Be Approved.**

30.     This Court has the power under Bankruptcy Rule 9019 and sections 105(a) and 363 of the Bankruptcy Code to authorize the Debtors to enter into the Settlement Agreement. *See* FED. R. BANKR. P. 9019(a) ("on motion by the trustee and after a hearing, the Court may approve a compromise or settlement."). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363 of the Bankruptcy Code permits the Debtors, after notice and a hearing, to use, sell or lease property of their estates other than in the ordinary course of business.

31.     The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge."). The U.S. Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414 (1986).

32.     Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. *In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (Bankr. E.D. Pa.

1986).  The court must determine whether the proposed settlement is in the "best interests of the estate."  *See In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).  In determining the fairness and equity of a compromise in bankruptcy, the U.S. Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]."  *In re Penn Central Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979); *see also In re Marvel Entertainment Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'")).

33.     In particular, the Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved, namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (the <u>Martin Factors</u>); *accord Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

34.     In deciding whether to approve a settlement, the bankruptcy court should not substitute its judgment for that of the debtor.  *Neshaminy*, 62 B.R. at 803.  Nor should it decide the numerous questions of law or fact raised by litigation.  Rather, it should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.  *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health Alternatives,*

*Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

35.    The resolutions embodied in the Settlement Agreement are reasonable and in the best interest of the Debtors, their estates, and their creditors. The Settlement Agreement involves the transfer of 100% of the equity and value of the Property to Zloop, Inc. (transferring only the beneficial interest in the Property relieves the Zloop, Inc. estate of any potential exposure to unknown conditions, claims, encumbrances or interests in the Property). The proposed transactions contemplated by the Settlement Agreement would preserve estate resources by efficiently resolving various potential claims and causes of action, with the Debtors and the estates receiving significant and valuable assets and rights—namely, beneficial title to the Property and certain net proceeds thereof following the closing on sale of the Property, including, without limitation, credit against the obligations owing to Sky Top derived from the Campos deposit, and a waiver and release by the Settlement Counterparties of any claims in connection with the Property and Lease, including any rejection damages claims. The estates could not recover more on account of the potential claims respecting the Property.

36.    Further, the applicable <u>Martin Factors</u> weigh in favor of approving the Settlement Agreement. First, in contrast to the cost of completing the relevant investigation and the uncertainty and inherent risk in litigating with the Settlement Counterparties and the unavoidable costs related thereto, the Settlement Agreement provides the Debtors with an efficient and cost-effective resolution of the various potential claims between the parties. Second, failing to achieve a consensual resolution of the matters being settled would add inconvenience, expense,

and potential delays to these Chapter 11 Cases—effects which would be borne by both the Debtors and their creditors at large. Third, entry into the Settlement Agreement serves the interests of all creditors of the Debtors, given that the Settlement Agreement will ultimately yield significant net sale proceeds for the estates, and the pool of potential unsecured claims will be decreased due to the releases and waivers being given by the Settlement Counterparties.

37. In short, the Settlement Agreement is in the best interests of the Debtors and their creditors. The Settlement Agreement (a) is fair and equitable, (b) provides a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes, (c) obviates the expense, delay, inconvenience, and uncertainty that would attend any litigation of the parties' issues, and (d) advances the paramount interests of creditors. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

**B.    The Debtors Should be Authorized to Assume the Purchase and Sale Agreement.**

38. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The assumption or rejection of an executory contract or unexpired lease is subject to review under the business judgment standard. If a debtor has exercised "reasonable" business judgment, the court should approve the proposed assumption or rejection. *See*, *e.g.*, *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib.*, 872 F.2d 36, 39–40 (3d Cir. 1989); *Glenstone Lodge, Inc. v. Buckhead Am. Corp (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995). A debtor is

given significant discretion when requesting authority to assume or reject an executory contract. *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005).

39.     The Debtors' decision, acting through their CRO, effective upon the closing of the sale of the Property under the Purchase and Sale Agreement, to assume the Purchase and Sale Agreement is a sound exercise of their business judgment.  First, assumption of the Purchase and Sale Agreement is an essential component of the overall transaction described herein, and failure to do so may jeopardize the Debtors' ability to, among other things, maximize value for the estates from the Property, resolve the various potential or asserted claims and causes of actions described herein, and satisfy the allowed secured claims and liens of Sky Top.  Second, the terms and conditions of the Purchase and Sale Agreement, including the purchase price set forth therein, are fair and reasonable and will benefit the estates.  Third, assumption of the Purchase and Sale Agreement and consummation of the transactions set forth therein will allow the Debtors to move towards a restructuring and resolution of these Chapter 11 Cases.

40.     Nevertheless, the Debtors reserve the right to discharge their fiduciary duties by further testing the market to ascertain whether a higher or otherwise better offer for the Property may be obtained.  In the event the CRO determines, after consultation with the Committee, that he has received a higher or otherwise better offer, in the alternative, the Debtors seek authority to assume the Purchase and Sale Agreement, as amended, should the highest or otherwise best offer be received by the Proposed Purchaser, or to consummate the sale of the Property to such other buyer under such higher or otherwise better terms.  The assignment by Hickory of the Purchase and Sale Agreement and the Debtors' assumption of the Purchase and Sale Agreement would only occur and be effective upon a closing of the sale of the Property under the Purchase and Sale Agreement.

41. For the foregoing reasons, the Debtors' decision to assume the Purchase and Sale Agreement, effective upon the closing of the sale of the Property under the Purchase and Sale Agreement, represents a sound exercise of their business judgment and, therefore, should be approved by this Court.

**C.    The Sale of the Property Free and Clear of Liens is Warranted.**

42. Ample justification exists for approval of the proposed sale of the Property. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

43. The decision to sell assets outside of the ordinary course of business is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 289, 295 (3d Cir. 1996); *In re Titusville Country Club*, 128 BR. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry. Co.*, 124 BR. 169, 176 (D. Del. 1991); *see also Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

44. The paramount goal in any proposed sale of property of the estate is to maximize the value received by the estate. *See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)). As long as the sale appears to enhance a debtor's estate, court approval of a debtor in possession's

or trustee's decision to sell should only be withheld if the debtor in possession's or trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *See GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

45. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business and not under a plan may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, Case No. 89-C-593,

1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

46.     While the Settlement Counterparties negotiated and entered into the Purchase and Sale Agreement, the CRO has approved the terms and conditions of the Purchase and Sale Agreement and it is the CRO's business judgment to seek to sell the Property either by assuming and consummating the transactions contemplated thereby, or to such other buyer under higher or otherwise better terms and conditions.  The Debtors submit, therefore, that the proposed sale of the Property on terms at least as favorable to the estates as those set forth in the Purchase and Sale Agreement is within their sound business judgment.  The purchase price and other terms and are fair and reasonable and will maximize value for the estates.  Accordingly, the Debtors respectfully request that the sale of the Property to the Proposed Purchaser be approved, or to such other buyer under higher or otherwise better terms and conditions.

47.     The Debtors also submit that the sale of the Property should be free and clear of any and all liens, claims, encumbrances, and interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and interests attaching to the proceeds of such sale.

48.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

49.     Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)); *In re Dundee Equity Corp.*, Case No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *see also Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

50.     The Debtors submit that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to the sale of the Property.  In particular, section 363(f)(2) will be met in connection with the transactions proposed because each of the parties holding liens, claims, or encumbrances encumbering the Property will consent, or absent any objection to this Motion, will be deemed to have consented, to the sale.  Further, any such lien, claim, or encumbrance will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto, and the

Debtors are proposing to use the sale proceeds to pay the allowed claims of Sky Top under the Sky Top Note and Sky Top Deed of Trust.

51.     Accordingly, the Debtors request that the Property be sold and transferred to the Proposed Purchaser, or other buyer that has offered the highest or otherwise best terms accepted by the CRO, after consulting with the Committee, free and clear of all liens, claims, encumbrances, and interests under section 363(f) of the Bankruptcy Code.

**D.      Waiver of Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

52.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).   Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assume an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d).   The Debtors believe an efficient and expeditious approval and implementation of the various transactions contemplated herein, including in connection with the Settlement Agreement, Purchase and Sale Agreement, and Lease, is in the best interests of creditors and the estates.   Accordingly, the Debtors request that this Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

<u>**NOTICE**</u>

53.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Committee, (c) each of the Settlement Counterparties, (d) Sky Top, (e) the Proposed Purchaser, (f) Prism, (g) Campos, (h) counsel to Prime Materials Recovery, Inc., (i) all applicable taxing authorities with respect to the Property, (j) any entity known or reasonably believed to have asserted a security interest in or lien against

the Property, and (k) all parties requesting notices in these Chapter 11 Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

## NO PRIOR REQUEST

54.     No prior request for the relief sought herein has been made to this or any other court.


WHEREFORE, the Debtors respectfully request that this Court (i) enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested herein, and (ii) grant such other and further relief as this Court deems just and proper.


Dated:  November 13, 2015
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Kaitlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 394-2341
Email:  stuart.brown@dlapiper.com
       craig.martin@dlapiper.com
       daniel.brogan@dlapiper.com
       kaitlin.edelman@dlapiper.com

*Counsel to Debtors and Debtors in Possession*