## Schedule 1

**Settlement Agreement**

EAST\124209484.1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases ("Settlement Agreement") is made and entered into this 13th day of May, 2016 by and among (i) DCR Mortgage 7 Sub 1, LLC ("DCR"); and (ii) ZLOOP, Inc., ZLOOP Nevada, LLC, and ZLOOP Knitting Mill, LLC (together, the "Debtors"). The parties may be referred to herein individually as a "Party" and collectively as the "Parties". The Parties hereto agree to be bound by the terms of this Settlement Agreement as follows:

### General Background

A.      On August 9, 2015 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B.      As of the Petition Date, the Debtor ZLOOP Nevada, LLC ("ZLOOP") owed approximately the principal amount of $3.5 million to Eagle Group Finance, L.P. ("Eagle Group Finance") pursuant to that certain Promissory Note Secured By Deed of Trust (the "Note"), dated March 9, 2015, by and between ZLOOP and Eagle Group Finance. The Note was secured by, among other things, a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Deed of Trust") creating a first mortgage lien on the Debtors' real property commonly known as 190 Resource Drive, Fernley, Nevada 89408 (the "Nevada Property"), together with all improvements of every nature whatsoever on the Nevada Property, and all fixtures owned by ZLOOP and located on, or used in connection with, the Nevada Property or the improvements thereon. DCR asserts that the lien of the Deed of Trust also attached to certain personal property. The Debtors dispute that DCR holds a perfected, enforceable and unavoidable lien on such personal property.

1

#39232715 v7

C.      On September 17, 2015, the Bankruptcy Court entered an order (the "Miller Retention Order") authorizing the Debtors to continue retention of Miller Industrial Properties, LLC ("Miller") as real estate broker to the Debtors to conduct a sale process for the Nevada Property. Pursuant to the Miller Retention Order, Miller was to be paid a commission fee of 6% of the gross sales price in any disposition of the Nevada Property.

D.      On November 13, 2015, Eagle Group Finance filed a proof of claim (the "EGF Claim") against ZLOOP, asserting a secured claim in the principal amount of $3,500.000.00. As of the date hereof, no objection has been filed to the EGF claim.

E.      On November 20, 2015, the Bankruptcy Court entered an order (the "Keen Retention Order") authorizing the Debtors' retention of Keen-Summit Capital Partners LLC ("Keen") to serve as real estate consultant and advisor to the Debtors. The Keen Retention Order modified the fees that would be owed to Miller under the Miller Retention Order. Pursuant to the Keen Retention Order, upon the closing of a "Transaction", Keen would have earned a "Transaction Fee" equal to 5.5% of the value of any such Transaction allocated to the Nevada Property, with Keen retaining 3.75% and Miller retaining 1.75%, provided that if a "Prior Prospect" with whom Miller was working closed a Transaction, Miller would be entitled to 2.625% of the Transaction Fee, and further provided that no Transaction Fee or other compensation would be payable from Eagle Group Finance's collateral unless and until Eagle Group Finance's Note has been fully satisfied or upon further order of the Bankruptcy Court.

F.      On February 23, 2016, DCR purchased the Note from Eagle Finance Group. The Debtors have no knowledge respecting DCR's purchase of the Note from Eagle Finance Group.

G.      On May 2, 2016, the Debtors filed the *Motion of the Debtors for an Order (I)(A) Approving Procedures in Connection with the Sale of Certain Property Located in Fernley, NV;*

#39232715 v7

*(B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving the Form and Manner of Notice Thereof; (D) Approving Break-Up Fee and Expense Reimbursement; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Certain Real Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (B) Granting Related Relief* (the "Sale Motion"), seeking, *inter alia*, the approval of bid procedures (the "Bid Procedures") for the sale of (i) the Nevada Property, (ii) the fixtures affixed thereto, (iii) all personal property and equipment, if any, located on the Nevada Property, and (iv) all other property interests belonging or appurtenant to the Nevada Property (the "Fernley Assets"). The Bid Procedures seek, among other things, to deny DCR the right to credit bid for the Fernley Assets pursuant to section 363(k) of the Bankruptcy Code.

H.    On May 3, 2016, DCR filed a Transfer of Claim Other than for Security (Docket No. 442), providing notice of the transfer of the EGF Claim from Eagle Group Finance to DCR. On May 6, 0216, the Stipulation of Transferor's Waiver of Objections to Transfer of Claim Other Than for Security (the "Waiver Stipulation") (Docket No. 448) was filed.   Pursuant to the Waiver Stipulation, Eagle Group Finance relinquished the right to object to the transfer of the EGF Claim to DCR.

I.    DCR has informally raised several objections to the Sale Motion and related claims against the Debtors including, among others: (i) that the lien held by DCR attaches to all of the Fernley Assets; (ii) that DCR is a holder in due course; (iii) that DCR is entitled to credit bid the full amount of its asserted secured claim in an amount in excess of $4.3 million; and (iv) that DCR does not consent to the proposed sale of the Fernley Assets as contemplated by the Sale Motion.  The Debtors dispute DCR's contentions.

#39232715 v7

J.    In response, the Debtors have asserted that: (i) DCR is not a holder in due course and is subject to the Debtors' defenses and counterclaims in an amount not less than $125,000; (ii) that Debtors' obligations to DCR are subject to set-off, including, without limitation, their right to surcharge DCR's alleged collateral under Section 506(c) of the Bankruptcy Code in an amount not less than $500,000; and (iii) that the Debtors' obligations and DCR's claim and lien may be avoided as fraudulent transfers, which, if successful, would render the Fernley Assets unencumbered.  DCR disputes these contentions.

### Settlement Discussions

K.    The Debtors and DCR have discussed the Sale Motion, the Bid Procedures and the prospective sale of the Fernley Assets (collectively, the "Sale Issues"), and now desire to resolve all matters related to the Sale Issues without the need for further litigation and upon the terms and conditions set forth below.

NOW THEREFORE, the Debtors and DCR, in consideration of their mutual promises stated in this Settlement Agreement and subject to approval by the Bankruptcy Court, each agree as follows:

1.    **Recitals**.  The recitals set forth above are incorporated herein by this reference as though set forth in full.

2.    **Payment to Debtors for Fernley Assets**.  Within three (3) business days of the occurrence of the Effective Date (as defined in paragraph 9 below), DCR shall pay the Debtors the sum of $250,000.00 (the "Cash Consideration"), free and clear of all liens, in accordance with wire transfer instructions attached hereto as **Exhibit 1**.    The Cash Consideration, the Deed in Lieu (defined below) and the Bill of Sale (defined below) shall be exchanged simultaneously.

-4-

3.      **Payment to Debtors for Keen and Miller Fees**.  Without altering any of the terms of the Keen Retention Order, and in particular its provision that no Transaction Fee or other compensation shall be payable from Eagle Group Finance's collateral unless and until Eagle Group Finance's Note has been fully satisfied or upon further order of the Bankruptcy Court, within three (3) business days of the occurrence of the Effective Date (as defined in paragraph 9 below), DCR shall also pay the Debtors the amount of $45,000.00 (the "Keen/Miller Settlement Proceeds"), to be used by the Debtors for the sole and exclusive purpose of satisfying any allowed claim against the Debtors by Keen or Miller for compensation ("Nevada Property Compensation") alleged to be due in connection with any transaction involving the Nevada Property; provided, however, that the Debtors shall provide DCR prompt written notice of the amount, if any, of Nevada Property Compensation to which Keen and/or Miller asserts a right, as well as any negotiated resolution of any such asserted right, and in the event Keen or Miller do not assert a right to Nevada Property Compensation or agree to accept Nevada Property Compensation in, or if the Bankruptcy Court allows, an amount less than the Keen/Miller Settlement Proceeds, the Debtors shall promptly return the balance of the Keen/Miller Settlement Proceeds to DCR.

4.      **Transfer of Fernley Assets to DCR**.  Within three (3) business days of the Effective Date (as defined in Paragraph 9 below), (i) the Chief Restructuring Officer on behalf of ZLOOP shall execute a Grant Bargain and Sale Deed in Lieu of Foreclosure (the "Deed In Lieu"), substantially in the form attached hereto as Exhibit 2, transferring title to the Nevada Property to DCR or its designee, and (ii) the CRO on behalf of the Debtors shall transfer title and ownership of all other Fernley Assets to DCR or its designee "as is" "where is" (the "Bill of Sale").

#39232715 v7

5.    **DCR's Retention of Keen and Miller**.    After transfer of title to the Nevada Property pursuant to the Deed in Lieu, DCR will offer to retain Keen and Miller, pursuant to mutually acceptable terms of a joint engagement letter (the "Engagement Letter"), to provide real estate brokerage services for a period of ninety (90) days from the date of their contract in connection with the sale of the Nevada Property. The contract shall provide that Keen and Miller shall collectively receive a commission fee of 6% of the gross sales price in any sale of the Nevada Property for which Keen and Miller have identified the purchaser, to be allocated as set forth in the Engagement Letter; provided, however, that the gross amount of any commission fee payable to Keen and Miller pursuant to the Engagement Letter shall be reduced by the amount of Keen/Miller Settlement Proceeds paid to Keen/Miller. Other than payment to the Debtors of the Keen/Miller Settlement Proceeds and offering to retain Keen and Miller pursuant to this paragraph and the terms of the Engagement Letter, DCR shall have no liability whatsoever to Keen or Miller for any other services or claims Keen or Miller may have against the Debtors, their estates or property of their estate, or any other person or entity.

6.    **Phase II Environmental Site Assessment**.    Upon execution of this Settlement Agreement by the Parties and DCR's demonstration to the Debtors' reasonable satisfaction that such activities will be covered by DCR's insurance coverage, the Debtors shall permit DCR and its duly-authorized agents appropriate access to the Nevada Property for the purpose of conducting a Phase II Environmental Site Assessment, provided however, that the results of such Phase II Environmental Site Assessment shall not change, modify, or otherwise alter the terms and obligations of the Parties under this Settlement Agreement.

7.    **Release by the Debtor Parties**.    In exchange for the Cash Consideration and other consideration to be received under this Settlement Agreement, and except for the

-6-

obligations arising out of this Settlement Agreement, upon the Effective Date and the Debtors' receipt of the Cash Consideration and the Keen/Miller Settlement Proceeds, the Debtors, their estates, affiliates, subsidiaries, successors and assigns and all persons claiming through, on behalf of or for the benefit of the Debtors, their estates, affiliates, subsidiaries, successors and assigns, whether by contract, assignment or otherwise (the "Debtor Parties") hereby forever waive, release and discharge DCR and its affiliates, subsidiaries, successors, and assigns (the "DCR Parties") of or from any and all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, promises, variances, trespasses, damages, judgments, executions, claims, counterclaims, set-offs or demands whatsoever in law or in equity, now known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtor Parties now have, had or may have against the DCR Parties from the beginning of time through the Effective Date, including, but not limited to, (i) any claims against the DCR Parties under section 506(c) of the Bankruptcy Code, (ii) any claims, including pursuant to chapter 5 of the Bankruptcy Code or any state law, against the DCR Parties for avoidance of any transfer or obligation, and (iii) any claims against the DCR Parties relating to the Note.

        8.     **Release by the DCR Parties**.  In exchange for the consideration to be received under this Settlement Agreement, and except for the obligations arising out of this Settlement Agreement, upon the Effective Date and DCR's receipt of the Deed in Lieu and Bill of Sale, the DCR Parties hereby forever waive, release and discharge the Debtors, their estates, successors and assigns of or from any and all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts,

-7-

controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, counterclaims, set-offs or demands whatsoever in law or in equity, now known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the DCR Parties now have, had or may have against the Debtors, their estates, property of their estates, successors and assigns from the beginning of time through the Effective Date, including but not limited to the EGF claim; provided, however, that DCR shall retain all of the liens and encumbrances on the Fernley Assets to permit it to transfer ownership of those assets to DCR or its assigns (it being the express intent of the Parties that DCR's lien not merge with title). Nothing contained herein shall affect, and DCR hereby expressly reserves, the right to foreclose the Deed of Trust by judicial or non-judicial foreclosure, and, in connection with any such foreclosure, the Debtors and/or any guarantors may, in DCR's sole discretion, be named as a party defendant, and DCR will be permitted to seek, obtain, and satisfy a non-monetary judgment with respect only to the Fernley Assets in any such foreclosure proceedings, provided, however, that neither the Debtors nor any guarantors shall be liable for any monetary judgment.

9.    **Bankruptcy Court Approval**.    Not later than one (1) business day following execution by the Parties of this Settlement Agreement, the Debtors shall file with the Bankruptcy Court a motion (a "9019 Motion") to approve the Settlement Agreement pursuant to 11 U.S.C. §§ 105 and 363 and Federal Rule of Bankruptcy Procedure 9019. If the 9019 Motion is granted, the Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties hereto upon the date (the "Effective Date") the order approving the 9019 Motion (a "9019 Order") becomes final and non-appealable and not subject to a motion for reconsideration, excluding any motion that may be filed under Fed.R.Civ.P. 60 (the "Final Order"). If the

#39232715 v7

Bankruptcy Court denies the 9019 Motion, then (i) the Settlement Agreement shall be null and void; (ii) any releases granted by or in favor of the Parties shall be null and void and (iii) the Parties shall be restored to the *status quo ante* respecting the Sale Motion, and none of the recitals or agreements provided for in this Settlement Agreement shall be of any force or effect or construed as an admission or waiver. The Parties shall cooperate to secure entry of the Final Order approving the Settlement Agreement.

10.    **Relief from the Automatic Stay.** Effective upon the Effective Date, the Debtors hereby consent to the Bankruptcy Court, in connection with its approval of this Settlement Agreement, granting DCR or its assignee relief from the automatic stay ("Stay Relief") imposed pursuant to section 362 of the Bankruptcy Code to take any and all actions necessary and appropriate to implement the terms of and to consummate the transactions contemplated by this Settlement Agreement, including, but not limited, to foreclosure pursuant to the Promissory Note held by DCR, and no Debtor Party shall take any action to oppose, contest or otherwise interfere with the granting of such Stay Relief.

11.    **Withdrawal of the Sale Motion.** Upon entry of the 9019 Order, the Debtors shall withdraw without prejudice the Sale Motion. Upon the 9019 Order becoming a Final Order, such withdrawal shall be deemed with prejudice. In the event the Bankruptcy Court denies the 9019 Motion, the Debtors shall consult with DCR on a mutually agreeable schedule for the Sale Motion, including any objection deadline, discovery period and hearing with respect to the Sale Motion. If the Parties cannot agree on a mutually agreeable schedule, then the Bankruptcy Court shall enter an order governing the schedule.

12.    **Full Knowledge.** The Parties each expressly and knowingly acknowledge that, after the execution of this Settlement Agreement, they may discover facts different from or

#39232715 v7

in addition to those that they now know or believe to be true with respect to the claims released in this Settlement Agreement. Nonetheless, this Settlement Agreement shall be and remain in full force and effect in all respects in accordance with its terms, notwithstanding such different or additional facts and the Parties each intend to fully, finally, and forever settle and release those claims released in this Settlement Agreement. In furtherance of such intention, the release given in this Settlement Agreement shall be and remains in effect as a full and complete release of such claims, notwithstanding the discovery and existence of any additional or different claims. The Parties each assume the risk of misrepresentations, concealments, or mistakes, and if any of the Parties should subsequently discover that any fact relied upon in entering into this Settlement Agreement was untrue, that any fact was concealed, or that their understanding of the facts or law was incorrect, they shall not be entitled to set aside this Settlement Agreement or the settlement reflected in this Settlement Agreement or be entitled to recover any damages on that account.

13.    **Assumption of Risk**. **Each Party understands and agrees that the facts upon which this Settlement Agreement is based may hereinafter turn out to be other than, or different from, the facts now known or believed by each to be true. The Parties understand and further agree that each is assuming a risk in this regard, and that this Settlement Agreement is not subject to termination or rescission by reason of any such difference in facts. The Parties acknowledge the significance and consequences of their specific waiver of unknown released claims, and hereby assume full responsibility for any injuries, damages, losses or liabilities that each may hereinafter incur from the waiver of these unknown released claims.**

#39232715 v7

14.   **Covenant Not To Sue**.   Subject to paragraph 8 of this Settlement Agreement, each Party agrees that such Party will not commence or prosecute any right, claim, or cause of action that such Party has released in this Settlement Agreement.

15.   **Cooperation**.   The Parties covenant and agree to execute and deliver such additional documents and do all such acts and things in a timely fashion as may be reasonably necessary or requisite to carry out the full intent and meaning of this Settlement Agreement and to obtain Bankruptcy Court approval of the Settlement Agreement; provided, however, the Debtors shall not be required to expend any funds in satisfying their obligations under this paragraph 15.

16.   **Arm's-Length Negotiation**.   Each of the Parties agrees that this Settlement Agreement is the result of a good faith, arm's-length negotiation between the Parties and represents the reasonably equivalent exchange of consideration between them..

17.   **Assignment**.   The Parties represent and warrant to each other that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, right of action, or cause of action relating in any way to the releases or any other matter covered by this Settlement Agreement.

18.   **No Admission Of Liability**.   The Parties understand and agree that this Settlement Agreement is entered into solely to effectuate an economic resolution of the matters set forth in this Settlement Agreement.   The Parties further understand and agree that this Settlement Agreement effects a settlement of the rights, claims and causes of action being released hereby, all of which are denied and contested, such that nothing herein shall be construed as an admission of any liability or fact, or waiver, by any Party.

#39232715 v7

-11-

19.    **Changes**. This Settlement Agreement may not be changed, modified or altered except by an agreement in writing signed by or on behalf of the Parties hereto.

20.    **Parties to Bear Own Costs and Fees**. The Parties will bear their own respective costs and attorneys' fees in connection with this Settlement Agreement and the matters being settled herein, including but not limited to the Sale Issues.

21.    **Integrated Agreement**. This Settlement Agreement constitutes a single integrated written contract expressing the entire agreement of the Parties. There are no other agreements, written or oral, express or implied, between and among the Parties, or their successors and assigns, other than this Settlement Agreement.

22.    **Advice of Counsel**. In executing this Settlement Agreement, each of the Parties hereto acknowledges that they have consulted with and have had the benefit of advice of counsel of their own choosing, or has had the opportunity to consult with counsel, in negotiations for and preparation of this Settlement Agreement and was fully advised or had the opportunity to be fully advised by counsel with respect to all rights which are affected by this Settlement Agreement. Each Party hereto acknowledges that its counsel played a role in drafting this Settlement Agreement, and that this Settlement Agreement should not be construed in favor of or against any Party.

23.    **Choice of Law and Forum Selection**. This Settlement Agreement will in all respects be interpreted, enforced and governed under the laws of the State of Nevada. The language in all parts of this Settlement Agreement will in all cases be construed as a whole according to its fair meaning and not strictly for or against any of the parties. Should any dispute arise between the Parties regarding the interpretation or performance of this Settlement Agreement, such dispute shall be resolved solely by the Bankruptcy Court and the Parties each

#39232715 v7

consent to the Bankruptcy Court's exercise of jurisdiction with respect to them and the subject matter of any such dispute.

24.    **Tax Advice**.  The Parties acknowledge and agree that none of the Parties has made representations or warranties concerning tax obligation(s), if any, that may arise from this Settlement Agreement.

25.    **Authority**.  The signatories to this Settlement Agreement hereby represent and warrant that they are fully authorized and empowered to enter into, execute and deliver this Settlement Agreement on behalf of the Parties, that they are doing so voluntarily and without compulsion or coercion and that they have read and understand the provisions of this Settlement Agreement and understand its legal, binding effect, that their execution of this Settlement Agreement does not knowingly cause the Party on whose behalf they are executing the agreement to breach any contractual obligation it may have with a third party and that there are no other entities, aside from the parties to this Settlement Agreement, that have any claims to assert arising out of or relating to the matters released herein; provided, however, the signatory on behalf of the Debtors is authorized and may only bind the Debtors in accordance with the Final Order.

26.    **Severability**.  Except with respect to the transfer of property, payment and release provisions contained in this Settlement Agreement, all of which shall be non-severable, if any clause or provision of this Settlement Agreement is held to be illegal, invalid or unenforceable under any law applicable to the terms hereof, then the remainder of this Settlement Agreement will not be affected thereby.

27.    **Binding Effect**.  This Settlement Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective representatives, successors and

-13-

assigns; provided, however, the foregoing will not be deemed or construed to confer any right, title, benefit, cause of action or remedy upon any person or entity not a party hereto, which that party would not and did not otherwise possess.

          28.     **Counterparts**.   This Settlement Agreement may be executed in any number of original counterparts and/or by facsimile signature, each of which will be deemed an original, and taken together they will constitute one and the same Settlement Agreement.

#39232715 v7

IN WITNESS WHEREOF, the parties execute this Settlement Agreement and

Mutual Releases on the dates set forth below:

Date: May 13, 2016                          ZLOOP, Inc., ZLOOP Nevada, LLC, and
                                            ZLOOP Knitting Mill LLC

                                            By: _____
                                            Name: William Heinrich
                                            Title: Chief Restructuring Officer

Date: May ___, 2016                         DCR Mortgage 7 Sub 1, LLC

                                            By: _____
                                            Name:
                                            Title:

#39232715 v7

IN WITNESS WHEREOF, the parties execute this Settlement Agreement and

Mutual Releases on the dates set forth below:

Date: May __, 2016

ZLOOP, Inc., ZLOOP Nevada, LLC, and
ZLOOP Knitting Mill, LLC

By:_____
Name:  William Henrich
Title:  Chief Restructuring Officer

Date: May 12, 2016

DCR Mortgage 7 Sub 1 LLC

By:_____
Name:  Lance B. Amano,
Title:  Senior Vice President

#39232715 v7