**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ZLOOP, INC., *et al.*, [1] | Case No.  15-11660 (KJC) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OBJECTION TO  REQUEST OF RECYCLING EQUIPMENT, INC.**
**FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

ZLOOP, Inc., and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), by and through their attorneys, DLA Piper LLP (US), hereby object (the "Objection") to the *Request of Recycling Equipment, Inc. for Payment of Administrative Expense Claim*  (the "Request").[2]  In support of this Objection, the Debtors respectfully state as follows:

**RELEVANT BACKGROUND**

1.      Prior to the Petition Date, REI purported to assist the Debtors in the design, installation, training, maintenance and operation of highly efficient eWaste recycling production lines.

2.      On July 31, 2015, the Debtors commenced an action against REI (the "REI Litigation"), asserting claims for breach of contract, unfair and deceptive trade practices, negligent misrepresentation, fraud, fraudulent inducement, and tortious interference with contract.   Importantly, all occurrences that give rise to the claims asserted in the REI

---

[1]      The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are:  ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098).  The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

[2]      To aid in the Court's consideration of the Request and this Objection, a copy of the Request is affixed hereto as Exhibit A.

Litigation occurred and, indeed, the REI Litigation was commenced, prior to the Petition Date.

3.      On September 2, 2016, the Debtors filed the *Debtors' Modified Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [D.I. 572] (the "Plan").[3]

4.      On November 9, 2016, the Court entered the *Order (I) Approving and Authorizing the Private Sales of Surplus Equipment Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Directing Turnover; and (III) Granting Related Relief* (the "Trailer Sale Order") [D.I. 181], which among other things, required the Debtor to remit $40,247.20 of the proceeds of the sale approved thereby to be held in escrow (the "REI Escrow") pending agreement between the Debtors and REI, or entry of a further order of this Court regarding the disposition of the REI Escrow and subject to REI's asserted lien therein and all defenses and lien challenges of the estates.

5.      On November 16, 2015, REI filed a proof of claim in these Chapter 11 Cases, assigned claim number 19, asserting a claim in the amount of $855,237.45 with $40,247.20 allegedly secured by the REI Escrow and the remaining $814,990.25 allegedly secured by a right of setoff pursuant to Sections 506 and 553 of the Bankruptcy Code (together, the "REI Secured Claim").

6.      On October 14, 2016, REI filed the Request, by which it seeks payment of certain speculative, contingent claims for reimbursement of attorney's fees as an administrative expense, should such fees ever be awarded in favor of REI in the REI Litigation.

---

[3]      Capitalized terms used, but not defined herein have the meaning given in the Plan.

EAST\135074663.2

**OBJECTION**

7.      The Debtors object to the Request, because the claims asserted by REI are not entitled to treatment as an administrative expense of the Debtors' estates.

**BASIS FOR OBJECTION**

8.      In support of its requested relief, the Request first notes that "[d]amages resulting from the negligence and/or wrongful conduct of a trustee or debtor in possession give rise to 'actual and necessary costs' for the purpose of an allowable claim of administrative priority for damages."  Request, p. 2 (citing *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968)).

9.      The Request does not note, however, that under *Reading* and its progeny the requirements of the Bankruptcy Code relating to payment of administrative expense must be "strictly construed" and that an administrative expense is only appropriate if "(1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1992) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976) and *Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)).

10.     It is clear that the Debtors' liability, if any, to REI under the "fee-shifting" provisions cited in the Request would be the result of litigation filed pre-petition that was based solely on events that occurred pre-petition.  REI's claims would not arise from a post-petition transaction, and they would not offer any benefit to the estate of the Debtors.

11.     In an attempt to get around this fact, REI cites three cases, each of which is plainly distinguishable from the facts *sub judice*.

12.     First, it cites *Yorke v. NLRB*, 709 F.2d 1138 (7th Cir. 1983), in which case bankruptcy trustee closed the debtors' plant *post-petition* and terminated the employees of that plant without first bargaining with their union.  After finding that the trustee violated labor law, the Court held that the "effects" of required bargaining would then be administrative expenses, in this case, trustee on behalf of the estate was required to pay back pay to union members while NLRB ordered bargaining process took place.  *Id.*, at 1143.

13.     Next, it relies on *Brandt v. Lazard Freres & Co (In re Healthco Intern., Inc.)*, 310 F.3d 9 (1st Cir. 2002).  In that case, the court found that defendants costs and fees incurred in defending an action *filed post-petition* by a chapter 7 trustee to avoid alleged fraudulent transfers constituted an administrative expense. *Id.*

14.     Finally, it cites *Caradon Doors and Windows, Inc. v. Eagle Pitcher Indus., Inc. (In re Eagle-Picher Indus.)*, 447 F.3d 461 (6th Cir. 2006), which is likewise distinguishable from the present case  In *Eagle*-Pitcher, the Court held that a suit filed post-confirmation respecting post-petition transactions asserted "administrative expense" claims (that were preserved and not discharged by plan), where plaintiff "confined its prayer for relief to post petition damages, which is to say damages stemming from sales between [plaintiff] and [debtor] after [debtor] petitioned for bankruptcy relief in 1991." *Id.*, at 463. The Court went on to reason that Plaintiffs' claims "satisfy the traditional definition of 'administrative claims' so long as they arose from transactions that occurred between it and [Debtor] *after the petition for bankruptcy*…." *Id.*, at 464 (Emphasis added.).

15.     These cases simply do not lay a precedent for treatment of REI's pre-petition claims as post-petition administrative expenses for attorney's fees arising a *pre-petition* suit, the claims of which are based solely on *pre-petition* events.

- 4 -

16.     Instead, the facts of this case are more similar to those of *In re Hemingway Transp., Inc.*, 954 F.2d 1 (1st Cir. 1992). There, the First Circuit held that attorneys' fees from defending an action brought by trustee did not create administrative expense claim, even though it was brought post-petition. *Id* The court reasoned that, because the suit was an effort to liquidate a claim and "the post-petition operation of the [Debtors'] business in no manner caused or contributed to the attorney fees incurred by [Defendant] in resisting the Chapter 7 trustee's [suit]," the fees could not be treated as an administrative expense. *Id.*, at 6 (emphasis in original).

17.     Indeed, the *Hemingway* court noted that, even though the attorney's fees were incurred post-petition the court found that it was aware of "no authority that the *Reading–Charlesbank* exception encompasses a right to payment originating in a prepetition contract with the debtor."

18.     Other courts have reached similar conclusions. For example, the Ninth Circuit expressly adopted the reasoning of *Hemingway*, and declined to treat attorney's fees as an administrative expense where the debtor obtained a prepetition judgment against the claimant arising out of a prepetition contract, and when the judgment was reversed postpetition, the claimant was awarded attorney's fees. *In re Abercrombie*, 139 F.3d 755, 757 (9th Cir. 1998); *accord In re Jack/Wade Drilling, Inc.*, 258 F.3d 385 (5th Cir. 2001) (holding that *Reading* is not intended to grant priority to postpetition attorney's fee award arising from trustee's unsuccessful litigation over a prepetition contract); and *In re Security Aviation, Inc.*, 374 B.R. 720 (Bankr. D. Alaska 2007) (denying administrative priority to attorney's fees awarded to claimant for successfully defending debtor's postpetition prosecution of prepetition claim in state court). Indeed, the *Abercrombie* court rejected the claimant's argument that the fee

award should be granted administrative status under *Reading* because the debtor in possession made the decision to continue the litigation. *Id.*

19.     The facts of this case are plainly more in line with those considered in *Hemingway* and *Abercrombie*, and any fees incurred are unrelated to the post-petition operation of the Debtors' businesses, indeed, REI's fees incurred post-petition in the REI Litigation are likely *de minimus* as the only actions the Debtors have taken post-petition with respect to the REI Litigation is to seek transfer of the case to this Court and stipulate to REI's motion to modify the automatic stay.

20.     This Court should decline to accept REI's invitation to treat expenses associated with a pre-petition suit, based entirely on pre-petition events as an administrative expense of these bankruptcy estates.  Further, the Debtors should not be required to reserve any amounts on the Effective Date or otherwise with respect to such requested administrative claim.

21.     For the reasons set forth above, the claims alleged in the Request are not administrative expenses of the Debtors' estates and the Request should be denied.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection and deny the Request in its entirety; and (ii) grant such other and further relief as this Court deems just and proper.

Dated:  October 21, 2016
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 /s/*Daniel N. Brogan*
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Kaitlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 394-2341
Email:  stuart.brown@dlapiper.com
          craig.martin@dlapiper.com
          daniel.brogan@dlapiper.com
          kaitlin.edelman@dlapiper.com

*Counsel to Debtors and*
*Debtors in Possession*