# EXHIBIT A

## Combined Plan and Disclosure Statement

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZLOOP, INC., *et al.*, [1] | Case No. 15-11660 (KJC) |
| Debtors. | Jointly Administered |

### DEBTORS' MODIFIED COMBINED DISCLOSURE STATEMENT
### AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

**DLA PIPER LLP (US)**
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
Daniel N. Brogan (DE 5723)
Kaitlin M. Edelman (DE 5924)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
       craig.martin@dlapiper.com
       daniel.brogan@dlapiper.com
       kaitlin.edelman@dlapiper.com

*Counsel for the Debtors and Debtors in Possession*

Dated: September 2, 2016
       Wilmington, Delaware

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); ZLOOP Knitting Mill, LLC (7098). The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| I. | | Introduction | 2 |
| II. | | Definitions And Construction Of Terms | 2 |
| | A. | Definitions | 2 |
| | B. | Interpretation; Application of Definitions and Rules of Construction | 14 |
| III. | | Background And Disclosures | 14 |
| | A. | Disclaimer Regarding Background And Disclosures | 14 |
| | B. | Debtors' Organizational Structure. | 15 |
| | C. | The Debtors' Pre-Petition Indebtedness. | 15 |
| | | 1. Unsecured Debt. | 16 |
| | D. | Events Precipitating the Chapter 11 Filing. | 16 |
| | | 1. Construction Issues. | 16 |
| | | 2. Mosing Franchises and Contributions. | 17 |
| | | 3. Loeb Capital Raise & Franchise Rescission. | 18 |
| | | 4. Mosing Litigation. | 19 |
| | | 5. ERS Litigation. | 19 |
| | | 6. REI Litigation. | 20 |
| | | 7. KBM Litigation. | 21 |
| | | 8. Estates' Causes of Action Against Boston and LaBarge. | 21 |
| | E. | The Chapter 11 Cases. | 21 |
| | | 1. Employment and Compensation of Professionals and Advisors. | 22 |
| | | 2. Appointment of Committee. | 22 |
| | | 3. Schedules. | 22 |
| | | 4. Bar Date and Exclusivity. | 22 |
| | | 5. Sale of Surplus Equipment. | 23 |
| | | 6. The Fernley Settlement. | 23 |
| | | 7. Sale of the Hickory Property. | 24 |
| | F. | The Plan Process and Settlement | 24 |
| | G. | Plan Settlement. | 25 |
| | H. | Certain Federal Income Tax Consequences. | 25 |
| | I. | Certain Risk Factors To Be Considered | 26 |

TABLE OF CONTENTS
(Continued)

Page

1.    Risk of Non-Confirmation of Combined Plan and Disclosure Statement ................................................................................... 26

2.    Delays of Confirmation and/or Effective Date ......................................... 26

3.    Alternative Plan ...................................................................................... 26

4.    Conversion of the Chapter 11 Cases ...................................................... 26

5.    Mosing's Rights to Control the Prosecution and/or Resolution of Estate Claims and Causes of Action ........................................................ 27

6.    Mosing Has Independent Claims Against Certain Parties As Against Whom There May Be Objections to Claims or Causes of Action ........... 27

7.    Mosing is Not a Fiduciary and Has No Duties to the Estates, Post Effective Date Debtor or Creditors ........................................................ 28

8.    Mosing May Settle any Claim, Claim Objection or Cause of Action Without Notice or Court Approval ........................................................... 28

9.    The Plan Administrator Must Take Discretion From Mosing ................. 28

10.   The Plan Administrator May Employ Professionals that Also Represent Mosing .................................................................................. 29

IV.   Treatment Of Unclassified Claims ..................................................................... 29

    A.    Administrative Expense Claims ..................................................................... 29

    B.    Professional Fee Claims ................................................................................. 29

    C.    Priority Tax Claims ....................................................................................... 30

    D.    Payment of Statutory Fees ............................................................................ 30

V.    Summary of Debtors' Assets; Summary of Treatment of Claims and Equity Interests and Estimated Recoveries ................................................................................. 30

    A.    Summary of Assets ....................................................................................... 30

    B.    Summary of Treatment of Claims and Equity Interests ................................. 31

VI.   Confirmation And Voting Procedures ................................................................. 32

    A.    Confirmation Procedure ................................................................................ 32

        1.    Confirmation Hearing ........................................................................... 32

        2.    Requirements for Confirmation ............................................................. 33

        3.    Classification of Claims and Equity Interests ......................................... 33

        4.    Impaired Claims or Equity Interests ...................................................... 33

        5.    Feasibility ............................................................................................. 34

ii

TABLE OF CONTENTS
(Continued)

Page

6.    Eligibility to Vote on the Combined Plan and Disclosure Statement ...... 34

7.    Procedure/Voting Deadlines ................................................................. 34

8.    Acceptance of the Combined Plan and Disclosure Statement. ............... 35

9.    Elimination of Vacant Classes ............................................................. 35

VII.    Treatment Of Claims And Equity Interests ........................................................ 36

A.    Treatment of Claims and Equity Interests. ........................................... 36

1.    CLASS 1 – SECURED CLAIMS ............................................. 36

2.    CLASS 2 – OTHER PRIORITY CLAIMS ............................... 37

3.    CLASS 3 – MOSING UNSECURED CLAIMS ....................... 37

4.    CLASS 4 – UNSECURED CLAIMS ....................................... 37

5.    CLASS 5 – INTERCOMPANY CLAIMS ................................ 38

6.    CLASS 6 – EQUITY INTERESTS .......................................... 38

B.    Modification of Treatment of Claims and Equity Interests. ................... 38

VIII.    Provisions Regarding The Plan Administrator ................................................... 38

A.    Appointment of the Plan Administrator. ............................................... 38

B.    Rights and Powers of the Plan Administrator. ...................................... 39

C.    Plan Administrator Expenses. .............................................................. 40

IX.    Provisions Governing Distributions Under The Combined Plan
And Disclosure Statement ................................................................................. 40

A.    Method of Payment. ............................................................................. 40

B.    Objections to and Resolution of Claims. .............................................. 40

C.    Claims Objection Deadline. ................................................................. 40

D.    No Distribution Pending Allowance. .................................................... 41

E.    Claims Reserve. ................................................................................... 41

F.    Distribution After Allowance. .............................................................. 41

G.    Adjustments to Claims Without Objection. .......................................... 41

H.    Late Claims and Amendment to Claims. ............................................... 41

I.    Distribution Record Date. .................................................................... 41

J.    Delivery of Distributions. .................................................................... 42

K.    Unclaimed Distributions. ..................................................................... 42

iii

TABLE OF CONTENTS
(Continued)

Page

L. *De Minimis* Distributions. ................................................................. 42

M. Charity ........................................................................................... 43

N. Set-Off. ........................................................................................... 43

O. Postpetition Interest. ....................................................................... 43

P. Allocation of Distributions Between Principal and Interest. .............. 43

X. Implementation And Effect Of Confirmation Of Combined Plan
And Disclosure Statement ........................................................................... 43

A. Means for Implementation of the Combined Plan and Disclosure Statement. .... 43

1. Limited Substantive Consolidation. ......................................... 43

2. Funding of Liabilities and Distributions. ................................. 44

3. Corporate Action; Effectuating Documents; Further Transactions. ........ 45

XI. Injunction, Exculpation And Releases ........................................................ 45

A. Exculpation ..................................................................................... 45

B. Releases By the Debtors ................................................................... 46

C. Third Party Releases ....................................................................... 46

D. Injunctions Relating to Releases ...................................................... 46

E. Injunctions to Protect Estate Assets ................................................. 47

F. Exceptions from Exculpation, Release and Injunction Provisions. ..... 47

XII. Executory Contracts And Leases .............................................................. 48

A. Rejection of Executory Contracts. ................................................... 48

B. Deadline for Filing Proofs of Claim Relating to Executory Contracts Pursuant
to the Combined Plan and Disclosure Statement. ................................. 48

C. Insurance Policies. .......................................................................... 48

XIII. Conditions To Confirmation And The Effective Date .................................. 48

A. Conditions Precedent to Confirmation .............................................. 48

B. Conditions Precedent to the Effective Date. ..................................... 49

C. Establishing the Effective Date ........................................................ 50

D. Effect of Failure of Conditions. ....................................................... 50

E. Waiver of Conditions to Confirmation and Effective Date. ............... 51

XIV. Retention Of Jurisdiction ......................................................................... 51

iv

## TABLE OF CONTENTS
### (Continued)

|  |  |  | Page |
|---|---|---|---|
| XV. | Miscellaneous Provisions | | 52 |
| | A. | Books and Records. | 52 |
| | B. | Revesting of Estate Assets. | 53 |
| | C. | Termination of Injunctions or Stays. | 53 |
| | D. | Amendment or Modification of the Combined Plan and Disclosure Statement. | 54 |
| | E. | Severability. | 54 |
| | F. | Revocation or Withdrawal of the Combined Plan and Disclosure Statement. | 54 |
| | G. | Binding Effect. | 54 |
| | H. | Notices. | 54 |
| | I. | Governing Law. | 54 |
| | J. | Withholding and Reporting Requirements. | 55 |
| | K. | Headings. | 55 |
| | L. | Exhibits/Schedules. | 55 |
| | M. | Filing of Additional Documents. | 55 |
| | N. | No Admissions. | 56 |
| | O. | Successors and Assigns. | 56 |
| | P. | Reservation of Rights. | 56 |
| | Q. | Implementation. | 56 |
| | R. | Inconsistency. | 56 |
| | S. | Closing of Chapter 11 Cases. | 56 |
| | T. | Dissolution of the Post-Effective Date Debtor. | 57 |
| | U. | Tax Returns. | 57 |
| | V. | Cooperation with the Plan Administrator. | 57 |
| | W. | Dissolution of the Committee. | 58 |
| | X. | Termination of the Plan Administrator. | 58 |
| | Y. | Compromise of Controversies. | 58 |

EAST\128535209.3

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES AND THE DISCLOSURES MADE ARE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, INCLUDING, WITHOUT LIMITATION, MOSING, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, THE PLAN ADMINISTRATOR, THE PLAN FUNDER, MOSING AND/OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON SUCH PARTIES OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS OR REPRESENT A PARTY'S ASSERTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

# I. **INTRODUCTION**

ZLOOP, Inc., ZLOOP Nevada, LLC, and ZLOOP Knitting Mill, LLC, as debtors and debtors in possession, hereby jointly propose the Debtors' Combined Joint Plan of Liquidation and Disclosure Statement ("**Combined Plan and Disclosure Statement**" or "**Plan**" as the context requires) pursuant to sections 1125 and 1129 of the Bankruptcy Code.  The Debtors[2] are the proponents of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code.

The Combined Plan and Disclosure Statement constitutes a liquidating chapter 11 plan of the Debtors and their Estates.  The Combined Plan and Disclosure Statement provides that the Debtors' remaining non-cash assets to be liquidated over time and for the cash on hand and proceeds to be received or recovered to be Distributed to holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code.  Except as otherwise provided by Order of the Bankruptcy Court, Distributions will commence on the Effective Date, or as soon thereafter as is practicable and at various intervals thereafter.  Each Debtor will be dissolved as soon as practicable on or after the date that such Debtor's Chapter 11 Case is closed.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before the Plan is substantially consummated; provided, however, that, pursuant to the Plan Settlement, the Debtors have agreed not to amend or modify the Combined Plan and Disclosure Statement without the prior written consent of Mosing.

# II. **DEFINITIONS AND CONSTRUCTION OF TERMS**

## A.    **Definitions.**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.    **"503(b)(9) Claims"** means any Claim against any of the Debtors for the value of goods sold to the Debtors in the ordinary course of business and received by the Debtors within twenty (20) days before the Commencement Date.

2.    **"Administrative Expense Bar Date"** means 12:00 p.m. (Eastern Time) on October 26, 2016.

3.    **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (i) any actual and necessary costs and expenses

---

[2]  All capitalized terms not defined in this introduction shall have the same meanings set forth in Article I of the Combined Plan and Disclosure Statement.

of preserving the Estates, (ii) any Statutory Fees, and (iii) any 503(b)(9) Claims; provided, however, that Administrative Expense Claims shall not include Professional Fee Claims.

4.      **"Allowed"** means, with reference to any Claim or Equity Interest, proof of which was timely and properly Filed or, if no proof of Claim or Equity Interest was filed, which has been or hereafter is listed by the Debtors in the Schedules, as liquidated in amount and not disputed or contingent and, in each case, as to which: (i) no objection to allowance has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; or (iii) is deemed Allowed under the Plan; provided, however, that, notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, the Mosing Secured Claim and the Mosing Unsecured Claims shall be deemed Allowed pursuant to the Plan Settlement.

5.      **"Avoidance Actions"** means any and all rights to recover or avoid transfers or Liens under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

6.      **"Ballot"** means the ballot on which each Holder of a Claim entitled to vote on the acceptance or rejection of the Plan casts such vote.

7.      **"Balloting Agent"** means Miller Coffey Tate LLP.

8.      **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time.

9.      **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Delaware.

10.     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the Bankruptcy Court.

11.     **"Bar Date"** means, with respect to all Persons or Entities other than Governmental Units, November 16, 2015 and, with respect to Governmental Units, February 5, 2016.

12.     **"Books and Records"** means all of the Debtors' books and records, wherever located and in whatever form, whether or not such books and records are in the Debtors' possession, custody and/or control on the Effective Date, including, without limitation, all writings, communications, documents, recordings, of any kind, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic, or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed, or stored, whether an original, a draft, or copy, however produced or reproduced, whether sent or received or neither, including electronic

communications, emails, notes, memoranda, correspondence, text messages, instant messages, letters, facsimiles and facsimile transmittals, reports, communications, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, video, audio and digital recordings, television commercials, website or other spot advertisements, prototypes, products, calendars, charts, diaries, drawings, sketches, messages, lab notebooks, photographs, and any "active" or "backup" data contained in or accessible through any electronic data processing system, including computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof, and all other memorializations of any conversations, meetings and conferences, by telephone or otherwise, which shall include every copy of a document, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery, or any other difference or modification of any kind. For the avoidance of doubt, Books and Records shall include all documents (including communications, files, pleadings, working papers, memoranda, letters or drafts) in the possession, custody or control of attorneys, accountants or other professionals engaged by the Debtors prior to or after the Petition Date.

13.     **"Boston"** means Robert Michael Boston (or as he is known by any other names), who is one or more of the Debtors' Chairman, CEO, Shareholder, Manager, Director or other position.

14.     **"Boston Parties"** and/or **"LaBarge Parties"** means Boston, Caron L. Boston, Justin M. Boston, Justin Boston Racing, LLC, LaBarge, Robyn L. Diamond LaBarge, Majory M. Diamond, Trustee of the Majory M. Diamond Trust or any subsequent trustee of said trust, Diamond Family Trust, any Entity in which any of the foregoing parties has, or had, an interest of any kind (actual, beneficial, imputed or otherwise), Zloop International, Ltd., Hooch House, LLC, Hickory Commercial, LLC, United Branding Group, LLC, and E-Z Computer Recycling Centers, LLC. Any and all Claims, including, without limitation, any Scheduled or Filed Claim and any Unsecured or Administrative Expense Claim, held by any Boston Party and/or LaBarge Party, shall be deemed Disputed under the terms of the Combined Plan and Disclosure Statement.

15.     **"Business Day"** means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

16.     **"Cash"** means legal tender of the United States of America and equivalents thereof.

17.     **"Causes of Action"** means the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, rights of set-off, offset and/or recoupment,

rights to equitable remedies, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all commercial tort claims against any party, including any of the foregoing with regards to the Debtors' current and former directors, members, managers, officers, employees or agents, and all rights and claims of any kind whatsoever with regards to insurance policies, including but not limited to the right to make demand on or under any such insurance policy and to receive any proceeds therefrom; subject, however, to any releases provided in the Combined Plan and Disclosure Statement, the Confirmation Order or any other Final Order of the Bankruptcy Court.

18.     **"Chapter 11 Cases"** means the procedurally consolidated cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as ZLOOP, Inc., *et al.*, under Case No. 15-11660 (KJC), currently pending in the Bankruptcy Court.

19.     **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

20.     **"Claims Objection Deadline"** means one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion of the Post-Effective Date Debtor.

21.     **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22.     **"Clerk"** means the clerk of the Bankruptcy Court.

23.     **"Charity"** means any non-profit organization whose primary purpose is the pursuit of philanthropic endeavors that is selected by the Plan Administrator.

24.     **"Combined Plan and Disclosure Statement"** or **"Plan"** means this combined disclosure statement and Chapter 11 plan of liquidation including, without limitation, the Plan Supplement, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Effective Date.

25.     **"Commencement Date"** means August 9, 2015.

26.     **"Committee"** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee.

27.     **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket.

28.     **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the

Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

29.     **"Confirmation Order"** means the Order of the Bankruptcy Court (i) approving, on a final basis, the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     **"Conversion Motions"** means, collectively, the US Trustee's *Motion to Convert Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code, Pursuant to 11 U.S.C. § 1112* [D.I. 305]; *and Kendall G. Mosing and ZLOOP LA, LLC'S Request for and Joinder to the United States Trustee's Request to Convert Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code, Pursuant to 11 U.S.C. § 1112* [D.I. 308].

31.     **"Creditor"** means any Person or Entity that is the Holder of a Claim against the Debtors.

32.     **"Creditor Distribution Fund"** means the Plan Administrator Fund less the Plan Administrator Expenses.

33.     **"CRO"** means William H. Henrich, in his capacity as the chief restructuring officer of the Debtors.

34.     **"DCR"** means DCR Mortgage 7 Sub 1, LLC.

35.     **"Debtors"** means, collectively, ZLOOP, Inc., ZLOOP Nevada, LLC, and ZLOOP Knitting Mill, LLC.

36.     **"Debtor in Possession"** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

37.     **"Disputed"** means any Claim or Equity Interest that is listed on the Schedules as disputed, contingent or unliquidated, or which is disputed by the Combined Plan and Disclosure Statement (which, for the avoidance of doubt, shall not include any Claim that is deemed Allowed pursuant to the Plan Settlement and the Combined Plan and Disclosure Statement), or which is otherwise disputed by the Debtors, the Post-Effective Date Debtor or the Plan Administrator.

38.     **"Distribution"** means any distribution to the Holders of Allowed Claims.

39.     **"Distribution Record Date"** means the date on which the Solicitation Order is entered.

40.     **"Docket"** means the docket in the Chapter 11 Cases maintained by the Clerk.

41.     **"Effective Date"** means the date on which the conditions specified in [Article XIII] of the Combined Plan and Disclosure Statement have been satisfied or waived.

42.    **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

43.    **"Equity Interests"** means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares or membership interests together with any warrants, options or contract rights to purchase or acquire such interests at any time.

44.    **"Equity Option"** means the offer to franchisees to accept (a) shares of Common Stock equivalent in value to the amount paid for the sale of the applicable franchise, and (b) warrants to purchase the same amount of Common Stock.

45.    **"ERS"** means E Recycling Systems, LLC, together with its Representatives.

46.    **"ERS Defendants"** means ERS and James Cunningham.

47.    **"ERS Litigation"** means the Cause of Action against ERS and others that was commenced by Zloop, Inc. in the United States District Court for the Western District of North Carolina, Statesville Division on April 25, 2014 at number 5:14-cv-00056-RLV-DSC, and consolidated with case number 14-00087-RLV-DSC, together with any new proceeding that may be commenced or Causes of Action asserted by, between or among the parties and all defenses, counterclaims and cross claims that may be filed by any party in any such proceeding.

48.    **"Estates"** means collectively each estate of each Debtor created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

49.    **"Estate Assets"** means any and all assets of the Estates as of the Effective Date, wherever located, including, without limitation, any and all Cash on hand and the Mosing Estate Payment; provided, however, that Estate Assets shall not include Causes of Action, the Mosing Funding Payment and/or any Funding Payments.

50.    **"Exculpated Parties"** means only the following Persons and Entities: (i) the Committee, its members, Cole Schotz P.C., as counsel to the Committee, and Goldin Associates, LLC, as financial advisor to the Committee and their respective Related Persons, in each case, solely in their respective capacities as such; and (ii) the Debtors, DLA Piper LLP (US), as counsel to the Debtors, Miller Coffey Tate LLP, as accountants and bankruptcy and litigation consultants to the Debtors, Getzler Henrich & Associates, LLC, and the CRO, in each case, solely in their respective capacities as such; provided, however, that notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, Exculpated Parties shall not include the Boston Parties and/or LaBarge Parties, Parker Poe Adams & Bernstein, LLP, and McGuireWoods LLP, any counsel other than DLA Piper LLP (US) engaged by the Debtors either prior to or after the Commencement Date, any Related Persons of the foregoing, and any other Persons or Entities identified in the Plan Supplement.

51.    **"Executory Contract"** means any executory contract or unexpired lease as of the Commencement Date between the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

52.    **"eWaste Agreement"** means the Agreement for the Sale and Purchase of Electronic Waste Processing System between ZLOOP and ERS.

53.    **"eWaste System"** means the large scale eWaste recycling system that the Debtors purchased from ERS.

54.    **"Fernley Assets"** means (i) the Fernley Property, (ii) the fixtures affixed thereto, (iii) all personal property and equipment, if any, located on the Fernley Property, and (iv) all other property interests belonging or appurtenant to the Fernley Property.

55.    **"Fernley Property"** means that certain real property and improvements owned by Zloop Nevada and situated in Fernley, Nevada, but excluding equipment owned by the Debtors that is situated in, on or about the Fernley Property.

56.    **"Fernley Sale Motion"** means the *Motion of the Debtors for an Order (I)(A) Approving Procedures in Connection with the Sale of Certain Property Located in Fernley, NV; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving the Form and Manner of Notice Thereof; (D) Approving Break-Up Fee and Expense Reimbursement; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Certain Real Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (B) Granting Related Relief* [D.I. 428].

57.    **"File, Filed, or Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases on the Docket.

58.    **"Final Order"** means an Order of the Bankruptcy Court or a Court of competent jurisdiction, including any Court with competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending.  Final Order does not include any rights under Bankruptcy Rule 9024.

59.    **"Funding Payment"** means any payments made to the Post-Effective Date Debtor after the Mosing Funding Payment to fund the costs of administering the Post Effective Date Debtors, including, without limitation, the Plan Administrator Expenses.

60.    **"Governmental Unit"** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

61.    **"Hickory Assets"** means all of the Debtors' right, title and interest in and to (a) the real property commonly known as 816 13th Avenue, comprising 3 parcels, and 838 14th Street NE, Hickory, NC ("**Knitting Mill Parcel**"), as more particularly described on Exhibit C attached to Colt Refining Inc.'s ("**Colt Refining**") Purchase Agreement, and any and all improvements thereon and appurtenances thereto (collectively, the "**Real Property**"); (b) the fixtures affixed thereto; (c) all personal property and equipment located on the Real Property as of the Closing Date (defined in Colt Refining's Purchase Agreement), including without limitation, the assets described on Exhibit D to Colt Refining's Purchase Agreement; (d) all other property interests belonging or appurtenant to the Real Property, including but not limited to all

mineral, oil, gas, geothermal and water rights, as well as all environmental, engineering, architectural and similar reports and studies in the possession of Seller; and (e) to the extent designated by Colt Refining prior to Closing, books and records of the Seller.

62.    **"Hickory Property"** means that certain real property and improvements formerly owned by Hickory Commercial, LLC and situated in Hickory, North Carolina, but excluding equipment owned by the Debtors that is situated in, on or about the Hickory Commercial Property.

63.    **"Holder"** means the beneficial holder of any Claim or Equity Interest.

64.    **"Intercompany Claim"** means (i) any account reflecting intercompany book entries by one Debtor with respect to another Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against another Debtor, in each case, accruing before or after the Commencement Date through the Effective Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between the Debtors.

65.    **"Janes"** means James Janes, III and/or Marian Janes, Delta-Omega Technologies, Inc.; ICS GoM, LLC; Janes Industrial Products, LLC, and Petroleum Automated Tank Cleaning Solutions, LLC (dba PATCS, LLC), and their respective Representatives, successors and assigns.

66.    **"KBM"** means Kyle Busch Motorsports, Inc., together with its Representatives.

67.    **"KBM Litigation"** means the proceeding commenced by KBM against Zloop, Inc. and others in the Superior Court of Iredell County, North Carolina on August 7, 2015 at number 15-CVS-01932, which proceeding has been removed to the United States District Court for the Western District of North Carolina, Statesville Division at number 5:15-cv-000121-RLV-DCK, together with any new proceeding that may be commenced or Causes of Action asserted by, between or among the parties and all defenses, counterclaims and cross claims that may be filed by any party in any such proceeding.

68.    **"LaBarge"** means Robert Scott LaBarge (or as he is known by any other name), who is one or more of the Debtors' President, CMO, Shareholder, Manager, Director or other position.

69.    **"Lien"** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

70.    **"Line of Credit"** means the line of credit issued by Patriot Bank in favor of Zloop, LLC in or about December 2013, on account of which Mosing has asserted he pledged a bank account to secure Patriot Bank.

71.    **"Louisiana Action"** means that certain action commenced by ZLOOP LA, LLC and Mosing against, among others, ZLOOP, Inc. in the United States District Court for the

Western District of Louisiana, Lafayette Division styled as *Kendall Garrett Mosing & ZLOOP LA, LLC v. Robert "Bob" Boston* et al., No. 14–CV–02608 (PJH) (W.D. La. Aug. 28, 2014).

72.     **"Louisiana Franchise Agreement(s)"** means the franchise agreement(s) Mosing executed for the Louisiana franchises.

73.     **"Mosing"** means Kendall G. Mosing.

74.     **"Mosing Estate Payment"** means the payment of $100,000 of Cash to be paid by Mosing or Mosing's designee to the Debtors on or prior to the Effective Date, which payment is being made pursuant and subject to the Plan Settlement.

75.     **"Mosing Funding Payment"** means the payment of $100,000 of Cash to be paid by Mosing or Mosing's designee to the Post-Effective Date Debtor on or after the Effective Date, which payment is being made pursuant and subject to the Plan Settlement.

76.     **"Mosing Litigation"** means the Louisiana Action and the Texas Action.

77.     **"Mosing Patriot Claim"** means that portion of Mosing's Claims arising out of the Line of Credit.

78.     **"Mosing Released Parties"** means Mosing, Charmaine Mosing, any closely-held Entity in which either Mosing or Charmaine Mosing owns a direct or indirect interest, ZLOOP LA, LLC, Marion Janes, James "Jim" V. Janes, Sean LeBlanc, any closely-held Entity in which Marion Janes or Jim Janes owns a direct or indirect interest, Janes Industrial Products, L.L.C., Delta-Omega Technologies, Inc., ICS GoM, LLC, Petroleum Automated Tank Cleaning Solutions LLC, ZLOOP LA-T1, LLC, ZLOOP LA-T2, LLC, and ZLOOP LA-T3, LLC.

79.     **"Mosing Secured Claim"** means any and all Secured Claims held by Mosing and/or ZLOOP LA, LLC against the Debtors, which, pursuant to the Plan Settlement, are Allowed in the aggregate amount of $1.00.

80.     **"Mosing Unsecured Claims"** means any and all Unsecured Claims held by Mosing and/or ZLOOP LA, LLC against the Debtors, which, pursuant to the Plan Settlement, are Allowed in the aggregate amount of $40,000,000.00.

81.     **"Note"** means the promissory note between ZLOOP, LLC and Patriot Bank dated April 29, 2014, in the amount of $14 million.

82.     **"Option Agreement"** means the grant agreement by which ZLOOP granted Mosing a warrant to purchase up to 5.0% of the Class B Interests (as defined in the ZLOOP, LLC Operating Agreement) at a purchase price per $0.01 of Class B Interests of $10,000.00.

83.     **"Order"** means an order or judgment of the Bankruptcy Court as entered on the Docket.

84.     **"Other Priority Claim"** means a Claim that is entitled to priority in payment under section 507 of the Bankruptcy Code other than a Priority Tax Claim.

85.    **"Person"** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

86.    **"Plan Administrator"** means the Person appointed pursuant to the Combined Plan and Disclosure Statement to be the sole officer and director of the Post-Effective Date Debtor and to carry out the duties and responsibilities set forth herein on behalf of the Post-Effective Date Debtor, and representatives appointed to investigate, pursue to judgment, collect, enforce and settle the Causes of Action under Bankruptcy Code §1123(b)(3).

87.    **"Plan Administrator Expenses"** means all of the costs, expenses, fees, liabilities, overhead or operating expenses of any sort whatsoever of the Post-Effective Date Debtor and/or the Plan Administrator, including, but not limited to, the fees and expenses of the Plan Administrator and the costs, fees and expenses of litigation or of any professional (including counsel and experts witness fees) retained by the Plan Administrator including in connection with or related to objections to Claims or Causes of Action, or related thereto, or any costs, fees and expenses (including attorneys' fees) incurred by or on behalf of the Plan Administrator or the Plan Funder in connection with any claim, objection, litigation or other challenge to the Plan Administrator's or the Plan Funder's performance or exercise of rights or duties under the Combined Plan and Disclosure Statement and related documents.

88.    **"Plan Administrator Fund"** means an account established and maintained by the Plan Administrator that shall be funded from (a) the Mosing Funding Payment, (b) any Funding Payments, (c) any Residual Estate Assets and (d) the net proceeds of or from Causes of Action.

89.    **"Plan Funder"** means Mosing or any successor, designee or assignee in Mosing's sole and absolute discretion.

90.    **"Plan Settlement"** means that certain settlement described in Section III.G of the Combined Plan and Disclosure Statement, which forms the basis for this Combined Plan and Disclosure Statement.

91.    **"Plan Supplement"** means the appendix of schedules and exhibits to be Filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline, as may be modified and/or supplemented.

92.    **"Post-Effective Date Debtor"** means Zloop, Inc. from and after the Effective Date.   Zloop Knitting Mill, LLC and Zloop Nevada, LLC shall be deemed substantively consolidated with and into Zloop, Inc. as of the Effective Date and the cases of Zloop Knitting Mill, LLC and Zloop Nevada, LLC shall be closed in accordance with Bankruptcy Rule 1017-3.

93.    **"Priority Tax Claim"** means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

94.    **"Privilege"** means the attorney client privilege, work product protections or other immunities (including those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

95. **"Professional"** means the CRO, Getzler Henrich & Associates, LLC, and any professional Person employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

96. **"Professional Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Cases.

97. **"Professional Fee Claim Bar Date"** means the Business Day that is forty-five (45) days after the Effective Date.

98. **"Pro Rata"** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

99. **"REI"** means Recycling Equipment, Inc., together with its Representatives.

100. **"REI Litigation"** means the proceeding commenced by the Debtors against REI and others in the United States District Court for the Western District of North Carolina, Statesville Division at number 5:15-cv-00111-RLV-DCK, together with the issues joined by REI in the ERS Litigation, together with any new proceeding that may be commenced or Causes of Action asserted by, between or among the parties and all defenses, counterclaims and cross claims that may be filed by any party in any such proceeding.

101. **"Related Persons"** means, with respect to any Person or Entity, such Person's or Entity's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals (including, without limitation, the Professionals), representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person or Entity claiming by or through them.

102. **"Released Parties"** means the following Persons and Entities: (i) the Committee, its members, Cole Schotz P.C., as counsel to the Committee, and Goldin Associates, LLC, as financial advisor to the Committee and their respective Related Persons, in each case, solely in their respective capacities as such; (ii) the Mosing Released Parties and their respective Related Persons; and (iii) DLA Piper LLP (US), as counsel to the Debtors, Miller Coffey Tate LLP, as accountants and bankruptcy and litigation consultants to the Debtors, Getzler Henrich & Associates, LLC, and the CRO and their respective Related Persons, in each case, solely in their respective capacities as such; provided, however, that notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, Released Parties shall not include the Boston Parties and/or LaBarge Parties, Parker Poe Adams & Bernstein, LLP, McGuireWoods LLP, any counsel other than DLA Piper LLP (US) engaged by the Debtors either prior to or after the Commencement Date, any Related Persons of the foregoing, and any other Persons or Entities identified in the Plan Supplement.

103. **"Representatives"** means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, shareholders, members, managers, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors,

employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

104. **"Rescission Option"** means the offer to franchisees to accept a cash amount equivalent in value to the amount paid for the applicable franchise.

105. **"Residual Estate Assets"** means any remaining Estate Assets after payment in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Other Priority Claims and Allowed Professional Fee Claims.

106. **"Schedules"** means the schedules of assets and liabilities, the list of Holders of Equity Interests and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto.

107. **"Secured Claim"** means the Mosing Secured Claim and any other Allowed Claim (i) that is secured by a Lien on property in which the Estates have an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law, or a Claim that is subject to a valid right of the Holder of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors or the Post-Effective Date Debtor or (B) if disputed by the Debtors or the Post-Effective Date Debtor, such dispute is settled by written agreement between the Debtors or the Plan Administrator and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

108. **"Solicitation Order"** means the Order of the Bankruptcy Court authorizing the Debtors to solicit votes to accept or reject the Combined Plan and Disclosure Statement.

109. **"Statutory Fees"** means any and all fees payable to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

110. **"Texas Action"** means the proceeding commenced by Mosing against Zloop, Inc. in the Harris County, Texas District Court on December 14, 2014, which action has been removed and transferred to the Bankruptcy Court and is pending at number 15-51174.

111. **"Texas Franchise Agreement(s)"** means the franchise agreement(s) Mosing executed for the Texas franchises.

112. **"Unsecured Claim"** means any Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Commencement Date and that is not the Mosing Unsecured Claims, a Secured Claim, an Administrative Expense Claim, an Other Priority Claim, a Priority Tax Claim or a Professional Fee Claim.

113. **"Unclaimed Distribution"** means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

114.    **"Unclaimed Distribution Deadline"** means ninety (90) days from the date the Plan Administrator makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a holder of an Allowed Claim.

115.    **"US Trustee"** means the Office of the United States Trustee for the District of Delaware.

116.    **"Voting Deadline"** means October 17, 2016 at 5:00 p.m. (ET).

117.    **"Wire Processing Systems"** means the recycling system(s) capable of processing wire that the Debtors purchased from ERS.

## B.    Interpretation; Application of Definitions and Rules of Construction.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to the Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

## III.  BACKGROUND AND DISCLOSURES

On the Commencement Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases. After the Commencement Date, the Debtors have remained in possession of their assets and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## A.    DISCLAIMER REGARDING BACKGROUND AND DISCLOSURES

CONSISTENT WITH THE NOTICE ON PAGE 1 HEREOF, THE BACKGROUND AND DISCLOSURES SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT WERE PREPARED BY THE DEBTORS AND THEIR PROFESSIONALS AND HAVE NOT BEEN APPROVED BY MOSING AND/OR MOSING'S PROFESSIONALS AND ADVISORS.

FURTHER, AS A RESULT OF THE CRO'S INVESTIGATION, IT WAS DETERMINED THAT THE DEBTORS' BOOKS AND RECORDS AS OF THE COMMENCEMENT DATE WERE IN PART MATERIALLY INACCURATE AND

UNRELIABLE.    ACCORDINGLY,    THE    DISCLOSURES    AND    BACKGROUND
INFORMATION RELATING TO THE PERIODS PRIOR TO THE COMMENCEMENT
DATE AND CERTAIN PERIODS AFTER THE COMMENCEMENT DATE SHOULD NOT
BE RELIED UPON FOR ANY PURPOSE.

      MOREOVER, MOSING DISPUTES MANY OF THE DISCLOSURES AND
OTHER BACKGROUND INFORMATION CONTAINED IN THIS COMBINED PLAN AND
DISCLOSURE STATEMENT.    SUCH INFORMATION SHALL NOT BE USED BY ANY
PARTY TO ESTABLISH LIABILITY AGAINST MOSING AND/OR ANY MOSING
RELEASED PARTY AND SHALL NOT IN ANY WAY PREJUDICE ANY CLAM OR
CAUSE OF ACTION THAT MOSING, ANY MOSING RELEASED PARTY, THE PLAN
ADMINISTRATOR (ON BEHALF OF THE POST-EFFECTIVE DATE DEBTOR) AND/OR
THE POST-EFFECTIVE DATE DEBTOR MAY HAVE AGAINST ANY PARTY.
NOTWITHSTANDING THE FOREGOING, MANY OF THE DISCLOSURES AND OTHER
INFORMATION SET FORTH HEREIN RELATE TO DISPUTES WHICH, PURSUANT TO
THE PLAN SETTLEMENT, ARE BEING RESOLVED.    ACCORDINGLY, THE DEBTORS
SUBMIT THAT, NOTWITHSTANDING SUCH INACCURACIES, THE COMBINED PLAN
AND DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION UNDER THE
CIRCUMSTANCES.

**B.**    **Debtors' Organizational Structure.**

      ZLOOP, Inc., a Delaware corporation, holds 100% of the membership interests in
Debtors ZLOOP Nevada, LLC and ZLOOP Knitting Mill, LLC.  ZLOOP, Inc. also holds 100%
of the membership interests of ZLOOP International, Ltd., a Belize limited liability company.
The issued and outstanding common stock in ZLOOP, Inc. is held by Boston, LaBarge, Mosing
and other individual Holders.  The Debtors have stated that ZLOOP International, Ltd. holds no
assets, conducts no business and has no liabilities.

      The Debtors were originally organized to raise capital through the sale of regional
eWaste collection franchises.  In 2012 and 2013, the Debtors sold 15 franchises: 3 in North
Carolina, 8 in Texas, 3 in Louisiana, and 1 in West Virginia.  Of the 15 franchises, 11 (8 in
Texas, 3 in Louisiana) were ultimately purchased by Mosing.

      In the Spring of 2014 following the Hickory, NC plant becoming operational with
an investment banking firm engaged by the Debtors to assist in raising additional capital, the
Debtors converted from a limited liability company to a Delaware corporation, agreed to rescind
or repurchase all franchises and were engaged in soliciting additional capital.  By May 1, 2014,
the Debtors had entered into agreements with all franchisees, most of which agreed to convert
their interests into equity in Zloop, Inc. and Mosing agreed to a payment.

**C.**    **The Debtors' Pre-Petition Indebtedness.**

      As of the Commencement Date, the Debtors' unaudited consolidated balance
sheet reflects assets, including land and improvements in Hickory, NC and Fernley, NV, but
excluded certain commodity inventories that are the output of eWaste recycling.  The Debtors'

unaudited consolidated balance sheet incorrectly reflected the book value of their assets at approximately $25 million and total liabilities of approximately $32 million.

    1.    <u>Unsecured Debt</u>.

        As of the Commencement Date, ZLOOP was the defendant in two actions commenced by Mosing. The first was initiated in Louisiana and asserted damages in the approximate amount of $70 million, on account of both Mosing's claim for payment under the rescission agreement and the Mosing Patriot Claim, including an asserted right of treble damages. The second is an action commenced in Texas, but was limited solely to the Mosing Patriot Claim. The litigation is described in greater detail below. The Bar Date for Mosing's Claims was extended to February 3, 2016. Mosing filed a secured proof of Claim in the Chapter 11 Cases asserting a claim in the approximate amount of $40 million. The Debtors Dispute Mosing's proof of Claim, which Disputed Claim is resolved in accordance with the Plan Settlement.

        As of the Commencement Date, the Debtors' books and records reflected approximately $578,000.00 of unsecured trade debt and other outstanding operating expenses, including approximately $187,000.00 in contract labor expenses and approximately $160,000.00 in equipment setup expenses. Twenty-three proofs of Claim, not including Mosing's proof of Claim. A schedule of the filed proofs of Claim is attached hereto as **Exhibit A**.

**D.**    **<u>Events Precipitating the Chapter 11 Filing</u>.**

    1.    <u>Construction Issues</u>.[3]

        ZLOOP was introduced to ERS, a broker for German and Italian recycling equipment manufacturers, by REI. REI solicited ZLOOP's business and represented itself to be experienced in the recycling business. After gaining ZLOOP's confidence, REI introduced ZLOOP to ERS. Together REI and ERS represented that they had the experience and expertise to assist ZLOOP in the design, installation, training, maintenance and operation of highly efficient eWaste recycling production lines.

        In September 2012, ZLOOP began contractual negotiations with ERS for the purchase of a new eWaste System and two Wire Processing Systems. ZLOOP entered into two separate agreements with ERS in November 2012: the eWaste Agreement and the Wire Processing Agreement. In addition, ZLOOP acquired the exclusive rights to the configuration of the Systems in the United States for one year. ZLOOP agreed to pay a total of $6,215,600: $4,763,600 for the eWaste System, and $1,452,000 for the Wire Processing Systems.

        ERS began piecemeal delivery of the components of the eWaste System and Wire Processing Systems in May 2013, and test runs of parts of the eWaste System and Wire Processing Systems began in the fall of 2013. The eWaste System and Wire Processing Systems that ERS delivered were damaged, missing parts and components, used, of inferior quality, and

---

[3] The following disclosures are summarized from pleadings filed in the ERS Litigation and the REI Litigation. The full text of the pleadings filed on the dockets in such litigations should be consulted for a complete review of the facts alleged and theories articulated by the parties to such litigations.

failed to meet contractual specifications. As such, they could not be properly installed and failed to function properly (or, in some cases even operate at all) as an integrated system. For example, ERS guaranteed that the Wire Processing Systems would process 4,000 pounds of wire per hour; however, the Wire Processing System at the Hickory plant can run only 1,500 pounds per hour, and the second Wire Processing System was never operational. Similarly, the eWaste System cannot process 20,000 pounds of eWaste per hour on a consistent basis. The Debtors expended considerable resources and efforts to make the eWaste System and Wire Processing Systems, as delivered, operational.

The condition of the eWaste System and Wire Processing Systems caused ZLOOP over a nine month delay and negatively impacted ZLOOP's production, revenue, and customer reputation. On May 30, 2014, ZLOOP filed suit against ERS commencing the ERS Litigation, asserting claims for breach of contract, unfair and deceptive trade practices, negligent misrepresentation, fraud, fraudulent inducement, and tortious interference with contract.

Further, on July 31, 2015, ZLOOP commenced an action against REI commencing the REI Litigation, asserting claims for breach of contract, unfair and deceptive trade practices, negligent misrepresentation, fraud, fraudulent inducement, and tortious interference with contract.

2.      Mosing Franchises and Contributions.

Beginning in or about the Spring of 2012, ZLOOP began discussions with Janes about ZLOOP's business. Janes was interested in getting involved, and through Delta-Omega Technologies, Inc., a public corporation controlled by Janes, Janes committed to ZLOOP to raise capital for ZLOOP and make the public company shell of Delta-Omega Technologies, Inc. available to assist ZLOOP in raising capital to support the development and growth of ZLOOP. To that end, on September 21, 2012, ZLOOP and Delta-Omega Technologies, Inc. executed a letter of intent.

On October 15, 2012, just three weeks later, Mosing entered into three Louisiana Franchise Agreements with ZLOOP. The Louisiana Franchise Agreements granted Mosing the right to operate ZLOOP recycling businesses in assigned territories in Louisiana. Together the territories covered by the 3 franchises granted to Mosing control over the entire state of Louisiana.

On October 20, 2012, Mosing purchased a 1% membership in ZLOOP LLC for $1 million. He purchased an additional 1% membership in ZLOOP on January 5, 2013, at the same price. On October 1, 2013, Mosing and ZLOOP entered into an Option Agreement for the purchase of franchises in Texas.

Mosing also made arrangements to be issued for the benefit of ZLOOP and agreed to provide security for the $14 million Line of Credit from Patriot Bank in favor of ZLOOP. The Line of Credit was first evidenced by a promissory note dated December 17, 2013, in the amount of $5 million, of which ZLOOP received $4 million and Mosing received $1 million[4] as repayment of loans made to ZLOOP. The Note between ZLOOP, LLC and Patriot

---

[4] Debtors take no position in their Disclosure Statement respecting the proposed characterization of this transfer.

Bank dated April 29, 2014 refinanced the December 17, 2013 note and reflects that the Line of Credit was reissued in the increased amount of $14 million to ZLOOP LLC, notwithstanding that ZLOOP converted to a corporation the prior month. As security for the Note, Mosing assigned as collateral a deposit account he maintained at Patriot Bank. The proceeds of the Line of Credit were used for additional infrastructure in the Hickory, NC Super Center, ZLOOP's motorsports marketing expenses, purchase of a small plane, and the purchase of the Fernley Property and the Hickory Property. The CRO's and Debtors' post-Commencement Date investigation has not resulted in a complete accounting of the use of all of the Patriot Bank Line of Credit proceeds.

On January 2, 2014, Mosing exercised his right under the Option Agreement to purchase an additional eight ZLOOP franchises for $10 million, which purchase was "funded" by (i) an obligation by Mosing in the principal amount of $800,000; (ii) applying $1 million previously paid for the Option on the Texas franchises; and (iii) converting all loans made by Mosing to ZLOOP in the amount of $7.5 million, plus $700,000 in accrued interest, to purchase price payment; following the consummation of the transaction, all obligations of ZLOOP to Mosing were extinguished, however, Mosing retained his Equity Interests. The majority of the loans, $5.5 million, was evidenced by two unsecured promissory notes.

3.    Loeb Capital Raise & Franchise Rescission.

On February 5, 2014, ZLOOP entered into an agreement with Loeb Partners to raise capital of between $40 million and 80 million for the national expansion of ZLOOP's business.

Loeb Partners advised ZLOOP to rescind the franchises, because the franchise model of raising capital appeared to be impeding Loeb's efforts to raise additional capital. ZLOOP followed Loeb Partners' advice and solicited rescission of all franchises. At Loeb Partners' recommendation, effective as of March 26, 2014, ZLOOP was converted from a Delaware LLC to a Delaware corporation. On or about March 27, 2014, ZLOOP sent all franchisees a written Offer to Repurchase Franchises, which provided each franchisee with the option to accept the Rescission Option or the Equity Option.

The solicitation was successful, and all franchise agreements were rescinded. Of the nine franchisees, six chose the Equity Option, two chose a mixed Rescission Option and Equity Option, and one – Mosing – chose the Rescission Option. In April 2014, Mosing and ZLOOP executed a termination agreement for Mosing's eleven franchises in Texas and Louisiana, on account of which ZLOOP would provide payment in the amount of $10,989,179.00 by the earlier of December 31, 2014 and the closing on a $20 million capital raise. The extent of the payment included the $800,000 Mosing promised to pay in connection with the purchase of the Texas franchises.[5]

---

[5] As a consequence, therefore, the book entry in Debtors' books reflecting an $800,000 receivable due from Mosing appears to be inaccurate.

4.  Mosing Litigation.

On August 28, 2014, Mosing filed the Louisiana Action, seeking to recover the obligations owing under the termination agreement and the funds pledged to Patriot Bank to secure the Line of Credit and damages for alleged securities laws violations.[6]

On November 19, 2014, ZLOOP filed a Motion to Transfer the Louisiana Action to the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a), relying on the forum selection clauses in the franchise agreements.  The Magistrate Judge assisting the Louisiana District Court, recommended that the District Court grant the Motion to Transfer on June 25, 2015.

On December 15, 2014, Mosing filed the Texas Action against ZLOOP in the District Court of Harris County, Texas to recover the same $14 million under the Line of Credit that is asserted in the Louisiana Action.  The jurisdictional basis for the Texas Action was a forum selection clause in the Patriot Bank Note.  ZLOOP removed the case to the United States District Court for the Southern District of Texas, Houston Division, on the basis of diversity jurisdiction.  Mosing sought remand on the grounds that ZLOOP had contractual waived its right of removal.  On April 22, 2015, the Texas District Court granted the motion to remand.  Mosing subsequently filed a motion for summary judgment, which ZLOOP opposed, and which remained pending as of the Petition Date.  ZLOOP filed a Motion to Stay the Texas Action pending further discovery, which also remains pending.

The Debtors filed motions to transfer both the Louisiana Action and the Texas Action to the Bankruptcy Court.  The motion to transfer pertaining to the Texas Action was granted and the Texas Action is now pending before the Bankruptcy Court at Adversary Proceeding No. 15-51915 (KJC).  The Louisiana Action and the Texas Action are stayed by virtue of the filing of these Chapter 11 Cases.  The Debtors assert that the Estates hold Causes of Action against Mosing for, among other things, breach of contract, interference with contracts and prospective contractual advantage, seek equitable remedies of subordination and recharacterization, and defenses, including the defense of *in pari delecto* respecting that portion of the Mosing Claims arising from the Line of Credit.  Mosing disputes all potential Causes of Action and Claim objections.  These disputed Causes of Action and Claim objections are resolved by the Plan Settlement.

5.  ERS Litigation.

The ERS Litigation arose out of a dispute between ZLOOP and ERS pertaining to ZLOOP's purchase of an eWaste System and two Wire Processing Systems from ERS.  The eWaste System and Wire Processing Systems that ERS delivered to ZLOOP failed to meet contractual specifications and the warrantied performance capabilities.  As a result of the deficient eWaste System and Wire Processing Systems, ZLOOP lost a significant amount of revenue, profits, and customer and franchise goodwill and incurred significant expense to repair, complete, retrofit and install the Systems.

---

[6] The disclosures pertaining to the Mosing Litigation are summarized from pleadings filed in the Mosing Litigation. The full text of the pleadings filed on the dockets in such litigations should be consulted for a complete review of the facts alleged and theories articulated by the parties to such litigations.

On May 30, 2014, ZLOOP commenced the ERS Litigation against the ERS Defendants in the District Court for the Western District of North Carolina, where it was consolidated with the action styled *Recycling Equipment, Inc. v. E Recycling Systems, LLC*, Case No. 15:14-cv-56.[7]   ZLOOP asserted claims for breach of contract, unfair and deceptive trade practices, negligent misrepresentation, fraud, fraudulent inducement, and tortious interference with contract.

On December 23, 2014, the ERS Defendants filed an answer and asserted counterclaims against ZLOOP, REI and Third Party Defendants Boston and LaBarge for breach of contract, damage to or alienation of property, misappropriation of trade secrets, and violations of North Carolina's Trade Secrets Protection Act.

On August 3, 2015, ZLOOP, Boston and LaBarge moved to dismiss these counterclaims for failure to state a claim.  On August 6, 2015, ERS and REI filed a Joint Motion for Voluntary Dismissal stating that ERS and REI had settled all claims by and between them. The terms of this settlement have not been made public.  The Western District of North Carolina granted the motion by text-only order on August 11, 2015.

On August 11, 2015, ERS filed a partial motion to dismiss, without prejudice, its claims against ZLOOP for misappropriation of trade secrets, and violations of North Carolina's Trade Secrets Protection Act.  The Western District of North Carolina granted the motion by text-only order on August 18, 2015.  On August 31, 2015, ERS filed amended and restated counterclaims against Boston and LaBarge alleging violations of North Carolina's Trade Secrets Protection Act.  On September 21, 2015, Boston and LaBarge moved to strike the amended and restated counterclaims pursuant to Rules 12(f) and 15(a) of the Federal Rules of Civil Procedure.

6.   REI Litigation.

On July 31, 2015, ZLOOP commenced the REI Litigation, asserting claims for negligent misrepresentation, fraud, breach of contract, conspiracy to defraud, and violations of North Carolina's Unfair and Deceptive Trade Practices Act.  On August 28, 2015, the REI Defendants and ZLOOP each filed a Notice of Removal to the Western District of North Carolina.  ZLOOP then moved to transfer the case to the District of Delaware for automatic reference to the Bankruptcy Court.

On October 29, 2015, the Western District of North Carolina entered an Order staying the REI Litigation until January 31, 2016.  The REI Defendants filed an answer and following the entry of an order by the Bankruptcy Court, counterclaims that resemble the proof of Claim filed by REI in the Chapter 11 Cases.  The District Court on its own motion remanded the REI Litigation to the state court.  Zloop is seeking an extension of time to answer the counterclaims asserted by REI.

---

[7] ZLOOP's complaint was originally docketed as Case No. 5:14-cv-87, which was administratively closed after the proceeding was consolidated with Case No. 5:14-cv-56.

7.    KBM Litigation.[8]

On August 7, 2015, KBM filed a complaint against ZLOOP, Justin Boston, and Justin Boston Racing, LLC in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, asserting damages in the approximate amount of $4 million arising out of an alleged breach of contract. The defendants removed the case to the District Court for the Western District of North Carolina and filed a motion to transfer the KBM Litigation to the District of Delaware for automatic reference to the Bankruptcy Court. In response to the motion to transfer, KBM moved the Western District of North Carolina to abstain from hearing the case and to remand the KBM Litigation back to the General Court of Justice, Superior Court Division, Iredell County.

Further, on October 30, 2015, Justin Boston and Justin Boston Racing, LLC filed an answer and motion to dismiss asserting various defenses and counterclaims, including KBM's prior material breach excusing ZLOOP, Justin Boston, and Justin Boston Racing, LLC from their performance obligations under the contract with KBM.

On January 7, 2016, the Western District of North Carolina ordered the KBM Litigation parties to submit supplemental briefing on the motion to transfer and motion to abstain and remand. The ZLOOP's motion to transfer venue, KBM's motion to abstain and remand, and Justin Boston and Justin Boston Racing, LLC's motion to dismiss remain pending before the Western District of North Carolina. In addition, the Debtors believe that the Estates hold meritorious Causes of Action against KBM, among others, to avoid the contract between Zloop, Inc. and KBM, the Debtors' obligations arising under the contract and to avoid and recover the payments made to KBM in the approximate amount of $1.6 million. The Debtors have investigated KBM's statutory defenses of providing value in good faith and believe that KBM does not have meritorious defense and that any judgment against KBM to recover such payments is collectible.

8.    Estates' Causes of Action Against Boston and LaBarge.

The CRO's investigation, which is incomplete, suggests that the Estates hold meritorious Causes of Action against Boston and LaBarge, among others, for breach of duty, waste, mismanagement, Avoidance Actions, including constructive and actual fraudulent transfers and unauthorized post-Commencement Date transfers. The CRO has not fully developed the facts or theories with respect to such Causes of Action and questions whether any judgment entered against Boston or LaBarge can be collected. Furthermore, the CRO believes that certain of the Estates' Causes of Action parallel the claims asserted by Mosing against Boston and LaBarge.

E.    **The Chapter 11 Cases.**

The following is a brief description of certain major events that have occurred during these Chapter 11 Cases.

---

[8] The following disclosures are summarized from pleadings filed in the KBM Litigation. The full text of the pleadings filed on the docket in such litigation should be consulted for a complete review of the facts alleged and theories articulated by the parties to such litigation.

1.    <u>Employment and Compensation of Professionals and Advisors</u>.

On September 14, 2015, the Bankruptcy Court entered an order authorizing the Debtors to retain DLA Piper LLP (US) as general bankruptcy counsel *nunc pro tunc* to August 9, 2015. Additionally, the Bankruptcy Court authorized the Debtors to retain Miller Coffey Tate LLP as accountants and bankruptcy and litigation consultants *nunc pro tunc* to August 9, 2015; Getzler Henrich & Associates, LLC to provide the Debtors with a Chief Restructuring Officer and certain additional personnel *nunc pro tunc* to September 23, 2015; Miller Industrial Properties, LLC as real estate broker; and Keen-Summit Capital Partners LLC as real estate consultant and advisor. On November 16, 2015, the Bankruptcy Court entered an order authorizing the Debtors to designate William H. Henrich as their CRO *nunc pro tunc* to September 23, 2015. No Professionals, other than Miller Industrial Properties, LLC and Keen-Summit Capital Partners LLC, and certain ordinary course professionals, have received any payment on account of fees and expenses incurred following the Commencement Date. The Debtors estimate that total Professional Fee Claims will approximate $3.3 million as of September 30, 2016.

2.    <u>Appointment of Committee</u>.

On September 2, 2015, the US Trustee appointed the Committee. The members of the Committee are ERS, REI, and Carolina Metals Group. To assist the Committee in carrying out its duties, the Committee retained Cole Schotz P.C. as counsel to the Committee and Goldin Associates, LLC as financial advisors.

3.    <u>Schedules</u>.

The Debtors filed with the Bankruptcy Court its Schedules on September 9, 2015. Since the appointment of the CRO, the CRO has directed an investigation of various transactions and a review of the Debtors' Books and Records as they existed as of the Commencement Date. The CRO has determined that the Commencement Date Books and Records are not reliable as they appear to reflect many material mischaracterized entries and omissions. Based on information discovered through the end of 2015 and without the benefit of reviewing all Books and Records held by third parties, the CRO filed preliminary interim amended Schedules on January 29, 2016, and February 16, 2016. The CRO's analysis is ongoing and on the Effective Date will transition and transfer the investigation to the Plan Administrator. The investigation and prosecution of Causes of Action by the Plan Administrator may reveal additional or different information that, if known, would have been reflected in the amended Schedules.

4.    <u>Bar Date and Exclusivity</u>.

The Bankruptcy Court fixed November 16, 2015 at 5:00 p.m. (prevailing Eastern Time) as the date by which Creditors had to file Proofs of Claims in these Chapter 11 Cases. The deadline for filing a Proof of Claim by a governmental unit (as defined by section 101(27) of the Bankruptcy Code) was February 5, 2016, at 5:00 p.m. (prevailing Eastern Time). A scheduled of proofs of Claim filed is attached hereto as **Exhibit A**.

Section 1121 of the Bankruptcy Code provides that the during the first 120 days following the Commencement Date the Debtors exclusively may file a plan and solicit

acceptances to such plan during the next 60 days; however, such deadlines may be extended for cause shown. While the Debtors sought and obtained extensions of such deadlines, the Debtors' exclusive right to file and solicit a plan in the Chapter 11 Cases has expired.

     5.     <u>Sale of Surplus Equipment.</u>

On November 3, 2015, the Debtors filed a motion [D.I. 173] seeking authorization to sell seven (7) 53' utility trailers through a private sale. On November 9, 2015, the Bankruptcy Court approved the sale of the trailers to US Trailer for a total purchase price of $154,000.00 [D.I. 181]. In connection with the sale of the trailers and as directed by the order approving such motion, the Debtors funded an escrow in the amount of $40,247.20 in order to adequately protect REI's asserted security interest in the trailers. The escrow is held by REI's counsel. Under the Plan REI is deemed to hold an Allowed Secured Claim to the extent of the proceeds in such escrow and on or about the Effective Date shall receive such proceeds in full and final satisfaction of its Allowed Secured Claim.

     6.     <u>The Fernley Settlement.</u>

On November 30, 2015, Eagle Group filed its Motion for Entry of an Order Determining that Debtor's [ZLOOP Nevada, LLC] Real Property Constitutes Single Asset Real Estate that is Subject to 11 U.S. C. §362(d)(3). Based on the consent of the Debtors and Eagle Group, on January 19, 2016, the Bankruptcy Court entered an Order granting Eagle Group's Motion. Thereafter, Eagle Group transferred its Claim and Lien to DCR.

On May 2, 2016, the Debtors filed the Fernley Sale Motion seeking the approval of bid procedures for the sale of the Fernley Assets and a stalking horse asset purchase agreement proposing the sell the property for $3.5 million, subject to higher or otherwise better bids. The proposed bid procedures sought, among other things, to deny DCR, as the assignee of Eagle Group, the right to credit bid for the Fernley Assets pursuant to section 363(k) of the Bankruptcy Code.

DCR informally raised several objections to the Fernley Sale Motion and related claims against the Debtors, including, among other things, that the Lien held by DCR attaches to all of the Fernley Assets, that DCR is a holder in due course, that DCR is entitled to credit bid the full amount of its asserted secured claim in an amount in excess of $4.3 million and that DCR does not consent to the proposed sale of the Fernley Assets as contemplated by the Fernley Sale Motion. The Debtors asserted that DCR is not a holder in due course and is subject to the Debtors' defenses and counterclaims in an amount not less than $125,000; that Debtors' obligations to DCR are subject to set-off, including, without limitation, their right to surcharge DCR's alleged collateral under Section 506(c) of the Bankruptcy Code in an amount not less than $500,000; and that the Debtors' obligations and DCR's claim and lien may be avoided as fraudulent transfers, which, if successful, would render the Fernley Assets unencumbered.

After extensive arms'-length, good faith negotiations regarding the Fernley Sale Motion and the issues raised and arguments asserted by each of the Debtors and DCR, respectively, and in order to avoid the costs, delays and risks of protracted litigation, and in order to obtain some value for the benefit of the Debtors' estates, the parties were able to resolve

DCR's objection, and the Debtors filed an agreed order reflecting the settlement on May 11, 2016 [D.I. 451]. Pursuant to the settlement with DCR, the Debtors agreed to transfer the Fernley Assets to DCR in exchange for cash consideration of $295,000, comprising $250,000 to the Debtors' estates and $45,000 to pay the allowed fees of real estate brokers Miller Industrial Properties, LLC and Keen-Summit Capital Partners LLC. On May 16, 2016, the Bankruptcy Court entered an order approving the Debtors' settlement with DCR, which transaction subsequently was consummated.

       7.     Sale of the Hickory Property.

On May 3, 2016, the Debtors filed a motion [D.I. 432] seeking approval of bidding procedures, approval of Dynamic Resources as the Stalking Horse Bidder, approval of bidder protections in favor of Dynamic Resources, scheduling the auction and sale hearing, and approval of the sale of the Hickory Assets to the successful bidder at the auction. On May 16, 2016, the Bankruptcy Court entered an order [D.I. 468] approving the bidding procedures, approving Dynamic Resources as the stalking horse, approving the bidder protections, and scheduling an auction and sale hearing.

On June 13, 2016, an auction was held in accordance with the Bid Procedures Order. After several rounds of bidding, Colt Refining submitted a bid in the amount of $2,250,000, representing net proceeds to the estate of $2,133,000 after satisfaction of the Debtors' obligations to pay the bidder protections to Dynamic Resources. The Debtors, in consultation with the Committee and counsel to Mosing and ZLOOP LA, LLC, determined that the Successful Bidder with respect to the Hickory Assets was Colt Refining, Inc. and Dynamic Resources was the Back-up Bidder [D.I. 496]. At the sale hearing held on June 23, 2016, the Bankruptcy Court entered an order authorizing the sale of the Hickory Assets to Colt Refining, Inc., subject to an option in favor of Colt Refining to take title to the real estate owned by Zloop Knitting Mill, LLC within 90 days following the closing of the transactions [D.I. 500]. The sale closed on July 22, 2016 and distributions contemplated by the sale motion were made on or about the time of the closing of the sale. The net sale proceeds recovered by the Estates approximated $2.1 million.

**F.**    **The Plan Process and Settlement**

On February 5, 2016, the US Trustee filed a motion [D.I. 305] seeking conversion of these Chapter 11 Cases. Mosing filed a joinder to the US Trustee's conversion motion on February 8, 2016 [D.I. 308]. The Debtors filed a preliminary objection to the Conversion Motions on March 11, 2016 [D.I. 375]. Hearing on the Conversion Motions was deferred by consent of the parties during the pendency of the sale processes.

On February 10, 2016, the Debtors filed their initial plan of liquidation [D.I. 315] and related disclosure statement [D.I. 316]. The Debtors withdrew without prejudice the initial plan of liquidation and disclosure statement and related motion to approve on May 4, 2016 [D.I. 441].

Following the conclusion of the sale hearing respecting the Hickory Assets, the Debtors, the Committee, and Mosing agreed to work together to formulate a confirmable plan of

liquidation that would resolve the outstanding issues in these Chapter 11 Cases. Specifically, the Professionals agreed to receive partial payment of their Allowed Professional Fee Claims from the Estate Assets after Secured Claims, Administrative and Priority Claims that are Allowed are paid (or, if Disputed, are fully reserved for), with the balance of such Professional Fee Claims to be paid 50% from the Creditor Distribution Fund.

## G.    Plan Settlement.

Following the entry of the order approving the sale of the Hickory Assets, in recognition of the successful auction results, the Debtors and the Committee desired that the Debtors exit these Chapter 11 Cases in accordance with a confirmed plan. The Debtors and the Committee negotiated a plan term sheet at arms'-length and in good faith and agreed upon the terms and conditions of the Plan Settlement that form the basis for this Combined Plan and Disclosure Statement and which are incorporated herein. As stated above, the Debtors and the Committee believe that the Plan Settlement aligns the interests of Holders of Allowed Claims with Mosing's interests in pursuing the Estates' Claim objections and Causes of Action, which such parties believe will yield higher and quicker recoveries from the Causes of Action, as compared to the results that may be achieved by a chapter 7 trustee, with such Plan Settlement results inuring to the benefit of the Holders of Allowed Claims. Furthermore, the payment of the Mosing Estate Payment increases the funds available on the Effective Date to satisfy the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Professional Fee Claims. And the payment of the Mosing Funding Payment and any additional Funding Payments will seed the Post Effective Date Debtor and Plan Administrator with funds to support the Plan Administrator's investigation and pursuit of Claim objections and Causes of Action. Finally, Mosing's agreement to split 50/50 the proceeds of the Causes of Action with the Professionals and then Holders of Allowed Unsecured Claims permits such Creditors higher recoveries than otherwise would be realized, because Mosing's Claim of $40 million far exceeds 50% of the anticipated pool of Allowed Unsecured Claims and would materially dilute the other Holders' entitlement if the Mosing Claims were to be Allowed Unsecured Claims, such that Mosing would be entitled to approximately 75% of Distributions to Holders of Allowed Unsecured Claims assuming the total pool is $54 million, however, the Debtors believe that the pool is much closer to $42 million entitling Mosing to approximately 95% of such Distributions. In brief, the Debtors and the Committee believe that Distributions will be greater, made sooner and recoveries on account of Allowed Unsecured Claims will be greater than if either these Chapter 11 Cases were converted or a liquidating plan was confirmed other than on the terms and conditions of the Plan Settlement.

## H.    Certain Income Tax Consequences.

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Equity Interests. None of the Debtors or the Professionals offers an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement. All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and other tax consequences of the Combined Plan and Disclosure Statement. This Combined Plan and Disclosure Statement is not intended,

and should not be construed, as legal or tax advice to any Creditor, Equity Interest Holder or other party in interest.

## I.    Certain Risk Factors To Be Considered

Prior to voting on the Combined Plan and Disclosure Statement, each Holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Combined Plan and Disclosure Statement, including the Plan Supplement and any Exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Combined Plan and Disclosure Statement and its implementation.

### 1.    Risk of Non-Confirmation of Combined Plan and Disclosure Statement

Although the Debtors believe the Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate a re-solicitation of votes.

### 2.    Delays of Confirmation and/or Effective Date

Any delay in confirmation and effectiveness of the Combined Plan and Disclosure Statement could result in, among other things, increased Administrative Expense Claims and Professional Fee Claims. These or any other negative effects of delays in confirmation or effectiveness of the Combined Plan and Disclosure Statement could endanger the ultimate approval of the Combined Plan and Disclosure Statement by the Bankruptcy Court.

### 3.    Alternative Plan

The period during which the Debtors exclusively may file and solicit acceptance of a plan has expired. If the Combined Plan and Disclosure Statement is not confirmed, the Debtors, the Committee, Mosing, or any other party in interest could attempt to formulate a different plan. However, the additional costs, all of which may constitute Administrative Expense Claims and Professional Fee Claims may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to cases under chapter 7. Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables Holders of Claims to realize the best return under the circumstances.

### 4.    Conversion of the Chapter 11 Cases

The motion to convert these Chapter 11 Cases to cases proceeding under chapter 7 of the Bankruptcy Code remains pending and is being carried on the Court's calendar as a status conference from time to time. The motion to convert will be carried to the Confirmation Hearing and be denied if the Combined Plan and Disclosure Statement is approved and confirmed. Alternatively, if the Combined Plan and Disclosure Statement is not confirmed, the Debtors may consent to the conversion of these Chapter 11 Cases. The Debtors believe that conversion will result in additional delays, risks and costs, which ultimately will increase the

likelihood that Holders of Unsecured Claims will receive a lower recovery, if any. The Debtors and the Committee believe that the Plan Settlement aligns the interests of Holders of Allowed Claims with Mosing's interests in pursuing the Claims objections and Causes of Action, which such parties believe will yield higher and quicker recoveries from the Causes of Action, as compared to the results that may be achieved by a chapter 7 trustee, with such Plan Settlement results inuring to the benefit of the Holders of Allowed Claims.

   5.   Mosing's Rights to Control the Prosecution and/or Resolution of Estate Claims and Causes of Action

   Pursuant to the Plan Settlement, Mosing will have the right to prosecute Estate Causes of Action, or not, in his sole and absolute discretion. Mosing, however, does not have any duty or other obligation to the Estates, creditors or other interested parties to actually prosecute any objection to Claims or Cause of Action, or if filed, to prosecute any objection to Claims or Cause of Action to final judgment or settlement. Accordingly, while the Debtors believe that Mosing may file and prosecute objections to Claims and Causes of Action and Mosing has the resources to do so, Mosing, in his sole and absolute discretion, may choose not to file any objections to Claims or Causes of Action, or if filed, Mosing, in his sole and absolute discretion, may choose not to litigate any such objection or Causes of Action to final judgment or other completion and may choose to settle any objection or Cause of Action in his sole discretion.

   6.   Mosing Has Independent Claims Against Certain Parties As Against Whom There May Be Objections to Claims or Causes of Action

   Mosing is party to legal actions pending against, among others, Boston and LaBarge, persons as against whom the Estates may maintain objections to their Claims or Causes of Action. While Mosing may file and prosecute objections or Causes of Action against such persons, Mosing is not contributing to the Estates as Post-Effective Date Debtor, compromising or limiting in any fashion or form Mosing's independent claims against Boston or LaBarge, or anyone else as against whom the Estates may have Claim objections or Causes of Action. Moreover, none of the Debtors, their Estates, or any creditor or interested party thereto, is obtaining any rights by and through the Plan Settlement or otherwise with regards to Mosing's claims, whether or not asserted, including any right to receive, share in or demand any portion or part of any recovery that Mosing may obtain on his independent claims. Accordingly, if Mosing receives any amounts or other recovery on Mosing's independent claims against Boston, LaBarge or anyone else, neither the Debtors, the Estates, the Post Effective Date Debtor or any creditors or other interested party of the foregoing will receive any distribution therefrom or be entitled to any amount thereof; provided, however, that if any Claim objection or Cause of Action is joined with any of Mosing's independent claims and judgment is entered in favor of Mosing and the Debtors, their Estates and/or the Post-Effective Date Debtor, such judgment shall be allocated between the parties consistent with the terms of the Plan Settlement. For the avoidance of doubt, such allocation shall mean that 50% of any such judgment proceeds shall be distributed directly to Mosing and the remaining 50% shall be distributed in accordance with the terms of the Plan Settlement (i.e., 50% to the Holders of Allowed Professional Fee Claims on a Pro Rata basis and 50% to Mosing and, once such Professional Fee Claims are paid in full, 50% to the Holders of Allowed Unsecured Claims on a Pro Rata basis and 50% to Mosing).

7.    Mosing is Not a Fiduciary and Has No Duties to the Estates, Post Effective Date Debtor or Creditors

As described above, pursuant to the Plan Settlement, Mosing will have the right to prosecute, or not, Claim objections and Causes of Action in his sole and absolute discretion. Mosing is not a fiduciary, and Mosing has neither accepted, nor shall he have, any fiduciary or other duty to the Debtors, Estates, Post Effective Date Debtor or any creditor or other interested person with regards to his determination to file, prosecute, settle, withdraw, refrain from filing, or other disposition or not of any Claim objection or Cause of Action, or his exercise of any other right under the Plan Settlement, or any directive he may give to the Plan Administrator in connection therewith. Accordingly, none of the Plan Settlement, the Plan, Plan Supplement or any order of this Court has or will impose any fiduciary or similar duty on Mosing or otherwise limit in any fashion his sole and absolute discretion with regards to Claim objections and Causes of Action and the control or resolution of any of the foregoing.

8.    Mosing May Settle any Claim, Claim Objection or Cause of Action Without Notice or Court Approval

Pursuant to the Plan Settlement, Mosing, via direction given to the Plan Administrator, is receiving the authority to settle Claims and dispose and/or settle Claim objections or Causes of Action in his sole and absolute authority. Accordingly, Mosing will not require further Court approval to settle, compromise, release any Claim, Claim Objection or Causes of Action or otherwise dispose of any Claim objection or Cause of Action. As such, Mosing will not be required to provide any notice of any kind whatsoever to any party, including any creditor or other interested party prior to his consummation of any such action with regards to Claims, Claim objections or Causes of Action, including the withdrawal, dismissal, settlement, release or other disposition (or not) thereof.

9.    The Plan Administrator Must Take Discretion From Mosing

The Plan and Plan Settlement contemplate and provide for the appointment of a Plan Administrator to effectuate Mosing's discretion (in Mosing's capacity as the Plan Funder) with regards to Claims, Claim objections and Causes of Action and to administer any distribution that may be made to creditors or other interested parties under the Plan Settlement, the Combined Plan and Disclosure Statement and Confirmation Order. As contemplated for and provided for in the Plan Settlement and the Combined Plan and Disclosure Statement, the Plan Administrator is to be appointed by, and serve at the pleasure of, Mosing or Mosing's designee or assignee. The Plan Administrator also is required to accept direction from Mosing or Mosing's designee or assignee in Mosing's exercise of his rights over Mosing's Claim objections and Causes of Action under the Plan Settlement and the Combined Plan and Disclosure Statement. Accordingly, notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, including section VIII. hereof, the Plan Administrator must take and effectuate Mosing's direction, and no other Person or Entity other than Mosing or Mosing's designee or assignee is entitled to provide any direction to the Plan Administrator under the Plan Settlement and the Combined Plan and Disclosure Statement.

10.   The Plan Administrator May Employ Professionals that Also Represent Mosing

The Plan Administrator may retain professionals, including counsel, that are or have been retained by Mosing to represent Mosing in his individual capacity, including with regards to claims and/or causes of action as against Persons or Entities as against whom there may be Claim objections or Causes of Action.  The Plan Administrator, therefore, may retain such professionals (including counsel) to pursue such Claim objections or Causes of Action, notwithstanding their prior or concurrent representation of Mosing.  Mosing exclusively shall have the right to waive any conflict or privilege.

## IV.   TREATMENT OF UNCLASSIFIED CLAIMS

### A.   Administrative Expense Claims.

Requests for Administrative Expense Claims (other than 503(b)(9) Claims, which must have been Filed by the Bar Date, Statutory Fees, and the Claims of Governmental Units arising under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) must be Filed by no later than the Administrative Expense Bar Date.  On the Effective Date or as soon thereafter as is practical, each Holder of an Allowed Administrative Expense Claim shall receive from the Estate Assets payment in full in Cash of the Allowed amount of such Claim or such other treatment as may be agreed upon by such Holder and the Professionals. Any Administrative Expense Claim not Filed by the Administrative Expense Bar Date (other than 503(b)(9) Claims, Statutory Fees, and the Claims of Governmental Units arising under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) shall be deemed disallowed under this Combined Plan and Disclosure Statement and shall be forever barred against the Estates, the Post-Effective Date Debtor and the Plan Administrator, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

### B.   Professional Fee Claims.

Requests for Professional Fee Claims must be filed by no later than the Professional Fee Claims Bar Date. Any Professional Fee Claims not Filed by the Professional Fee Claims Bar Date shall be deemed disallowed under this Combined Plan and Disclosure Statement and shall be forever barred against the Estates, the Post-Effective Date Debtor and the Plan Administrator, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code, the Post-Effective Date Debtor shall pay each Holder of an Allowed Professional Fee Claim (which Claim shall only be Allowed to the extent approved by a Final Order of the Bankruptcy Court), until such Holder is paid in full on account of such Claim, (i) such Holder's Pro Rata share of the Estate Assets after all Priority Claims, Other Priority Claims, Secured Claims and Administrative Expense Claims, if Allowed, are paid, or, if Disputed, are fully reserved for or disallowed and (ii) such Holder's Pro Rata Share of fifty percent (50%) of the Creditor Distribution Fund.

Pursuant to the Plan Settlement, on the Effective Date, Mosing's objections to any pending fee applications of Professionals shall be deemed withdrawn.

## C.      Priority Tax Claims

On the Effective Date or as soon thereafter as is practical, each Holder of an Allowed Priority Tax Claim, if any, shall receive from the Estate Assets payment in full in Cash of the Allowed amount of such Claim, or such other treatment as may be agreed upon by such Holder.  The IRS filed a Proof of Claim against Zloop Knitting Mill, LLC in an unliquidated amount.  The Debtors last filed tax return was for the fiscal year ended 2014.  Under the Plan at XV.U. the Debtors will prepare and file tax returns for fiscal years ended 2015 and 2016, and will cooperate with the Plan Administrator to file a return for fiscal year ended 2017, assuming the Plan is confirmed and the Effective Date occurs prior to the time for filing such return.  The Debtors believe that any tax returns to be filed will report that no taxes are owing as the Debtors experienced operating losses since inception and losses on the sales of real estate and equipment and settlements during the administration of these Chapter 11 Cases.  Consequently, the Debtors believe no taxes will be due.

## D.      Payment of Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date or that have accrued, but are not yet due, as of the Effective Date shall be paid by the Post-Effective Date Debtor from the Estate Assets when such fees are due.  After the Effective Date, the Plan Administrator shall pay any and all such fees when due and payable, and such fees shall constitute Plan Administrator Expenses.

After the Effective Date, the Plan Administrator shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  By virtue of the limited substantive consolidation of the Debtors under the Combined Plan and Disclosure Statement, only Zloop, Inc. shall remain obligated to pay quarterly fees to the United States Trustee until case is closed.

## V.  SUMMARY OF DEBTORS' ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND EQUITY INTERESTS AND ESTIMATED RECOVERIES

## A.      Summary of Assets.

The following chart provides a summary of the Debtors' assets, the estimated value of such assets, and the realized value of such assets that are available to the Debtors' Estates.

| Asset | List of Assets | Estimated Value |
|---|---|---|
| Estate Assets | - Cash | $2,350,000 |
| | - Real Estate owned by Zloop Knitting Mill, LLC, subject to an option | $10.00 |
| | - Books and Records | Unknown |
| | - Escrow respecting REI Allowed Secured Claim | $40,000 |

| Causes of Action | Unknown | Unknown |
|---|---|---|

### B.    Summary of Treatment of Claims and Equity Interests.

The following chart provides a summary of the treatment of each Class of Allowed Claims and Equity Interests and an estimate of the recoveries of Holders in each Class. The treatment provided in this chart is for information purposes only and is qualified in its entirety by Article VII of the Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims [9] | Treatment / Voting Status | Estimated Recovery to Holders of Allowed Claims [10] |
|---|---|---|---|
| Administrative Expense Claims | $50,000 | Not Entitled to Vote | 100% |
| Priority Tax Claims | $0.00 | Not Entitled to Vote | 100% |
| Professional Fee Claims | $3.3 million | Not Entitled to Vote | 100% [11] |
| Class 1 – Secured Claims | $40,000.00 | Unimpaired / Deemed to Accept | 100% |
| Class 2 – Other Priority Claims | [$0.00] | Unimpaired / Deemed to Accept | 100% |
| Class 3 – Mosing Unsecured Claim | $40,000,000.00 | Impaired / Entitled to Vote | To be determined |
| Class 4 – Unsecured Claims | $6,536,500.00 | Impaired / Entitled to Vote | To be determined |
| Class 5 – Intercompany | [$  .  ] | Impaired / Not | 0% |

---

[9]  These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by Creditors in proofs of Claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections to such Claims have not been fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[10]  The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases. As set forth in footnote 11 above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

[11]  The Professionals have agreed to defer full payment on account of Allowed Professional Fee Claims with Professionals receiving Distributions of Cash and the Mosing Estate Payment after all Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims are paid or reserved for in full. Based on Debtors' records and estimate of Allowed Professional Fee Claims, the Debtors estimate that Professionals will receive Distributions of 73% of the total estimate of accrued and Allowed Professional Fee Claims on the Effective Date with the balance to be paid by the Plan Administrator from the proceeds of the Causes of Action.

| Claims | | Entitled to Vote | |
|---|---|---|---|
| Class 6 – Equity Interests | N/A | Impaired / Not Entitled to Vote | Existing Equity Interests Extinguished |

## VI.  CONFIRMATION AND VOTING PROCEDURES

### A.    Confirmation Procedure.

1.    Confirmation Hearing

The Bankruptcy Code and the Bankruptcy Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of this Combined Plan and Disclosure Statement.  On [ _____ ], 2016, the Bankruptcy Court entered an order, among other things, authorizing the Debtors to solicit votes to accept or reject the Combined Plan and Disclosure Statement and scheduling the Confirmation Hearing for October 26, 2016 at 1:00 p.m. (ET), to consider, among other things, final approval of this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code and confirmation of the Plan under section 1129 of the Bankruptcy Code.  Notice of the Confirmation Hearing will be provided to all known Creditors, Equity Interest Holders, and other parties in interest.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing, or upon the Filing of a notice with the Bankruptcy Court.

Any objection to this Combined Plan and Disclosure Statement must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against the Debtors, the basis for the objection and the specific grounds of the objection, and must be Filed with the Bankruptcy Court, together with proof of service thereof, and served upon the following parties so as to be received no later than October 17, 2016 at 5:00 p.m. (ET):  (i) counsel to the Debtors, DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq. and Kaitlin MacKenzie Edelman, Esq.); (ii) counsel to the Committee, Cole Schotz P.C., 900 Third Avenue, 16th Floor, New York, New York 10022 (Attn: Daniel F.X. Geoghan, Esq.) and 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: David R. Hurst, Esq.); (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899 (Attn: David L. Buchbinder, Esq.); and (iv) counsel to Mosing, Allen & Gooch, 2000 Kaliste Saloom Road, Suite 400 (70508), Post Office Drawer 81129, Lafayette, Louisiana 70598 (Attn: James H. Gibson, Esq. and Charles M. Kreamer, Sr., Esq.) and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: Paul N. Heath, Esq. and Marcos A. Ramos, Esq.); and (v) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to this Combined Plan and Disclosure Statement.  **UNLESS AN OBJECTION TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

2.    Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such class; and (ii) feasible. The Bankruptcy Court must also find that:

a.    The Combined Plan and Disclosure Statement has classified Claims and Equity Interests in a permissible manner;

b.    The Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

c.    The Combined Plan and Disclosure Statement has been proposed in good faith.

3.    Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a claim or equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with secured claims, unsecured claims and equity interests. The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar claims or equity interests in the same class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

4.    Impaired Claims or Equity Interests

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims and Equity Interests in Classes "impaired" by the Combined Plan and Disclosure Statement *and* receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Equity Interests may be "impaired" if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class. The Holders of Claims or Equity Interests not impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The Holders of Claims or Equity Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the Holders of Claims whose Claims are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

5.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the plan). Because the Combined Plan and Disclosure Statement proposes a liquidation of all of the Debtors' assets, for purposes of this test, the Debtors have analyzed the ability of the Plan Administrator to meet its obligations under the Combined Plan and Disclosure Statement. Based on the Debtors' analysis and Plan Settlement, including, without limitation, the Professionals' agreement to defer a portion of their Professional Fees Claims, the Debtors and Plan Administrator will have sufficient assets to accomplish their required tasks under the Combined Plan and Disclosure Statement. Therefore, the Plan Proponents believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

6.    Eligibility to Vote on the Combined Plan and Disclosure Statement

Unless otherwise Ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 3 and 4 may vote on the Combined Plan and Disclosure Statement. In order to vote on the Combined Plan and Disclosure Statement, you must hold a Claim in Class 3 or 4 and (i) have timely filed a proof of Claim, (ii) have a Claim that is identified on the Schedules that is not listed as disputed, unliquidated or contingent, (iii) be the Holder of a Claim that has been Allowed pursuant to the Combined Plan and Disclosure Statement or other Order or (iv) be the Holder of a Claim that is temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

7.    Procedure/Voting Deadlines

In order for your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot, by first class mail, overnight mail or courier service, to the Balloting Agent at the following address: Miller Coffey Tate LLP, 8 Penn Center, Suite 950, 1628 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103 (Attn: Matthew Tomlin C.P.A.).

The Balloting Agent must RECEIVE original signed Ballots on or before the Voting Deadline. Except as otherwise Ordered by the Bankruptcy Court or set forth in the Solicitation Order, you may not change your vote once a Ballot is submitted to the Balloting Agent.

Any Ballot that is timely received, that contains sufficient information to permit the identification of the Creditor and that is cast as an acceptance or rejection of this Combined Plan and Disclosure Statement will be counted and cast as an acceptance or rejection, as the case may be, of this Combined Plan and Disclosure Statement.

Holders of Claims who do not want to provide the releases to the Released Parties set forth in this Combined Plan and Disclosure Statement must affirmatively indicate so by checking the "opt out" box on the Ballot and submitting such Ballot to the Balloting Agent so that it is actually received by the Voting Deadline.

The following Ballots will not be counted or considered for any purpose in determining whether this Combined Plan and Disclosure Statement has been accepted or rejected by the Class in which such Holder holds a Claim:

a. any Ballot submitted that is received after the Voting Deadline, unless the Debtors, in consultation with Mosing, or the Court grant an extension of the Voting Deadline with respect to such Ballot;

b. any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

c. any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject this Combined Plan and Disclosure Statement;

d. any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no Bankruptcy Rule 3018(a) motion has been Filed by the deadline to File such motion;

e. any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of this Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of this Combined Plan and Disclosure Statement;

f. any Ballot not bearing an original signature; or

g. any Ballot that is submitted by facsimile or other electronic communication.

8.    Acceptance of the Combined Plan and Disclosure Statement

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important. In order for the Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors urge you vote to accept the Combined Plan and Disclosure Statement. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

9.    Elimination of Vacant Classes

Any Class of Claims that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an allowed Claim, or a Holder of a Claim temporarily

allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Combined Plan and Disclosure Statement by such Class under section 1129(a)(8) of the Bankruptcy Code.

## VII.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

Equity Interests and Claims (other than Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims) are classified for all purposes, including voting, confirmation and Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

| Class | Type | Status under Plan | Voting Status |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Mosing Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | Equity Interests | Impaired | Deemed to Reject |

## A.      Treatment of Claims and Equity Interests.

1.      **CLASS 1 – SECURED CLAIMS**

a.      Classification.  Class 1 consists of all Secured Claims.  The Debtors believe that other than the Mosing Secured Claim, only REI holds an Allowed Secured Claim in the approximate amount of $40,000.  All other asserted Secured Claims are deemed Disputed.

b.      Impairment and Voting.  Class 1 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 1 Claims are deemed to have accepted the Combined Plan and Disclosure Statement, and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.  On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Secured Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction of such Claim, from Estate Assets, either (a) such treatment as such Holder agrees, or (b) at the Post-Effective Date Debtor's option (i) payment in full in Cash of the Allowed Amount of such Secured Claim, or (ii) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

2.      **CLASS 2 – OTHER PRIORITY CLAIMS**

a.      Classification.  Class 2 consists of Other Priority Claims.  The Debtors believe there are no Holders of Priority Claims.

b.      Impairment and Voting.  Class 2 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Other Priority Claims are deemed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.  On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Other Priority Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Priority Claim shall receive, in full and final satisfaction of such Claim, from Estate Assets, payment in full in Cash of the Allowed amount of such Claim or such other treatment as may be agreed upon by such Holder and the Post-Effective Date Debtor.

3.      **CLASS 3 – MOSING UNSECURED CLAIMS**

a.      Classification.  Class 3 consists of the Mosing Unsecured Claims.

b.      Impairment and Voting.  Class 3 is impaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Mosing Unsecured Claims in Class 3 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.  Pursuant to the Plan Settlement, on the Effective Date, the Mosing Unsecured Claims shall be deemed Allowed in the aggregate amount of $40,000,000.00 Mosing, on account of the Mosing Unsecured Claims, shall receive, in full and final satisfaction of such Claims, until such Claims are paid in full, (i) fifty percent (50%) of the Creditor Distribution Fund until Allowed Professional Fee Claims and Allowed Unsecured Claims are paid in full and (ii) once Allowed Professional Fee Claims and Allowed Unsecured Claims are paid in full, one hundred percent (100%) of the Creditor Distribution Fund.  One new share of the Post-Effective Date Debtor shall automatically, without further action, be deemed issued to the initial Plan Administrator.  If a Plan Administrator resigns or is removed, such equity interest in the Post-Effective Date Debtor shall be deemed automatically transferred to the successor Plan Administrator.

4.      **CLASS 4 – UNSECURED CLAIMS**

a.      Classification.  Class 4 consists of Unsecured Claims.

b.      Impairment and Voting.  Class 4 is impaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Unsecured Claims in Class 4 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.  Until Allowed Professional Fee Claims are paid in full, the Holders of Allowed Unsecured Claims shall not receive or otherwise be entitled to a Distribution on account of such Claims.  Once Allowed Professional Fee Claims are paid in full, the Holders

of Allowed Unsecured Claims shall receive, in full and final satisfaction of such Claims, their Pro Rata portion of fifty percent (50%) of the Creditor Distribution Fund until such Claims are paid in full.

5.    **CLASS 5 – INTERCOMPANY CLAIMS**

a.    <u>Classification</u>. Class 5 consists of Intercompany Claims.

b.    <u>Impairment and Voting</u>.    Class 5 is Impaired.    Because Holders of Intercompany Claims shall not receive any Distribution under the Combined Plan and Disclosure Statement, Class 5 shall be deemed to have voted to reject the Combined Plan and Disclosure Statement.

c.    <u>Treatment</u>.    On the Effective Date as a result of the limited substantive consolidation of the Debtors, all Intercompany Claims shall be cancelled and no Debtor shall receive any recovery on account of any Intercompany Claim.

6.    **CLASS 6 – EQUITY INTERESTS**

a.    <u>Classification</u>. Class 6 consists of Equity Interests.

b.    <u>Impairment and Voting</u>.    Class 6 is Impaired.    Because Holders of Equity Interests shall not receive any Distribution under the Combined Plan and Disclosure Statement, Class 6 shall be deemed to have voted to reject the Combined Plan and Disclosure Statement.

c.    <u>Treatment</u>.    On the Effective Date, all Equity Interests (including any and all options or rights to exercise warrants or options or to otherwise acquire any Equity Interests) shall be cancelled.    Each Holder of an Equity Interest as of the Effective Date shall neither receive nor retain any property or interest in property on account of such Equity Interest.

B.    <u>**Modification of Treatment of Claims and Equity Interests.**</u>

The Post-Effective Date Debtor reserves the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest, whose Allowed Claim or Equity Interest, as the case may be, is being adversely affected.

### VIII. <u>PROVISIONS REGARDING THE PLAN ADMINISTRATOR</u>

A.    <u>**Appointment of the Plan Administrator.**</u>

On the Effective Date, a Plan Administrator, who shall be selected by Mosing, in Mosing's sole and absolute discretion, no later than five (5) Business Days prior to the Voting Deadline, shall be appointed and thereafter serve in accordance with this Combined Plan and Disclosure Statement.    The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.    In the Plan Supplement, the Debtors will identify the Plan Administrator and the material

terms of the Plan Administrator's compensation.  The Plan Funder has no fiduciary or other duty of any kind to the Debtors, the Estates, any creditor thereof, or any other Person, Entity or party, for or in connection with the Plan Settlement, Plan or the Plan Funder's exercise of his rights as provided under the Plan Settlement, Plan and orders of the Bankruptcy Court, including but not limited to the Plan Funder's appointment of the Plan Administrator or any and all directions given to the Plan Administrator by the Plan Funder.

## B.    Rights and Powers of the Plan Administrator.

The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Combined Plan and Disclosure Statement, be the designated representative under § 1123(b)(3) and empowered to act on behalf of the Post-Effective Date Debtor to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement; (ii) establish, as necessary, disbursement accounts for the deposit and Distribution of all amounts Distributed under the Combined Plan and Disclosure Statement; (iii) make Distributions in accordance with the Combined Plan and Disclosure Statement; (iv) object to Claims, as appropriate; (v) employ and compensate professionals to represent the Plan Administrator and the Post-Effective Date Debtor with respect to its responsibilities or otherwise; (vi) assert, or not assert, in its sole and absolute discretion (but subject to the direction and oversight of the Plan Funder), any of the Estates' Causes of Action in the Bankruptcy Court or other court of competent jurisdiction; and (vii) exercise such other powers as may be vested in the Post-Effective Date Debtor and/or the Plan Administrator by Order of the Bankruptcy Court, pursuant to the Plan Settlement, Combined Plan and Disclosure Statement, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

The Plan Administrator may, in its sole and absolute discretion (but subject to the direction and oversight of the Plan Funder), and without further Order, take any and all actions which it deems reasonably necessary or appropriate in connection with prosecuting any Cause or Action or defending against any Claim, including, without limitation, (i) exercise any and all judgment and discretion with respect to the manner in which to prosecute (or not to prosecute) or settle any Cause of Action or defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (ii) enter into a settlement agreement or agreements.  For the avoidance of doubt, the Plan Administrator may, in its sole and absolute discretion and without further Order, make all determinations and decisions with respect to the prosecution of Claims and Causes of Action, including any determination or decision not to prosecute or pursue any Claim or Cause of Action.  Furthermore, the decision or determination of the Plan Administrator, the Plan Funder and/or Mosing not to prosecute or otherwise pursue any Claim or Cause of Action shall not result in the Plan Administrator, the Plan Funder and/or Mosing being liable to any Person or Entity as a result of such determination or decision.

The Plan Administrator shall report directly to the Plan Funder and shall take direction solely from the Plan Funder or his designees or assigns.  The Plan Funder may, in its sole and absolute discretion, remove and replace the Plan Administrator without order of the Bankruptcy Court.

On the Effective Date, the authority, power and incumbency of the Persons then acting as directors, officers, managers and other authorized persons of the Debtors shall be terminated and such Persons shall be deemed to have resigned.

**C.      Plan Administrator Expenses.**

The Plan Administrator shall receive reasonable compensation acceptable to the Plan Funder in his sole discretion for services rendered pursuant to the Combined Plan and Disclosure Statement without further Bankruptcy Court order. In addition, except as otherwise ordered by the Bankruptcy Court, the amount of reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) shall be paid without further Order.

The Plan Administrator Expenses shall be paid from the Plan Administrator Fund, including from the Funding Payment prior to any Distribution being made to the Holders of Allowed Claims from such fund and/or the Creditor Distribution Fund. The Plan Administrator may, in its discretion, create a reasonable reserve for Plan Administrator Expenses that have accrued but remain unpaid or are anticipated to be incurred.

## IX.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT

**A.      Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

**B.      Objections to and Resolution of Claims.**

The Plan Administrator, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall have the right to file objections and/or motions to estimate any and all Claims after the Effective Date. The Plan Administrator shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court. The Plan Administrator shall further have the authority to resolve and settle any and all Claims and Causes of Action without approval of the Bankruptcy Court.

**C.      Claims Objection Deadline.**

The Plan Administrator, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Plan Administrator. Cause to extend such deadline includes the ongoing ERS Litigation, REI Litigation, and KBM Litigation.

**D.**    **No Distribution Pending Allowance.**

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

**E.**    **Claims Reserve.**

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Plan Administrator shall reserve Cash or property equal to one-hundred percent (100%) of the Cash or property that would be Distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, unless otherwise ordered by the Bankruptcy Court following notice to the affected Claim Holder. Such Cash or property, as the case may be, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

**F.**    **Distribution After Allowance.**

Except as provided herein, within seven (7) Business Days after any such Claim becomes an Allowed Claim, the Plan Administrator shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

**G.**    **Adjustments to Claims Without Objection.**

After the Effective Date, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be marked as satisfied, adjusted or expunged on the register of Claims in the Chapter 11 Cases at the direction of the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**H.**    **Late Claims and Amendment to Claims.**

Except as provided herein or otherwise agreed, any and all Holders of Claims, proof of which were filed after the applicable Bar Date, shall not be treated as Creditors holding Allowed Claims for purposes of voting and Distributions pursuant to Bankruptcy Rule 3003(c)(2) unless on or before the Confirmation Date such late Claim has been deemed timely Filed by a Final Order. After the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court.

**I.**    **Distribution Record Date.**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes. The Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring

EAST\128535209.3                                  41

after the Distribution Record Date. In making any Distribution with respect to any Claim, the Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person or Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are actually known to the Plan Administrator as of the Distribution Record Date.

## J.    Delivery of Distributions.

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then current address. Undeliverable distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable distribution becomes an Unclaimed Distribution.

Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within thirty (30) days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may Order, but in no event less frequently than annually, the Plan Administrator shall make Distributions of all Cash and property that has become deliverable during the preceding quarter.

The Plan Administrator shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, nothing contained in the Combined Plan and Disclosure Statement shall require the Plan Administrator to locate any Holder or an Allowed Claim.

## K.    Unclaimed Distributions.

Any Cash or other property to be Distributed under the Combined Plan and Disclosure Statement shall revert to the Post-Effective Date Debtor if it is not claimed by the Person or Entity on or before the Unclaimed Distribution Deadline. If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution made to such Entity shall be deemed to be reduced to zero.

## L.    *De Minimis* Distributions.

The Plan Administrator shall not Distribute Cash to the Holder of an Allowed impaired Claim if the amount of Cash to be Distributed on account of such Claim is less than $50.00 in the aggregate. Any Holder of an Allowed impaired Claim on account of which the amount of Cash to be Distributed is less than $50.00 in the aggregate will be forever barred from

asserting its Claim for such Distribution against the Plan Administrator and/or the Post-Effective Date Debtor or their property. Any Cash not Distributed pursuant to this section will be the property of the Post-Effective Date Debtor.

**M.    Charity.**

In the event that the Plan Administrator determines that it is no longer economically feasible to make Distributions to the Holders of Allowed Claims, the Plan Administrator may donate any such undistributed amounts to Charity.

**N.    Set-Off.**

The Post-Effective Date Debtor or the Plan Administrator, as the case may be, retain the right to reduce any Claim by way of setoff in accordance with their books and records.

**O.    Postpetition Interest.**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Commencement Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Allowed Secured Claims under section 506(b) of the Bankruptcy Code.

**P.    Allocation of Distributions Between Principal and Interest.**

For Distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**X.    IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT**

**A.    Means for Implementation of the Combined Plan and Disclosure Statement.**    In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

1.    Limited Substantive Consolidation.    The Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, with Zloop, Inc. as the sole surviving Post-Effective Date Debtor, including voting on this Combined Plan and Disclosure Statement by the Holders of Claims and making any Distributions to Holders of Claims. The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of Entity-specific Claims for which there would be no impact on Distributions. On the Effective Date, (i) all assets and liabilities of the Debtors will be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of either

Debtor of the payment, performance, or collection of obligations of the other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. As of the Effective Date, the Chapter 11 Cases of Zloop Knitting Mill, LLC and Zloop Nevada, LLC shall be closed in accordance with Bankruptcy Rule 1017-3. Holders of Allowed Claims or Equity Interests entitled to Distributions under this Combined Plan and Disclosure Statement shall be entitled to their share of Cash available for Distribution on account of such Allowed Claim without regard to which Debtor was originally liable for such Claim.

    2.    <u>Funding of Liabilities and Distributions.</u>

        Distributions contemplated under the Combined Plan and Disclosure Statement shall be paid from Estate Assets and the Creditor Distribution Fund.

        The Estate Assets consist of any and all assets of the Debtors' estates as of the Effective Date including, without limitation, the Mosing Estate Payment and any and all Cash on hand immediately prior to the Effective Date; <u>provided, however,</u> that Estate Assets shall not include Causes of Action, the Mosing Funding Payment, the Funding Payments, the Plan Administrator Fund or the Creditor Distribution Fund all of which shall vest in the Post-Effective Date Debtor free and clear of all Liens.

        The Estate Assets shall be used to pay, in full, all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Other Priority Claims and all Statutory Fees that are due and owing as of the Effective Date or that have accrued, but are not yet due, as of the Effective Date. In addition, after the payment or reserve in full of the foregoing Allowed Claims, Allowed Professional Fee Claims shall be paid Pro Rata from the Estate Assets until the Estate Assets are exhausted, thereafter, Allowed Professional Fee Claims that remain unpaid shall be paid from 50% of the Creditor Distribution Fund.

        The Plan Administrator Fund consists of (i) the Mosing Funding Payment; (ii) any Funding Payments; (iii) any Residual Estate Assets; and (iv) the proceeds of the Causes of Action (inclusive of all of the Debtors' rights with regards to any insurance policies and/or proceeds therefrom).

        The Creditor Distribution Fund consists of the Plan Administrator Fund less the Plan Administrator Expenses. Notwithstanding anything to the contrary in the Combined Plan and Disclosure Statement, the Mosing Funding Payment and any Funding Payments shall not constitute a part of the Creditor Distribution Fund and there shall not be any Distributions or other payments made from the Creditor Distribution Fund unless and until all Plan Administrator Expenses (including but not limited to liabilities, attorneys' fees or related costs) are paid in full or fully reserved for, provided, that, any such reserve shall be reasonable under the circumstances. Further, pursuant to the Plan Settlement and Plan, payments and other Distributions from the Creditor Distribution Fund shall only be made according to the following waterfall:

**First,** fifty percent (50%) to Mosing on account of the Mosing Unsecured Claims and fifty percent (50%) to the Holders of Allowed Professional Fee Claims on a Pro Rata basis until the Holders of Allowed Professional Fee Claims are paid in full;

**Second,** fifty percent (50%) to Mosing on account of the Mosing Unsecured Claims and fifty percent (50%) to the Holders of Allowed Unsecured Claims on a Pro Rata basis until the Holders of Allowed Unsecured Claims are paid in full; and

**Third,** to Mosing on account of the Mosing Unsecured Claims until such Claims are paid in full, then retained by the Post-Effective Date Debtor. At any time, Mosing may elect to receive Distributions as a creditor or the holder of the equity of the Post-Effective Date Debtor for tax planning or any other reason.

Pursuant to the Plan Settlement, Mosing has agreed to make the Mosing Funding Payment on or after the Effective Date. It is expected that the Mosing Funding Payment will be used primarily to pay Plan Administrator Expenses in connection with Claim objections and Causes of Action. If the Mosing Funding Payment is exhausted, the Plan Funder may or may not, in its discretion, make Funding Payments as necessary to pay the Plan Administrator Expenses. Any amounts not used to pay Plan Administrator Expenses, including if the Plan Administrator does not pursue any Claim objections or Causes of Action or otherwise, shall promptly be returned to the Plan Funder without offset or deduction of any kind.

3.   Corporate Action; Effectuating Documents; Further Transactions.

On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the directors, officers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the directors and officers of the Debtors all in accordance with DGCL § 303. The Debtors, the Post-Effective Date Debtor or the Plan Administrator, as applicable, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

## XI.  INJUNCTION, EXCULPATION AND RELEASES

**A.      Exculpation.  The Exculpated Parties shall not have or incur any liability for any act or omission taken or not taken in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims and Causes of Action prior to the Effective Date, the sales of assets, the pursuit of approval and confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, or the administration of this Combined Plan and Disclosure Statement or the property to be Distributed under this Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence or any obligations that they have under or in connection with this Combined Plan and Disclosure Statement or the transactions contemplated in this Combined Plan and Disclosure Statement.**

**B.**     <u>Releases By the Debtors.</u>   **Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and each of the Debtors' successors and assigns, shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void, extinguish and discharge the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission (i) that took place prior to the Commencement Date relating to and/or in connection with any of the Debtors, and (ii) in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims and Causes of Action prior to the Effective Date, the sales of assets, the pursuit of approval and confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, or the administration of this Combined Plan and Disclosure Statement or the property to be Distributed under this Combined Plan and Disclosure Statement, except for any obligations that they have under the Combined Plan and Disclosure Statement or the transactions contemplated in this Combined Plan and Disclosure Statement.**

**C.**     <u>Third Party Releases.</u>   **Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of an Allowed Claim that is deemed to vote in favor of the Combined Plan and Disclosure Statement, and each Holder of an Allowed Claim that is entitled to vote on the Combined Plan and Disclosure Statement (other than those Holders of Allowed Claims who abstained from voting on or voted against the Combined Plan and Disclosure Statement and, in both such circumstances, checked the "opt out" box on the Ballot, and returned it in accordance with the instructions set forth thereon), shall be, in each case, deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void, extinguish and discharge the Debtors, the Post-Effective Date Debtor and the Released Parties for any act or omission (i) that took place prior to the Commencement Date relating to and/or in connection with any of the Debtors, and (ii) in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims and Causes of Action prior to the Effective Date, the sales of assets, the pursuit of approval and confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, or the administration of this Combined Plan and Disclosure Statement or the property to be Distributed under this Combined Plan and Disclosure Statement, except for any obligations that they have under this Combined Plan and Disclosure Statement or the transactions contemplated in this Combined Plan and Disclosure Statement.**

**D.**     <u>Injunctions Relating to Releases.</u>   **Effective as of the Effective Date, all Persons that hold, have held or may hold a claim, Claim, cause of action, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, that is released or exculpated pursuant to this Combined Plan and Disclosure Statement, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such released claims, Claims, Causes of Action, causes of action, obligations, suits, judgments, damages, debts, rights,**

remedies or liabilities, (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum, (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order, (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien, (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person released or exculpated under this Combined Plan and Disclosure Statement, and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Combined Plan and Disclosure Statement or the Confirmation Order.

E.      **Injunctions to Protect Estate Assets.**  Except as expressly otherwise provided in this Combined Plan and Disclosure Statement, or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against the Debtors, the Debtors' Estates, Estate Assets, the Post-Effective Date Debtor, the Plan Administrator, Plan Funder, property of the Post-Effective Date Debtor and/or the Debtors' successors or any of their property on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or Order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Commencement Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement.

F.      **Exceptions from Exculpation, Release and Injunction Provisions.**  Notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, nothing in this Combined Plan and Disclosure Statement, including the exculpation, release and injunction provisions, or any Ballot submitted by Mosing, shall in any way (i) prejudice any Claim objection, claim, cause of action or Cause of Action that Mosing and/or the Plan Administrator (on behalf of the Post-Effective Date Debtor) may have against any Person or Entity that is not being released or exculpated under this Combined Plan and Disclosure Statement including, without limitation, any insurer of the Debtors; (ii) enjoin or otherwise prevent Mosing and/or the Plan Administrator from commencing or continuing any Claim objection, claim, Cause of Action, cause of action or other proceeding against the Post-Effective Date Debtor if doing so is necessary in order to establish liability against any Person or Entity that is not being released or exculpated under this Combined Plan and Disclosure Statement; and/or (iii) enjoin, prejudice or in any way prevent Mosing and/or the Plan Administrator (on behalf of the Post-Effective Date Debtor) from making a demand on or under any insurance policy of the Debtors and to receive any proceeds therefrom.

**XII.**

**EXECUTORY CONTRACTS AND LEASES**

**A.      Rejection of Executory Contracts.**

        Subject to Article XII.C, on the Effective Date, all Executory Contracts not assumed before the Effective Date, or subject to a pending motion to assume as of the Effective Date, will be deemed rejected.  The Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

**B.      Deadline for Filing Proofs of Claim Relating to Executory Contracts Pursuant to the Combined Plan and Disclosure Statement.**

        If the rejection by the Debtors of an Executory Contract pursuant to the Combined Plan and Disclosure Statement gives rise to a Claim, a proof of Claim must be submitted to Bankruptcy Court, Attn: Claims, 824 Market Street, 3rd Floor, Wilmington, DE 19801, by no later than twenty (21) days after service of the notice of the Effective Date.  Any proofs of Claim not submitted within such time period will be forever barred from assertion against the Debtors, the Post-Effective Date Debtor, the Plan Administrator and the Estates.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts shall be treated as Unsecured Claims.

**C.      Insurance Policies.**

        Nothing in the Combined Plan and Disclosure Statement shall alter the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Debtors' insurance policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of such policies.

**XIII.**

**CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE**

**A.      Conditions Precedent to Confirmation.**

        The following are conditions precedent to Confirmation that must be satisfied or waived:

        (i)      The Combined Plan and Disclosure Statement, the Plan Supplement and any other exhibits or schedules incorporated as part of the Combined Plan and Disclosure Statement and/or the Plan Supplement, shall be reasonably acceptable in form and substance to the Debtors, the Committee and Mosing;

        (ii)      The Confirmation Order shall be reasonably acceptable in form and substance to the Debtors, the Committee and Mosing; and

(iii)    The Plan Settlement shall be complied with to the reasonable satisfaction of Mosing.

B.    **Conditions Precedent to the Effective Date.**

The Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

(i)    The Confirmation Order shall be entered and approve the Plan Settlement;

(ii)    The Confirmation Order shall be a Final Order;

(iii)    The Debtors shall have received the Mosing Estate Payment;

(iv)    The Debtors shall have executed a document, which shall be in form and substance acceptable to Mosing and included in the Plan Supplement, under which the Debtors amend any and all agreements between the Debtors and Mosing so that such agreements provide, effective as of the original effective date of such agreements, that any disputes between the Debtors and Mosing arising under such agreements shall be litigated in the federal courts sitting in Louisiana, which shall be delivered to Mosing on or prior to the Effective Date;

(v)    On the Effective Date, the Debtors shall advise all attorneys, experts and consultants representing the Debtors known to the CRO, including in Texas, North Carolina and/or Louisiana, of the following in one or more written communications (with copies of all such communications being provided to Mosing and/or his counsel):

a.    that the entire files of such attorneys, experts and consultants shall be preserved and produced in full to Mosing and/or his counsel;

b.    that, with regards to Mosing and/or his counsel, as necessary, the contents of such files shall no longer be confidential; and

c.    that, with regards to Mosing and/or his counsel, only as necessary, the Debtors waive any applicable privileges protecting the contents of such files and any and all communications between such attorneys, experts and consultants and the Debtors, including, without limitation, the attorney-client privilege, the anticipation of litigation privilege, the common interest or joint defense privilege, accountant-client privilege, the litigation privilege, and the work product privilege.

For the avoidance of doubt, none of the provisions of this Section XIII (B)(v) shall limit or impair in any fashion whatsoever the non-waiver of Privilege through disclosures to Mosing as provided in Section XV(B) hereof.

(vi)    On the Effective Date, the Debtors shall file a motion in the Louisiana Action, which shall be in form and substance acceptable to Mosing and included in the Plan Supplement, to withdraw the Debtors' motion to transfer venue pending in such action and such motion shall (a) state that the Debtors consent to the jurisdiction of the federal courts sitting in

Louisiana; (b) state that the Debtors waive any and all arguments under any and all forum selection clauses or otherwise to preclude litigation in Louisiana; (c) state that the Debtors do not oppose the Louisiana Action proceeding in Louisiana and (d) attach, as an exhibit, the document referenced in Section XIII.B.(iv) above.

(vii)     On the Effective Date, the Debtors, DLA Piper LLP (US), Miller Coffey Tate LLP, Getzler Henrich & Associates LLC, Cole Schotz P.C., and Goldin Associates, LLC shall have turned over to Mosing and/or his counsel the entirety of their paper and electronic documents in connection with, or in any way relating to, any actual or potential Cause of Action including, without limitation, (a) any and all documents received from or related to Parker Poe Adams & Bernstein, LLP, (b) any communications with Boston and/or LaBarge and any notes regarding or recordings of such communications (whether written or oral), and (c) any reports or other documents relating to, detailing or summarizing any investigations into the validity of any actual or potential Causes of Action or any factual or legal matters related to any actual or potential Cause of Action;

(viii)     The Plan Settlement shall otherwise be complied with to the reasonable satisfaction of Mosing; and

(ix)     Estate Assets shall be sufficient to pay all Allowed and, as of the Effective Date, Disputed Administrative Expense Claims, Priority Tax Claims, Secured Claims and Other Priority Claims.

## C.     Establishing the Effective Date.

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be jointly selected by the Debtors, the Committee and Mosing. On or within two (2) Business Days following the Effective Date, the Post-Effective Date Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, the Professional Fee Claims Bar Date and the deadline to file proofs of Claim relating to damages arising from the rejection of any Executory Contract pursuant to the terms of the Combined Plan and Disclosure Statement.

## D.     Effect of Failure of Conditions.

If each condition to the Effective Date has not been satisfied or duly waived within ninety (90) days after the Confirmation Order becomes a Final Order, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived and the Effective Date occurs before any Order granting such relief becomes a Final Order. If the Confirmation Order is vacated pursuant to this Section, the Combined Plan and Disclosure Statement shall be deemed null and void in all respects.

**E.**     **Waiver of Conditions to Confirmation and Effective Date.**

Each of the conditions to the Effective Date may be waived, in whole or in part, by mutual agreement of the Debtors, the Committee and Mosing, without notice or an Order of the Bankruptcy Court.

## XIV.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Plan and Disclosure Statement are carried out.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)     To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(ii)     To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(iii)     To issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the Bankruptcy Code;

(iv)     To consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(v)     To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

(vi)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

(vii)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Plan Administrator for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(viii)     To hear any other matter not inconsistent with the Bankruptcy Code;

(ix)     To enter a final decree closing the Chapter 11 Cases;

(x)     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

(xi)     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors;

(xii)     To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

(xiii)     To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement or the Disclosure Statement;

(xiv)     To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(xv)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(xvi)     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, the Administrative Expense Bar Date, and/or the hearing on the approval of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is enjoined hereunder or for any other purpose;

(xvii)     To hear and determine any claim, action and/or Cause of Action referred to in the Combined Plan and Disclosure Statement and/or the Plan Supplement;

(xviii)     To resolve disputes concerning the turnover of Books and Records as required or as is otherwise provided under the terms of the Combined Plan and Disclosure Statement; and

(xix)     To resolve any other matter or for any purpose specified in the Combined Plan and Disclosure Statement, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

## XV.

## MISCELLANEOUS PROVISIONS

A.     **Books and Records.**

On the Effective Date, the Books and Records shall be transferred to the Post-Effective Date Debtor. Any party in possession of the Books and Records on the Effective Date, including, without limitation, any Professionals retained by the Debtors or the Committee and

any other attorney, expert or consultant retained by the Debtors either prior to or after the Commencement Date (whether or not such attorney, expert or consultant is a Professional) shall, if directed by the Plan Administrator, promptly turn over such Books and Records to the Plan Administrator.

The Plan Administrator shall be free, in its discretion, to abandon, destroy or otherwise dispose of the Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other or further Order.

## B.    Revesting of Estate Assets.

Except as otherwise provided herein, any assets that are property of the Debtors' Estates on the Effective Date including, without limitation, any Causes of Action, including those Causes of Action specifically identified in the Plan Supplement, shall revest in the Post-Effective Date Debtor on the Effective Date free and clear of all Liens. Thereafter, the Post-Effective Date Debtor (at the direction of the Plan Administrator) may use, acquire and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or Bankruptcy Court approval, subject to the terms of this Combined Plan and Disclosure Statement. Except as specifically provided in the Combined Plan and Disclosure Statement or the Confirmation Order, as of the Effective Date, all property of the Debtors shall be free and clear of any Liens, Claims, encumbrances and interests of any kind. In addition, all of the Privileges of the Estates and the Debtors including, but not limited to, the attorney/client privilege, work product protections or other immunities (including those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates, shall be transferred, assigned, and delivered to the Post-Effective Date Debtor, as in existence as of the Effective Date, without waiver or release, and shall vest with and to the Post-Effective Date Debtor. The Post-Effective Date Debtor shall hold and be the beneficiary of all such Privileges and entitled to assert or waive such Privileges. No such Privilege shall be waived by disclosures to Mosing or the Post-Effective Date Debtor of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors.

## C.    Termination of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant on the Confirmation Date shall terminate on the Effective Date, at which time the injunctions and stays set forth in this Combined Plan and Disclosure Statement and the Confirmation Order shall take effect.

Notwithstanding anything to the contrary in the Combined Plan and Disclosure Statement, on the Effective Date, there shall be no injunctions or stays in the Chapter 11 Cases that prohibit or otherwise stay the filing by the Plan Administrator of any Cause of Action including as against the Boston Parties and/or LaBarge Parties.

**D.     Amendment or Modification of the Combined Plan and Disclosure Statement.**

The Debtors, with the prior written consent of the Committee and Mosing, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (i) to amend or modify the Combined Plan and Disclosure Statement prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtors, with the prior written consent of the Committee and Mosing, may amend or modify the Combined Plan and Disclosure Statement, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Combined Plan and Disclosure in such manner as may be necessary to carry out the purpose and intent of the Combined Plan and Disclosure Statement.

**E.     Severability.**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

**F.     Revocation or Withdrawal of the Combined Plan and Disclosure Statement.**

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement and Plan Settlement shall be deemed null and void.

**G.     Binding Effect.**

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, and the Holders of Equity Interests, and their respective successors and assigns.

**H.     Notices.**

All notices, requests and demands to or upon the Plan Administrator to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order.

**I.     Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides

otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**J.**    **Withholding and Reporting Requirements.**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Post-Effective Date Debtor and Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Combined Plan and Disclosure Statement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Post-Effective Date Debtor and the Plan Administrator have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations. The Post-Effective Date Debtor or Plan Administrator may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Post-Effective Date Debtor or Plan Administrator make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Post-Effective Date Debtor and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Post-Effective Date Debtor, the Plan Administrator or the Estates.

**K.**    **Headings.**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**L.**    **Exhibits/Schedules.**

All exhibits and schedules to the Combined Plan and Disclosure Statement, including the Plan Supplement, are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**M.**    **Filing of Additional Documents.**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

**N.    No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**O.    Successors and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**P.    Reservation of Rights.**

Except as expressly set forth herein, the Plan Settlement and the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims or Holders of Equity Interests before the Effective Date.

**Q.    Implementation.**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement in accordance with DGCL § 303 and the Confirmation Order.

**R.    Inconsistency.**

In the event of any inconsistency among the Plan Settlement, the Combined Plan and Disclosure Statement, the Confirmation Order or any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Confirmation Order shall govern.

**S.    Closing of Chapter 11 Cases.**

As soon as practicable after the Effective Date, the Post-Effective Date Debtor are authorized to and shall submit an Order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases except ZLOOP, Inc.'s Chapter 11 Case.  The Debtors' consolidated estate shall be administered through ZLOOP, Inc.'s Chapter 11 Case.  Once the Combined Plan and Disclosure Statement has been fully administered, the Post-Effective Date Debtor shall file a final report and a motion seeking a final decree in accordance with the applicable Bankruptcy Rules.

**T.    Dissolution of the Post-Effective Date Debtor.**

As soon as practicable after the closing of a Post-Effective Date Debtor's Chapter 11 Case, the Plan Administrator, on behalf of the Post-Effective Date Debtor, may: (i) file a certificate of dissolution or such similar document, together with all other necessary corporate documents, to effect such Post-Effective Date Debtor's dissolution or termination under the applicable laws of its state of incorporation or domicile; and (ii) complete and file such Post-Effective Date Debtor's final federal, state and local tax returns. Following such actions, such Post-Effective Date Debtor shall be dissolved or terminated for all purposes without the necessity for any other or further actions, including, without limitation, the payment of any franchise or similar taxes to the state or commonwealth of incorporation or organization of such Entity. The filing by the Post-Effective Date Debtor of its certificate of dissolution or similar document shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders, members or the board of directors of each such Post-Effective Date Debtor.

**U.    Tax Returns.**

The CRO shall be responsible for timely completing and filing the Debtors' state and federal tax returns for taxable years that cover periods that begin and end prior to the Effective Date. The CRO and the Plan Administrator shall cooperate to timely complete and file all of the Post-Effective Date Debtors' state and federal tax returns for taxable years that cover periods that begin prior to the Effective Date and end after the Effective Date, provided that the CRO shall be solely responsible for executing and filing any such tax returns. Finally, the Plan Administrator shall be responsible for timely completing and filing the Post-Effective Date Debtor's state and federal tax returns for taxable years that cover periods that begin and end after the Effective Date. Notwithstanding anything to the contrary, under no circumstances shall the Plan Administrator be responsible for filing or amending any tax returns for taxable years that cover periods that begin prior to the Effective Date.

**V.    Cooperation with the Plan Administrator.**

Pursuant to the Plan Settlement, the Debtors' Professionals and the Committee's Professionals shall reasonably cooperate with the Plan Administrator and reasonably comply, at their own expense, with any request made by the Plan Administrator in connection with the Plan Administrator's duties under the Combined Plan and Disclosure Statement including, without limitation, the prosecution of any Causes of Action and the turnover to the Plan Administrator of Books and Records (including, without limitation, any communications). It is understood that such reasonable cooperation shall not entitle Professionals to charge the Plan Administrator and/or the Post Effective Date Debtor for the hourly rate associated with such Professionals' time and shall not require such Professionals to enter an appearance in any proceeding or incur out-of-pocket expenses in connection with such services including, without limitation, in connection with travelling or duplicating or mailing documents.

W.    **Dissolution of the Committee and Discharge of Debtors' Professionals.**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code except with respect to (i) obligations arising under the Plan Settlement, the Confirmation Order and/or this Combined Plan and Disclosure Statement, including paragraph V hereof, (ii) obligations arising under confidentiality agreements, (iii) applications for payment of fees and reimbursement of expenses of Professionals, and (iv) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Combined Plan and Disclosure Statement (collectively, the "**Post-Effective Date Obligations**").

Upon the occurrence of the Effective Date, the Debtors' Professionals shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code except with respect to the Post-Effective Date Obligations.

X.    **Termination of the Plan Administrator.**

After the Chapter 11 Cases are closed and the Plan Administrator has completed all of the tasks necessary in order to fully and completely wind down, dissolve and/or terminate the Post-Effective Date Debtor and to otherwise comply with its obligations under the terms of the Combined Plan and Disclosure Statement, the Plan Administrator shall have fully completed its duties under the Combined Plan and Disclosure Statement and thereby shall be fully released and discharged of its duties and obligations to carry out the terms of the Combined Plan and Disclosure Statement.

Y.    **Compromise of Controversies.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan Settlement and the Combined Plan and Disclosure Statement, the provisions of the Plan Settlement and the Combined Plan and Disclosure Statement shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan Settlement, the Combined Plan and Disclosure Statement and in these Chapter 11 Cases. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan Settlement and the Combined Plan and Disclosure Statement and the Chapter 11 Cases, and the Bankruptcy Court's finding shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates and all Holders of Claims and Equity Interests against the Debtors.

Dated:    September 2, 2016
          Wilmington, Delaware



**ZLOOP, Inc.**

By:    */s/ William H. Henrich*
       Name: William H. Henrich
       Title: Chief Restructuring Officer

**ZLOOP Nevada, LLC**

By:    */s/ William H. Henrich*
       Name: William H. Henrich
       Title: Chief Restructuring Officer


**ZLOOP Knitting Mill, LLC**

By:    */s/ William H. Henrich*
       Name: William H. Henrich
       Title: Chief Restructuring Officer